**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| MICHAEL DUNN, | |
| Plaintiff, | Civ. A. No.: <u>6:21-cv-01535</u> |
| v. | **JURY TRIAL DEMANDED** |
| RANDY FONTENOT, VICTOR FONTENOT, RYAN YOUNG, CITY OF EUNICE, and JOHN DOE, | |
| Defendants. | |

## COMPLAINT

Plaintiff Michael Dunn ("Plaintiff" or "Lt. Dunn"), by his undersigned counsel, brings this action pursuant to 42 U.S.C. § 1983 and, under the supplemental jurisdiction of this Court, pursuant to the laws of the State of Louisiana:

## OVERVIEW

1.    Lt. Dunn is employed by the Eunice Police Department in Eunice, Louisiana, with the rank of Lieutenant.  He brings this lawsuit seeking redress for violations of his First Amendment right to speak on matters of public concern, Louisiana's Whistleblower Statute, the Constitution of the State of Louisiana, and to correct the policy failures of the Eunice Police Department (the "Department"), the City of Eunice, and the Louisiana State Police.  He also seeks injunctive relief for defamation, civil conspiracy, false light invasion of privacy, and intentional infliction of emotional distress.

2.    Lt. Dunn has, for years, been an officer in good standing at the Eunice Police Department.  His circumstances changed dramatically in June 2020 when the Chief of Police, Defendant Randy Fontenot ("Chief Fontenot"), learned that Lt. Dunn had reported to various

outside authorities numerous instances of misconduct and corruption within the Eunice Police Department. From that point until the present, Chief Fontenot and others have engaged in a campaign of retaliation against Lt. Dunn in an attempt to force his resignation from the Eunice Police Department in violation of his First Amendment rights and numerous Louisiana state laws.

3.     In 2018, after nearly a decade at the Department, Lt. Dunn felt that the system he believed in was breaking down. He observed pervasive corruption and misconduct by certain of his fellow officers—including excessive use of force, neglect of inmate medical needs, mishandling of evidence, and misuse of funds—which the Department refused to address. Over the past three years, Lt. Dunn has notified state, local, and federal authorities about the misconduct he saw. He informed authorities that Chief Fontenot selectively enforces the law—protecting friends, family members, and political allies from criminal charges, and turning a blind eye to favored officers' misconduct—while, at the same time, weaponizing the disciplinary process against those in the Department who are not on his "good side" or refuse to do his bidding. Indeed, the Department's practices are akin to the types of unconstitutional and dangerous policing that are currently subject to intense state and national attention,[1] but ineffective policies at several levels of government allow Chief Fontenot to quash reports of misconduct and punish employees who report illegal activity.

---

[1] *See, e.g.*, Sadie Gurman, *U.S. to Probe Minneapolis Police Practices After George Floyd Killing*, Wall St. J. (Apr. 21, 2021), www.wsj.com/articles/u-s-to-probe-minneapolis-police-practices-after-floyds-killing-11619013633 (describing Department of Justice investigation into "whether Minneapolis officers routinely violate citizen's [*sic*] rights through excessive force, discriminatory policing or other behavior"); Jim Mustian, *In death of Ronald Greene, State Police officer misled investigators, documents say*, The Advocate (May 24, 2021), www.theadvocate.com/baton_rouge/news/crime_police/article_e8079d38-bcc2-11eb-a05d-f3094b010120.html; Deborah Bayliss, *City Council passes legislation calling for external probe of SPD, emergency mask ordinance*, Shreveport Times (July 14, 2020), www.shreveporttimes.com/story/news/local/2020/07/14/city-council-oks-external-probe-shreveport-police-department-justice-doj/5439421002/ (Shreveport City Council requested that Department of Justice commence "pattern and process investigation . . . regarding persistent patterns of misconduct" by the Shreveport Police Department); *NAACP Shreveport requests DOJ investigation into police department, several officers*, KLFY.com (July 17, 2020), www.klfy.com/louisiana/naacp-shreveport-requests-doj-investigation-into-police-department-several-officers/ (Shreveport chapter of the NAACP requested that the Department of Justice investigate "police custody deaths and the use of excessive force").

2

4.      For example, Eunice Police Department policies are so vaguely written that Chief Fontenot can find a basis to discipline anyone without good cause while, at the same time, allowing him to let those who commit misconduct go unpunished.  Moreover, it is the practice of the St. Landry Parish District Attorney to require approval from Chief Fontenot to investigate any criminal misconduct reported at the Department; this policy is particularly problematic when the ringleader of the misconduct is Chief Fontenot himself.  Likewise, on information and belief, it is the practice of the Louisiana State Police to investigate officer complaints only if such complaints originate from a department's Chief of Police.  These obstacles chill legitimate whistleblower complaints—like those that Lt. Dunn has repeatedly brought to authorities.

5.      In June 2020, Chief Fontenot learned that Lt. Dunn had reported Chief Fontenot's and the Department's misconduct to authorities.  On information and belief, Chief Fontenot was so informed by the District Attorney himself.

6.      Then, in August 2020, Lt. Dunn filed a lawsuit against the City and Chief Fontenot.[2] The lawsuit arose out of a public Facebook post that Lt. Dunn wrote while off duty in 2019.  The post described gang activity near Lt. Dunn's home and his concern about his family's and the public's safety.  In response, Chief Fontenot put Lt. Dunn on administrative leave.  Public outcry followed, and the Eunice Board of Aldermen[3] revoked Chief Fontenot's previously unchecked authority to hire, fire, and suspend officers.  As a result, Chief Fontenot no longer has the authority to fire Lt. Dunn (or any other officer).  He blames Lt. Dunn for that diminution in his authority.

7.      Infuriated that Lt. Dunn had reported Departmental misconduct to authorities and by Lt. Dunn's lawsuit, Chief Fontenot began to retaliate against Lt. Dunn.  Chief Fontenot enlisted

_____

[2] *Dunn v. City of Eunice et al.*, No. 6:20-cv-01063-JDC-PJH (W.D. La., filed Aug. 17, 2020), remains pending.
[3] The Eunice Board of Aldermen is also referred to as the "City Council."  Pursuant to La. Rev. Stat. 33:362 (the Lawrason Act), the Board of Aldermen is Eunice's governing and legislative body and has the power to, among other things, adopt, enact, and enforce ordinances, as well as create, abolish, merge, or consolidate any department.

two other Eunice police officers, Defendant Victor Fontenot ("Officer Fontenot") and Defendant Ryan Young ("Lt. Young"),[4] among others, to assist him in carrying out the retaliatory scheme. Their goal was to humiliate Lt. Dunn, tarnish his reputation, and force his resignation—and, of course, retain their ability to use the Department to protect their friends and target their enemies.

8.      Chief Fontenot has intentionally staffed Lt. Dunn to assignments below his rank and curtailed his responsibilities.  In June 2020, Chief Fontenot terminated the Department's canine program, causing Lt. Dunn to suffer a loss of hours and compensation.  Chief Fontenot claimed that budgetary concerns justified his actions but, based on comments made by another officer (discussed *infra* at paragraphs 88 and 89), Lt. Dunn learned that this was a pretext and that Chief Fontenot's decision to terminate the program was intended to punish Lt. Dunn.  On multiple occasions, including as recently as March 2021, Chief Fontenot has opened investigations into Lt. Dunn—all baseless—aimed at forcing his resignation while simultaneously making it impossible for Lt. Dunn to pass a background check that would allow him to be hired by another police department.

9.      Chief Fontenot, along with Officer Fontenot and Lt. Young, commenced a defamatory campaign intended to tarnish Lt. Dunn's reputation by spreading rumors that he is corrupt.  In October 2020, a defendant in a criminal case testified that Officer Fontenot and Lt. Young had asked him to falsely claim that he was paying bribes to Lt. Dunn.  The defendant testified that Officer Fontenot "threatened me, telling me I need to give him some information on Dunn so they can get rid of his ass, his butt, or whatever, something like that."  By enlisting members of the public in their defamatory efforts in this manner, the Individual Defendants present

---

[4] Chief Fontenot, Officer Fontenot, and Lt. Young are referred to herein as the "Individual Defendants."  On information and belief, Chief Fontenot and Officer Fontenot are not related to each other, nor are they related to Eunice Mayor Scott Fontenot, discussed *infra*.

a threat to Lt. Dunn's safety.  Chief Fontenot makes no secret of his intentions.  He has told police officers and Departmental employees that Lt. Dunn is on his "hit list," and that it is "time for [Lt. Dunn] to die."

10.     Twice, Lt. Dunn has appealed Chief Fontenot's retaliatory actions to the Eunice Municipal Fire and Police Civil Service Board—in 2019, after Chief Fontenot placed him on administrative leave for his Facebook post, and in 2020, after Chief Fontenot terminated the Department's canine program, causing Lt. Dunn to suffer a loss of responsibilities and pay.  On both occasions, Lt. Dunn succeeded in obtaining a reversal of Chief Fontenot's capricious actions. But even a rebuke by the Civil Service Board has not curbed the Individual Defendants' ruthless campaign of retaliation or prompted correction of the City's constitutionally inadequate policies.

## NATURE OF THE CAUSE OF ACTION

11.     Lt. Dunn did not plan to become a whistleblower.  He pursued a career in law enforcement because he believes that police officers provide a crucial service to the community. But after witnessing repeated instances of misconduct within the Department, Lt. Dunn felt that it was his moral obligation to shine a light on that misconduct.  As Lt. Dunn's experience shows, police whistleblowers often pay a hefty price within their departments, only to be vindicated through the court system years later.[5]  Thus, whistleblower suits like this one play a critical role in curbing a culture of silence in police departments and effecting needed policy reform.  For example, in 2006, Buffalo New York police officer Cariol Horne found a fellow officer choking a handcuffed Black man while other officers stood by.  Officer Horne intervened.  In the aftermath, the Buffalo police department found that Horne was not justified in using force against a fellow officer.  She was fired and denied a pension.  But eventually, Officer Horne was vindicated:  more

---

[5] Musa al-Gharbi, *Police Punish the 'Good Apples,'* The Atlantic (July 1, 2020), www.theatlantic.com/ideas/archive/2020/07/what-police-departments-do-whistle-blowers/613687/.

than a decade later, a court awarded her backpay and, in connection with her efforts, Buffalo passed a law imposing on officers a duty to intervene against the use of excessive force.[6]

12.    Likewise, in 2011, Baltimore Police Officer Joseph Crystal witnessed fellow officers commit assault.[7]  He reported their misconduct within and, eventually, outside his department.  His colleagues responded with threats and abuse, leading to Officer Crystal's resignation.  But Officer Crystal was not silenced and, in 2016, Baltimore paid him damages and implemented a training program regarding reporting misconduct.[8]

13.    These notable whistleblowers aside, as a result of a pervasive and powerful culture of silence, most police misconduct goes unaddressed.  In August 2020, the New York Civil Liberties Union obtained previously sealed reports documenting 323,911 accusations of misconduct against current and former New York City police officers over the course of four decades.[9]  Less than 3% of those complaints resulted in any penalty for officers and, of over 80,000 officers involved in misconduct, only twelve were terminated.

14.    Other officers and former employees of the Eunice Police Department have witnessed Chief Fontenot's misconduct and shared their concerns with Lt. Dunn.  They are described anonymously in this complaint because they are concerned about retaliation from Chief Fontenot and others in the Department.  Discovery on this issue will be appropriate once a protective order is in place.

---

[6] Jonah E. Bromwich, *Court Vindicates Black Officer Fired for Stopping Colleague's Chokehold*, N.Y. Times (Apr. 13, 2021), www.nytimes.com/2021/04/13/nyregion/cariol-horne-police-chokehold.html.
[7] Sebastian Murdock, *'Rat Cop' Joe Crystal Shunned From Baltimore Police Department After Reporting Officer Brutality*, HuffPost (June 16, 2015), www.huffpost.com/entry/baltimore-joe-crystal_n_7582374.
[8] Luke Broadwater, *Baltimore to pay $42K to whistle-blower former officer who found rat on car*, The Baltimore Sun (June 1, 2016), www.baltimoresun.com/maryland/baltimore-city/bs-md-ci-crystal-settlement-20160601-story.html.
[9] Ashley Southall, *323,911 Accusations of N.Y.P.D. Misconduct Are Released Online*, N.Y. Times (Aug. 20, 2020), www.nytimes.com/2020/08/20/nyregion/nypd-ccrb-records-published.html.

15.     Chief Fontenot, Officer Fontenot, and Lt. Young's efforts constitute violations of the First Amendment for retaliating against Lt. Dunn for engaging in protected speech.  They also constitute a civil conspiracy to violate Lt. Dunn's First Amendment rights, defamation, civil conspiracy to defame Lt. Dunn, intentional infliction of emotional distress, false light invasion of privacy, and violate Louisiana's State Whistleblower Statute and the Louisiana Constitution.  The City of Eunice is liable for failure to establish and enforce policies that would prevent the pervasive misconduct committed by Chief Fontenot and Eunice police officers.

16.     Lt. Dunn brings this lawsuit to end corruption and wrongdoing within the Department and to establish a legitimate and effective mechanism for investigating complaints of police misconduct in the City of Eunice.  Lt. Dunn seeks a declaratory judgment that Defendants' actions are illegal and in violation of Lt. Dunn's constitutional rights, and injunctive relief to halt the Individual Defendants' conduct.  Lt. Dunn also seeks a permanent, mandatory injunction ordering the City of Eunice and Chief Fontenot to institute policies designed to prevent such misconduct from recurring.

**PARTIES**

17.     Plaintiff Michael Dunn ("Lt. Dunn") is a lieutenant at the Eunice Police Department and has been, at all material times, employed by Defendant City of Eunice as an officer of the Eunice Police Department.

18.     Defendant City of Eunice (the "City") is a political subdivision of the State of Louisiana.

19.     Defendant Randy Fontenot ("Chief Fontenot") is the Chief of Police of the Eunice Police Department, a department or agency of the City, and is a Defendant in his individual capacity.

20.     Defendant Victor Fontenot ("Officer Fontenot") is an officer of the Eunice Police Department, a department or agency of the City of Eunice, and is a Defendant in his individual capacity.

21.     Defendant Ryan Young ("Lt. Young") is a lieutenant of the Eunice Police Department, a department or agency of the City of Eunice, and is a Defendant in his individual capacity.

22.     Defendant John Doe, individually and in his official capacity as employee(s), agent(s), or officer(s) of the City of Eunice, is a person of the full age of majority whose identity is currently unknown, who was at all times material hereto employed as an employee, agent, or officer of the City of Eunice, acting in the course and scope of his or her employment, and enforcing the customs, policies, and procedures of the City of Eunice and laws of the State of Louisiana.

23.     Defendant John Doe, individually and in his official capacity as employee(s), agent(s), or officer(s) of the Louisiana State Police, is a person of the full age of majority whose identity is currently unknown, who was at all times material hereto employed as an employee, agent, or officer of the Louisiana State Police, acting in the course and scope of his or her employment, and enforcing the customs, policies, and procedures of the Louisiana State Police and laws of the State of Louisiana.

**JURISDICTION AND VENUE**

24.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) because this action is brought under 42 U.S.C. § 1983, seeking redress for Defendants' violations of Plaintiff's constitutional rights.  This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

25.     Venue appropriately lies in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims presented in this case occurred in the Western District of Louisiana.

26.     At all times material hereto, Defendants were persons acting under color of law within the meaning of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

**A.     Plaintiff Michael Dunn.**

27.     Lt. Dunn was born in Opelousas, Louisiana.  In 2005, he graduated from Oakdale Technical Community College with an associate's degree in forestry.  Lt. Dunn worked as a forest technician for five years.  In 2010, Lt. Dunn decided to transition to a career in law enforcement and joined the Eunice Police Department as an officer.  In 2012, he was promoted to sergeant.

28.     In January 2016, Lt. Dunn was promoted to his current position as lieutenant.  As a lieutenant, his responsibilities include supervising and assisting in the management of the operations of an assigned division (patrol, traffic control and accident investigation, special operations, criminal investigations, juvenile operations, jail, training, administrative support, or other specialized divisions).  Until May 2019, Lt. Dunn was in charge of narcotics investigations.  Until June 2020, Lt. Dunn was a canine handler and ran the Department's canine program.

29.     Lt. Dunn is well-credentialed, with certifications in the following areas:  TASER, Defensive Tactics (MDTS) Instruction, Basic Corrections, Field Training, Advanced Drug Interdiction, Narcotics Investigations, drafting drug search warrants, SWAT team leadership, and canine handling.  Aside from the fabricated incidents described in this Complaint, Lt. Dunn has always been a member of the Eunice Police Department in good standing and with an impeccable record.

B.     **Chief Fontenot's Selective Law Enforcement Has Undermined the Eunice Police Department.**

30.     Chief Fontenot was elected in December 2014, and the culture of the Eunice Police Department changed after he took office.  Chief Fontenot believes in selective law enforcement and expects his officers to pledge allegiance to him over the public they are employed to serve and protect.  This policy has created rifts within the Department.  In August 2019, former officer Nicholas Cooley explained that he "left [the Department] because [Chief Fontenot] demands that all officers pledge allegiance to him."[10]  In response, Chief Fontenot told the local news that "[n]ot all police officers would agree with my way of law enforcement" and speculated that "everybody has committed some kind of violation and would appreciate a break and a warning."[11]  But Chief Fontenot's particular brand of mercy is only deployed to protect his friends and the powerful at the expense of the rest of the community and, particularly, those he considers disloyal.  For example, on information and belief, in or around October 2019, Chief Fontenot ordered the removal of information implicating his friend, a local business owner, from a police report of an assault with a motor vehicle.  On information and belief, since 2019, the Eunice Police Department has seen an exodus of officers who were unwilling to subject themselves to Chief Fontenot's selective law enforcement policies.

31.     Chief Fontenot repeatedly has compelled lieutenants and sergeants who disobey him to do entry-level work below their rank.  Meanwhile, Chief Fontenot rewards "loyal" officers with supervisory responsibilities for which they are unqualified.  Concerned about the harm this brand of policing could cause to the community, Lt. Dunn submitted a formal complaint to the Civil Service Board in March 2021, explaining that allowing employees of the patrolman class to

---

[10] Neale Zeringue, *Enforcement Disagreement Adds to Eunice Officer Shortage*, KLFY 10 News (Aug. 7, 2019, 11:03 PM), www.klfy.com/news/enforcement-disagreement-adds-to-eunice-officer-shortage/.
[11] *Id.*

work as detectives, have oversight of persons in ranked positions, conduct press releases, and have free reign over payroll and overtime policy contributes to the Department's inefficient spending, ineffectiveness, and legal abuses. This complaint remains pending.

### C. For Years, Lt. Dunn Has Observed Misconduct by Chief Fontenot and Others Within the Eunice Police Department.

32.     Since at least 2017 and continuing into 2021, Lt. Dunn has observed numerous, flagrant violations of law and of individuals' constitutional rights at the Eunice Police Department under Chief Fontenot's watch. On information and belief, officers commit these violations either at Chief Fontenot's instruction or with his tacit consent due to his drive to protect those in his inner circle and punish those outside of it. Lt. Dunn has brought instances of officer misconduct to Chief Fontenot's attention but, as explained further below, inadequate policies of the Eunice Police Department and the Louisiana State Police allow this misconduct to go uncorrected.

#### 1. Use of Excessive Force.

33.     Certain Eunice police officers regularly abuse their power and mistreat suspects through the use of excessive force, and then falsify reports to cover up the use of force or otherwise fail to investigate, report, or intervene in incidents involving excessive use of force.

34.     For example, Lt. Dunn was informed by fellow officers that on or about May 30, 2019, a Eunice police officer forcefully grabbed a restrained suspect by the neck and forced him to the ground in response to a verbal provocation from the suspect. A supervising officer on the scene did nothing to stop the excessive force or reprimand the officer. The resulting arrest report omits the officer's use of force. Lt. Dunn informed outside authorities about this incident.

35.     Similarly, on or about November 22, 2019, Lt. Dunn witnessed an officer repeatedly punch a suspect, who was in hand restraints and appeared disoriented, and drag him approximately nine feet on the asphalt to a patrol car. A supervising officer on the scene joined

the officer in slamming the suspect against the patrol car.  No on-duty officers responding to the incident reported the excessive use of force.  Lt. Dunn informed outside authorities about this incident.

36.     On or about February 28, 2021, Lt. Dunn observed an officer punch an individual who was under arrest and restrained in the booking area of the Eunice Police Department.  Lt. Dunn reported the incident and wrote up the officer pursuant to Department policy.  During the course of Lt. Dunn's investigation into the misconduct, he learned that a second officer had choked the inmate during the skirmish.  The second officer had never received formal training, and is a family member of the Deputy Chief.  The Department reported the first officer's conduct to the Louisana State Police, and he was disciplined; however, the second officer's name was withheld from the report, and he was not disciplined.

37.     These are just examples.  Lt. Dunn has reported this misconduct to his supervisors, including Chief Fontenot, but they routinely fail to respond to complaints of abuse.

### 2.     Neglect of Medical Needs of Those in Department Custody.

38.     Chief Fontenot and others in the Department have neglected the medical needs of those in their custody.[12]  On more than one occasion, Chief Fontenot has released critically injured inmates rather than incur medical bills, putting their lives in danger.

39.     For example, in or around August 2018, Chief Fontenot ordered Lt. Dunn to release an inmate who had swallowed broken glass in the Eunice jail, rather than having jail staff take the individual to the hospital for treatment.  Lt. Dunn refused, but later learned that another officer had

---

[12] There have been two recent federal lawsuits against the Department for inmate deaths while in custody.  In *Guilbeaux v. Eunice*, No. 16-cv-01464 (W.D. La., filed Oct. 10, 2016), Chief Fontenot and Officer Kathy Miller were alleged to have refused medical assistance for an inmate, despite his repeated requests for help.  The parties settled this case out of court in October 2017.  In *Faul v. Fontenot*, No. 6:19-cv-01221 (W.D. La., filed Sep. 18, 2019), the estate of John Paul Davis alleges that he committed suicide while in custody at the Eunice City Jail after announcing that he intended to kill himself.  This case is pending, with a jury trial set for April 2022.

obeyed Chief Fontenot's orders to release the inmate.  Lt. Dunn informed outside authorities about this incident.

### 3.     Investigatory Leaks.

40.     Lt. Dunn has reason to believe that Eunice police officers regularly leak information about ongoing police investigations to civilians and suspects in order to protect friends and family members.  As a result of these leaks, deputies from the St. Landry Parish Sheriff's Office and Eunice City Marshal's Office refuse to work with certain Eunice police officers.  On information and belief, Chief Fontenot is aware of the officer leaks and has taken no steps to discipline the officers involved or to curtail the practice.

41.     For example, on or about April 29, 2019, Lt. Dunn was notified that a suspect had called the Eunice Police Department with knowledge of an as-yet-unprocessed warrant that Lt. Dunn had submitted the day before.  Lt. Dunn later learned that another lieutenant had informed the suspect about the warrant.

42.     Lt. Dunn has informed outside authorities about these incidents.

### 4.     Abuse of the Confidential Informant Process.

43.     Lt. Dunn has observed abuse of the confidential informant process by Eunice police officers.  For example, one officer regularly holds arrestees in jail or his office for extended periods of time to coerce them into becoming confidential informants.  Certain officers enlist individuals on probation as informants for narcotics violations and other criminal activities, despite instructions from Louisiana state and Eunice probation officers that this is impermissible.  Chief Fontenot is aware of these illegal tactics, but he refuses to do anything to stop or discipline the offending officers.

44.    In 2019, Lt. Dunn alerted Chief Fontenot to the misuse of the confidential informant process.  In response, instead of disciplining the officers who engaged in misconduct, Chief Fontenot retaliated against Lt. Dunn.  Chief Fontenot told Lt. Dunn that he must operate in a "gray area" and push the boundaries of what is legal.  When Lt. Dunn refused, Chief Fontenot stripped him of his duties on narcotics investigations.  Lt. Dunn has informed the FBI, Louisiana State Police, St. Landry Parish District Attorney, Mayor of Eunice, and the Eunice Board of Aldermen of these incidents.

### 5.    Misuse of Department Funds.

45.    Chief Fontenot has sole discretion to approve Department expenditures and uses his authority to reward officers loyal to him.  Lt. Dunn has reason to believe, and other officers have confirmed, that Chief Fontenot has instructed favored employees to fraudulently record overtime using the time sheet designation of "special detail,"[13] even when there is no documentary record of their work.  Chief Fontenot has permitted favored employees to leave work early and claim that they are still working.  He has paid favored employees for time spent commuting, which is against Department policy.  Chief Fontenot also has approved expenditure of Departmental funds for officers to travel to out-of-state training programs that could have been completed free of charge in Louisiana.  In addition to violating policy, these actions constitute a misuse of taxpayer money.

46.    Lt. Dunn has complained of the misuse of funds both internally and to outside authorities.  He is not alone in raising these concerns.  Two other officers reported the Department's misuse of funds to Eunice Mayor Scott Fontenot, the Eunice Municipal Fire and Police Civil Service Board, and other City officials.  In response, Chief Fontenot retaliated against

---

[13] The term "special detail" refers to a vague category of discretionary spending by the Chief of Police, which Chief Fontenot has the authority to allocate and approve.

the reporting officers.  Like Lt. Dunn, these officers are victims of Chief Fontenot's practice of punishing Department employees whom he considers disloyal to him.

47.    On March 9, 2021, the Eunice Board of Aldermen voted to eliminate the deputy chief position from the Eunice Police Department citing significant overspending, mostly on overtime.[14]  Alderman At-Large Marion Sattler remarked at the board meeting:  "I want the citizens, the taxpayers to know where their money is being spent as far as the police department."[15]

48.    On April 15, 2021, the Civil Service Board found multiple instances of payroll irregularities within the Eunice Police Department, which "violate Civil Service Board Rules, City of Eunice policies and ordinances."  The Civil Service Board also found that these "actions may also be unlawful and/or unethical under Louisiana State Law."  The Board's decision did not address the full panoply of misuse of funds that Lt. Dunn has observed.

49.    On information and belief, in retaliation for the efforts to curb Chief Fontenot's spending, Chief Fontenot ordered Eunice police officers to target the Eunice Aldermen by, for example, waiting outside restaurants they are known to frequent in order to stop them on suspicion of driving under the influence of alcohol.  On information and belief, the primary motivation for these stops is to tarnish the Aldermen's reputations and intimidate them.

### D.    Chief Fontenot Has Weaponized the Disciplinary Process Against Those He Disfavors.

50.    Using internal investigations as weapons, Chief Fontenot stokes fear of disciplinary action and reputational harm to silence officers and prevent insiders from shedding light on misconduct within the Eunice Police Department.  Current and former officers who share Lt.

---

[14] Kendria LaFleur, *Eunice City Council Votes to Eliminate Deputy Chief Position*, KATC 3 (Mar. 19, 2021, 4:36 PM),  www.katc.com/news/eunice-city-council-vote-to-eliminate-deputy-chief-position;  Harlan Kirgan,  *Council Votes to End Deputy Chief Position*, The Eunice News (Mar. 10, 2021, 11:45 PM), www.eunicetoday.com/news/council-votes-end-deputy-chief-position.
[15] Kirgan, *supra* note 14.

Dunn's concerns have expressed a fear of speaking out and prompting retaliation from Chief Fontenot.

51. Chief Fontenot has ordered Lt. Dunn to invent reasons to "write up" officers whom he does not like or wants to remove from the force. Lt. Dunn has staunchly refused each request. Given Chief Fontenot's willingness to ask Lt. Dunn to write false reports, Lt. Dunn has reason to believe that Chief Fontenot asks other supervising officers to write false disciplinary reports; these other officers may not be as scrupulous as Lt. Dunn in refusing Chief Fontenot's orders.

52. Chief Fontenot has also used his investigatory authority against Lt. Dunn. As described further, *infra*, Chief Fontenot has instigated a number of baseless investigations against Lt. Dunn.

53. The Department's policies empower Chief Fontenot's abuse in this regard. The Department policy book states: "Final departmental disciplinary authority and responsibility rest with the Chief of Police. Everything involved in this Procedural Order [regarding disciplinary action] will be directed to the Chief's Office," noting emphatically, "NO EXCEPTIONS." It states that while Department "policy is designed to protect the Department against unwarranted or unfounded complaints, as well as substantiating founded complaints," "[t]he responsibility of making decisions concerning disciplinary action or drawing conclusions from facts obtained lie solely with the Chief of Police." Department policy also imbues Chief Fontenot with "moral" decision making power, and provides: "All officers, at all times, shall conduct themselves in a manner that will be dignified to themselves, their families, and the Department. . . . Anytime a police officer makes it necessary for the Chief of Police to make a moral decision pertaining to his or her practices, whether on duty or off-duty, shall be done on a one to one basis and strictest

confidence to all concerned.  No action will be taken unless the problem cannot be resolved with all means at our disposal."

###    E.    Lt. Dunn's Reports of Misconduct Have Fallen on Deaf Ears Within the Department.

54.    Lt. Dunn regularly reports legitimate incidents of misconduct that he witnesses while on duty.  Pursuant to Department policy, Lt. Dunn has filed numerous critical incident reports requesting investigation of officer misconduct.  The Department policy book provides that "All alleged or suspected actions of department personnel involving the commission of a crime, misconduct, malfeasance, or violation of any departmental rules or orders must be reported to the Chief of Police for possible investigation."  It further provides that "All cases involving possible criminal charges, brutality charges, and/or dismissal ***must be*** [i]nvestigated by Internal Affairs" and "The report ***shall be*** made by the Supervising Officer upon receipt of information of an alleged violation, even when such is believed to be unfounded" (emphasis added).  And it provides that "the investigation will be completed as soon as possible, a disposition made, and a copy of the investigation and disposition sent to the Chief of Police."  In contravention of Department policy, Chief Fontenot frequently has refused to properly investigate reports that Lt. Dunn submits.

55.    For example, on January 30, 2019, Lt. Dunn filed a report detailing an officer's efforts to facilitate the escape of a suspect in Police Department custody who was a known flight risk.  Chief Fontenot did not investigate the incident, or cause it to be investigated, or discipline the responsible officer.

56.    On November 20, 2019, Lt. Dunn filed a report detailing officers' failure to comply with a Louisiana statute requiring mandatory reporting for allegations of domestic abuse or battery after responding to a domestic disturbance complaint.  An investigation was opened, improperly

and superficially investigated, and quickly dismissed by Chief Fontenot, who did not discipline the responsible officers.

57.     On December 3, 2019, Lt. Dunn filed a report detailing policy violations committed by officers investigating a rape, including the improper storage of DNA evidence in the locked trunk of a vehicle for over five days (which compromised the evidence).  Chief Fontenot conducted a cursory investigation of the incident, and issued a verbal reprimand to the officers involved.  Lt. Dunn subsequently filed a complaint with the Civil Service Board, which investigated the incident and concluded that the officers involved had violated the law and that a verbal reprimand was insufficient punishment for the misconduct.

58.     On December 6, 2019, Lt. Dunn filed a report detailing repeated threats by Officer Fontenot of physical violence directed at Lt. Dunn and his police canine, including, *inter alia*, threats to "break his motherf---ing fingers" and "put two [bullets] in his head."  Officer Fontenot's statements were in direct violation of Departmental policy, which provides that "A member shall never behave disrespectfully or use threatening or insulting language toward any other member engaged in the execution of his/her position or duties."  But Chief Fontenot refused to investigate the misconduct or discipline Officer Fontenot, dismissing the repeated threats of physical harm against Lt. Dunn as an officer "blowing off steam" among co-workers.

59.     None of the critical incident reports submitted by Lt. Dunn have resulted in meaningful investigations into the alleged misconduct, and no officers described in Lt. Dunn's reports have been disciplined for their failure to comply with Eunice Police Department policy and Louisiana state law.

**F.      Lt. Dunn Has Informed Local, State, and Federal Authorities About Departmental Misconduct.**

60.      When internal reporting did not suffice, Lt. Dunn sought help from outside the Department.  On his own initiative, while off duty, and initially on an anonymous basis, Lt. Dunn reported his concerns about Departmental misconduct to state, local, and federal authorities.  He did so because he felt morally compelled to report this misconduct and seek its correction.

61.      In or around summer 2018, Lt. Dunn called the Office of the Louisiana Attorney General.  Shortly thereafter, a Deputy Attorney General visited Lt. Dunn at his home, and they discussed misconduct that Lt. Dunn had observed in the Department.  Lt. Dunn was not contacted again by the Attorney General's office.

62.      In or around September 2019, Lt. Dunn met with an agent of the Federal Bureau of Investigation ("FBI"), Darren Kelly, regarding the violations committed by Chief Fontenot and other officers of the Department.  They met at Lt. Dunn's home, while Lt. Dunn was off duty.  In sum and substance, Lt. Dunn informed Agent Kelly about the violations of law described in paragraphs 30 through 53 or similar examples of misconduct Lt. Dunn observed.  Agent Kelly recommended that Lt. Dunn work with state and local authorities to address his concerns.

63.      On June 9, 2020, Lt. Dunn spoke with an Assistant District Attorney ("ADA"), Alisa Gothreaux of the St. Landry Parish District Attorney's Office.  They spoke on the phone, while Lt. Dunn was off duty.  In sum and substance, Lt. Dunn informed the ADA about the violations of law described in paragraphs 30 through 53 or similar examples of misconduct Lt. Dunn observed.  During subsequent discussion on or about June 17, 2020 among Lt. Dunn, the ADA, and another officer at the Eunice Police Department, the other officer informed the ADA that Department officers frequently violate the law and mishandle investigations.  On or about July 3, 2020, the ADA told Lt. Dunn that because of the upcoming election for District Attorney, her

office would not take action to remedy the misconduct perpetrated by Chief Fontenot and others at the Eunice Police Department.

64.     On or about June 9, 2020, while he was off duty, Lt. Dunn contacted Captain Eric Duplechain of the Louisiana State Police.  In sum and substance, Lt. Dunn informed Captain Duplechain about the violations of law described in paragraphs 30 through 53 or similar examples of misconduct Lt. Dunn observed.  Captain Duplechain advised Lt. Dunn that Louisiana State Police policy required any complaint of criminal misconduct to be lodged by the Chief of Police, *i.e.*, Chief Fontenot.  Lt. Dunn explained that, the prior year, he had reported an illegal arrest to an officer of the Louisiana State Police, who informed Chief Fontenot.  Chief Fontenot then threatened Lt. Dunn that should he report to the state police, Chief Fontenot would "be notified about it."

65.     In September 2020, Lt. Dunn had several conversations with the Sheriff of St. Landry Parish, Bobby Guidroz.  These conversations took place while Lt. Dunn was off duty and at home.  In sum and substance, Lt. Dunn informed Sheriff Guidroz of the violations of law described in paragraphs 30 through 53 or similar examples of misconduct Lt. Dunn observed. Sheriff Guidroz stated he wanted to commence an investigation, but needed the District Attorney's authorization to allow him to do so.  Sheriff Guidroz never followed up with Lt. Dunn and, to his knowledge, the District Attorney never authorized an investigation.

**G.     The Individual Defendants' Retaliatory Campaign Against Lt. Dunn.**

**1.     Retaliation Began When the Individual Defendants Learned That Lt. Dunn Spoke Out About Department Misconduct.**

66.     Lt. Dunn has long been disfavored by Chief Fontenot and those loyal to him.  As described *supra*, Lt. Dunn has repeatedly filed critical incident reports in an attempt to seek discipline and correction of officer misconduct for the improvement of the Department and the

community.  His refusal to abide by the "blue wall of silence" has not been well taken.  For example, in 2019, Chief Fontenot removed Lt. Dunn from narcotics investigations—an area in which he excelled—because Lt. Dunn reported to the Louisiana State Police a fellow officer's illegal arrest of an individual.

67.     Starting in the summer of 2020, Chief Fontenot, Lt. Young, and Officer Fontenot undertook a concerted, retaliatory campaign against Lt. Dunn.  On information and belief, two key events prompted this effort.  First, in June 2020, the District Attorney informed Chief Fontenot that Lt. Dunn had alerted authorities about Department misconduct.  And second, on August 17, 2020, Lt. Dunn filed a lawsuit against the City and Chief Fontenot alleging First Amendment retaliation, which arose from and alleges a separate series of events and conduct than that described herein.  On August 25, 2020, Mayor Fontenot told Lt. Dunn that Chief Fontenot was enraged about the lawsuit and that Chief Fontenot had stated, in sum and substance: "If you [the Mayor] and the City Council would not have taken away my damn powers, I could have gotten rid of [Lt. Dunn] or this problem a long time ago."  Numerous acts of retaliation are described in paragraphs 68 through 89 and the retaliation continues to this day.

### 2.     The Individual Defendants Have Spread Lies About Lt. Dunn Within the Department and Community.

68.     Chief Fontenot, Officer Fontenot, and Lt. Young have made false and malicious statements about Lt. Dunn, including that he is a "dirty cop," to numerous civilians in Eunice and to fellow officers at the Department in an effort to depict Lt. Dunn as corrupt, force him to resign, and make him unemployable.  For example, Chief Fontenot told another officer that Lt. Dunn is a "corrupt officer[] who [is] brainwashing everyone inside of the department."

69.     On information and belief, Chief Fontenot told Mayor Fontenot that Lt. Dunn was lazy, consistently absent from work, and managed the canine program poorly.  These accusations

were false and, when Chief Fontenot referred to Lt. Dunn's "absence," Lt. Dunn was actually on medical leave to recover from injuries he had sustained on the job, a direct result of the dangerous working conditions caused by Chief Fontenot's retaliatory staffing decisions.

70.    On October 8, 2020, an individual named Joshua Dupre appeared for a bond revocation hearing.  Under oath, after waiving his Fifth Amendment rights, Mr. Dupre testified that officers from the Eunice Police Department had asked him to falsely claim that he was paying bribes to Lt. Dunn—a clear effort to falsely depict Lt. Dunn as corrupt.  Mr. Dupre testified that Officer Fontenot approached him about making false allegations about Lt. Dunn.  Mr. Dupre testified that Officer Fontenot was "threatening [him]," sending him text messages that said "he was going to put these new charges on me, for me not to get out, that I have a hold on me."  Mr. Dupre explained:

> Victor [Fontenot], Ryan Young, and the Chief, they all beefing with Dunn, and like, I'm in the middle of it, like I'm on Dunn's side.  So he [Officer Fontenot] threatened me, telling me I need to give him some information on Dunn so they can get rid of his ass, his butt, or whatever, something like that.  Man, I ain't got no—I don't know what ya'll talking about.  I ain't never paid this man.

71.    Mr. Dupre testified further:

> My name got drawn in, something with Officer Dunn.  Something about I'm paying [Lt.] Dunn. . . [H]e got a lawsuit out right now on Eunice Police Department, for falsely using his name, or whatever.  So ever since somebody told Detective Victor [Fontenot] that I'm paying Officer Dunn money for information, which I'm not.  I don't [know] where they get that from, and this is how it all started. . . . [T]hey said I'm paying Dunn for information, like to get information . . . about what's going on with the police department, but I ain't paying nobody.

72.    Lt. Dunn has never accepted bribes from Mr. Dupre or any other individual, and the Individual Defendants' efforts to induce Mr. Dupre to make statements to the contrary is maliciously designed to falsely depict Lt. Dunn as corrupt.

73.     Lt. Dunn fears that the Individual Defendants' efforts to enlist members of the community against him—especially those already facing criminal exposure—present a grave threat to Lt. Dunn's safety.

**3.     Chief Fontenot and Officer Fontenot Have Threatened Lt. Dunn with Bodily Harm.**

74.     As a result of Lt. Dunn's diligent reporting about their misconduct, Chief Fontenot and Officer Fontenot have made threats of physical harm against Lt. Dunn.

75.     On September 24, 2020, a former supervising officer informed Lt. Dunn that Lt. Dunn was on Chief Fontenot's "hit list."

76.     On information and belief, in April 2021, in connection with Lt. Dunn's allegations about him, Chief Fontenot told others in the Department that it was "time for [Lt. Dunn] to die."

77.     These threats are part of a pattern of violent language directed at Lt. Dunn that Chief Fontenot has long condoned and even encouraged.

78.     For example, in or around May 2019 and/or August 2019, in reaction to Lt. Dunn's submission of a report about Officer Fontenot's misconduct, Officer Fontenot stated that he was "going to break [Lt. Dunn's] motherf---ing fingers," that Lt. Dunn was "conceived in the cesspool of his mother's womb," and that he was "going to f--k him up when [he] catch[es] him alone on a call."

79.     In or around August 2019, Officer Fontenot stated that he would "put two in his head before [Lt. Dunn] gets in [his] unit." Officer Fontenot made this statement in front of Chief Fontenot and other senior officers, who took no action to stop or discourage it.

80.     In fact, Chief Fontenot characterized the statements of Officer Fontenot and others as officers "blowing off steam" among co-workers, as discussed *supra* at paragraph 58.

**4.    The Individual Defendants Have Conducted Baseless Investigations Into Lt. Dunn.**

81.    Chief Fontenot has targeted Lt. Dunn with baseless and pretextual disciplinary actions to force his resignation and has enlisted Officer Fontenot and Lt. Young in that effort.  This effort has escalated since Chief Fontenot learned that Lt. Dunn informed outside authorities about Departmental misconduct.

82.    On June 30, 2020, a lieutenant told Lt. Dunn that Chief Fontenot was combing through Lt. Dunn's case files to locate any evidence of purported misconduct.  On information and belief, Chief Fontenot has been conducting an ongoing investigation into Lt. Dunn's prior casework since June 2020 without informing Lt. Dunn of the nature of the investigation or following other procedures dictated by Louisiana statute.

83.    On October 15, 2020, Officer Fontenot testified in Mr. Dupre's bond revocation hearing (discussed *supra*).  The court asked Officer Fontenot why, in a previous bond revocation hearing for Mr. Dupre, Officer Fontenot opposed revocation.  Officer Fontenot testified:

> That was concerning evidence that Mr. Dupre had come forward with, and an investigation that we are now working on, and still working on.  Mr. Dupre offered, uh, to provide us with further evidence in that case.  So, basically, what it is, Your Honor, it's a sensitive case.  If you would allow, I would not like to speak on that case right now.

84.    On information and belief, the "sensitive case" to which Officer Fontenot referred is a bogus criminal investigation that the Individual Defendants have commenced against Lt. Dunn in an effort to tarnish his reputation by depicting him as a corrupt officer.

85.    On March 19, 2021, Chief Fontenot initiated another pretextual investigation into Lt. Dunn for "contacting the Eunice City Marshall's office to request patrol assistance for normal duties without asking Deputy Chief Tony Kennedy or Chief Randy Fontenot for permission."

86.    As a result of these pending investigations, Lt. Dunn is unable to obtain employment with any other law enforcement agency because he is unable to pass a background check.  An offer of employment was revoked because of these investigations.

**5.    Chief Fontenot Reduced Lt. Dunn's Hours, Responsibilities, and Compensation.**

87.    As part of his effort to punish Lt. Dunn, and because he cannot fire him outright, Chief Fontenot has reduced Lt. Dunn's responsibilities and assigned him to entry-level duties below his rank.

88.    Beginning in 2019, Lt. Dunn was the sole canine handler at the Eunice Police Department.  On June 12, 2020, right after learning that Lt. Dunn had spoken to the District Attorney's Office, Chief Fontenot ordered the removal of Lt. Dunn's canine and equipment and eliminated the canine program.  Another officer informed Lt. Dunn that his canine was being offered to Officer Fontenot and another officer to punish Lt. Dunn.  With the removal of his canine handling duties, Lt. Dunn's compensation was reduced by approximately $473.20 per month.

89.    On June 19, 2020, Lt. Dunn filed an appeal with the Eunice Municipal Fire and Police Civil Service Board, challenging Chief Fontenot's capricious decision to terminate the canine program.  In connection with an evidentiary hearing before the Civil Service Board that was scheduled to take place in April 2021, on information and belief, Lt. Young and Officer Fontenot stated to an employee of the Eunice City Marshal's Office that they planned to lie under oath at the hearing rather than testify truthfully about the retaliation and harassment that Lt. Dunn has experienced.  Rather than proceed with the hearing, the City settled with Lt. Dunn, acknowledging that "the law and evidence being in favor thereof . . . the appeal is granted."  Chief Fontenot will not reinstate the canine program, however, and the settlement has not stopped the other forms of retaliation against Lt. Dunn.

## CAUSES OF ACTION

### COUNT ONE
**Violation of the First Amendment to the U.S. Constitution, Applicable to the State of Louisiana through the Fourteenth Amendment, and 42 U.S.C. § 1983 (Against the Individual Defendants)**

90.    Lt. Dunn incorporates by reference each and every allegation contained in paragraphs 1 through 89 as if set forth fully herein.

91.    Defendants have violated Lt. Dunn's rights pursuant to the First Amendment of the United States Constitution by retaliating against him for engaging in protected speech.

92.    To prove a First Amendment retaliation claim under 42 U.S.C. § 1983, a public employee must show that (1) he suffered an adverse employment action, (2) he spoke as a citizen on a matter of public concern, (3) his interest in the speech outweighs the government's interest in the efficient provision of public services, and (4) the speech precipitated the adverse employment action.

93.    Lt. Dunn is a public employee in the City of Eunice.

94.    Lt. Dunn informed the Office of the Louisiana Attorney General, the FBI, the St. Landry Parish District Attorney's Office, the Louisiana State Police, and the Office of the Sheriff of St. Landry Parish about misconduct pervasive in the Eunice Police Department.

95.    Lt. Dunn contacted these agencies and officials as an exercise of his freedom of speech with regard to a matter of public concern.

96.    Lt. Dunn contacted these agencies and officials on his own initiative as a private citizen, and not as part of his official duties. Specifically, Lt. Dunn was motivated by his concern about Eunice's citizens and the safety of his community. After witnessing misconduct, excessive force, corruption, and a culture of silence at the Eunice Police Department, and after raising his

concerns with Chief Fontenot, who failed to act, Lt. Dunn was compelled to raise these issues to others in power.

97.    Lt. Dunn's interest in the speech far outweighs any purported government interest in the efficient provision of public services.  Indeed, his speech goes hand-in-hand with the government's interest in the efficient provision of public services.

98.    Chief Fontenot and the other Individual Defendants learned that Lt. Dunn had reported their misconduct and they began a persistent and vengeful retaliatory campaign, including but not limited to the actions described herein.

99.    Lt. Dunn seeks a declaratory judgment that the Individual Defendants' actions violate his First Amendment rights and injunctive relief to end the Individual Defendants' violations of his First Amendment rights.

## COUNT TWO
### Civil Conspiracy in Violation of 42 U.S.C. § 1983
### (Against the Individual Defendants)

100.    Lt. Dunn incorporates by reference each and every allegation contained in paragraphs 1 through 99 as if set forth fully herein.

101.    Lt. Dunn brings this claim against the Individual Defendants, each of whom conspired with the others with the specific intent to violate Lt. Dunn's First Amendment right to speak as a citizen on a matter of public concern.

102.    The Individual Defendants acted in concert to intentionally violate Lt. Dunn's First Amendment rights by taking adverse employment actions against Lt. Dunn, namely, terminating his position as a canine officer, removing him from narcotics investigations, and making his working conditions nearly unbearable through physical threats, hostility, pretextual disciplinary action, and creating dangerous working conditions.

103.    The conduct of each Individual Defendant, and the Individual Defendants in concert, amount to a specific intent and an actual violation of Lt. Dunn's First Amendment right to speak on a matter of public concern, namely the corruption and misconduct that is rampant at the Eunice Police Department.

104.    Lt. Dunn seeks a declaratory judgment that the Individual Defendants' actions constitute an illegal civil conspiracy, and injunctive relief to end the conspiratorial actions and halt the violations of his First Amendment rights.

## COUNT THREE
### Defamation
### (Against Chief Fontenot and Officer Fontenot)

105.    Lt. Dunn incorporates by reference each and every allegation contained in paragraphs 1 through 104 as if set forth fully herein.

106.    Chief Fontenot and Officer Fontenot made false and defamatory statements concerning Lt. Dunn via unprivileged publications to various third parties to Lt. Dunn's detriment.

107.    For example, Chief Fontenot told Lt. Dunn's fellow officers that Lt. Dunn is a "corrupt officer[] who [is] brainwashing everyone inside of the department." Chief Fontenot has spread the lie that Lt. Dunn is a "dirty cop" to other officers inside the Department, Mayor Fontenot, and to the Eunice Board of Aldermen. This has harmed Lt. Dunn's reputation.

108.    Officer Fontenot falsely stated that Lt. Dunn was a "dirty cop" and, on information and belief, asked Joshua Dupre to falsely claim that he was paying bribes to Lt. Dunn—a clear effort to defame Lt. Dunn as a corrupt police officer. Mr. Dupre testified that Officer Fontenot approached him about making false allegations about Lt. Dunn.

109.    Officer Fontenot and Chief Fontenot's statements—which falsely alleged that Lt. Dunn engaged in criminal conduct—are defamatory *per se.*

110.    Officer Fontenot and Chief Fontenot purposely made false and defamatory statements about Lt. Dunn to damage his reputation and persuade the Mayor and/or Eunice Board of Aldermen to remove Lt. Dunn from his position at the Eunice Police Department.

111.    Lt. Dunn's ability to secure employment in law enforcement has been impaired as a result of Defendants' defamatory statements.  Lt. Dunn has also suffered from sleep deprivation and anxiety.

112.    Lt. Dunn seeks a declaratory judgment that Chief Fontenot's and Officer Fontenot's statements were false and defamatory, and injunctive relief to halt the proliferation of defamatory statements to Lt. Dunn's detriment.

## COUNT FOUR
**Civil Conspiracy**
**(Against Chief Fontenot and Officer Fontenot)**

113.    Lt. Dunn incorporates by reference each and every allegation contained in paragraphs 1 through 112 as if set forth fully herein.

114.    Lt. Dunn brings this claim against Chief Fontenot and Officer Fontenot, who conspired with one another with the specific agreement to commit a tortious act, namely collaborating to make false and defamatory statements about Lt. Dunn and in retaliation for Lt. Dunn's exercise of protected First Amendment rights.

115.    Chief Fontenot and Officer Fontenot have acted and continue to act in concert to make defamatory statements, which form the basis of pretextual investigations against Lt. Dunn. These investigations are intended to intimidate Lt. Dunn into remaining silent about the misconduct and pressure him to resign from his position at the Eunice Police Department.

116.     Chief Fontenot and Officer Fontenot have acted in concert to make defamatory statements that Lt. Dunn is corrupt.  These statements have served to undermine Lt. Dunn's supervisory authority and reputation amongst his co-workers at the Department.

117.     Chief Fontenot and Officer Fontenot's conspiracy to defame Lt. Dunn has caused damage to Lt. Dunn's reputation.  Moreover, Lt. Dunn has suffered from sleep deprivation and anxiety as a result of Defendants' defamatory campaign.

118.     Lt. Dunn seeks a declaratory judgment that Chief Fontenot's and Officer Fontenot's actions constitute an illegal civil conspiracy, and injunctive relief to end the conspiratorial actions.

## <u>COUNT FIVE</u>
**Violation of Louisiana State Whistleblower Statute, La. Rev. Stat. Ann. § 23:967(A)
(Against the City of Eunice and Chief Fontenot)**

119.     Lt. Dunn incorporates by reference each and every allegation contained in paragraphs 1 through 118 as if set forth fully herein.

120.     Defendants the City of Eunice and Chief Fontenot violated the Louisiana State Whistleblower statute when, as Lt. Dunn's employers, they took reprisals against Lt. Dunn, who in good faith, advised his employer of a violation of the law.

121.     Lt. Dunn repeatedly attempted to report police misconduct in violation of state laws to Chief Fontenot.  Lt. Dunn used the proper channels to file several critical incident reports with the Eunice Police Department and/or reported to various external authorities the following violations of state laws, including but not limited to:

     a.     Violation of La. Rev. Stat. Ann. Section 14:122.2 (threatening a public official or law enforcement), when Lt. Dunn reported to Chief Fontenot that Officer Fontenot threatened to "put two in the back of his head" and that he was "going to break [Lt. Dunn's] motherf---ing fingers."

     b.     Violation of La. Rev. Stat. Ann. Section 14:130.1 (obstruction of justice), when Lt. Dunn reported that police officers had negligently mishandled evidence in a rape case after leaving evidence in a hot car for five to seven days.

    c.    Violation of La. Rev. Stat. Ann. Section 14:111 (assisting escape), when Lt. Dunn reported that police officers attempted to help an inmate escape from jail.

    d.    Violation of La. Rev. Stat. Ann. Section 2140 (law enforcement officers' duties), when Lt. Dunn reported that officers had reason to believe that an individual was engaging in domestic violence but the officers did not arrest or investigate that individual.

122.    Chief Fontenot ignored the aforementioned reports (and others) and failed to conduct proper investigations into them.

123.    Lt. Dunn then reported the misconduct to the Office of the Louisiana Attorney General, the FBI, the St. Landry Parish District Attorney's Office, the Louisiana State Police, and the Office of the Sheriff of St. Landry Parish about misconduct pervasive in the Eunice Police Department.

124.    On information and belief, Chief Fontenot learned that Lt. Dunn reported the misconduct to others outside of the Eunice Police Department.  In response, the Individual Defendants engaged in a retaliatory campaign aimed at defaming Lt. Dunn, securing Lt. Dunn's resignation, and rendering him unemployable.  Chief Fontenot and others targeted Lt. Dunn by reducing his hours and compensation, removing him from narcotics investigations, assigning him to duties below his rank, and outright telling Lt. Dunn to resign.

125.    Such actions constitute an adverse employment action under Louisiana's Whistleblower statute, as they constitute a significant change in employment status, reassignment with significantly different responsibilities, and a significant change in benefits—*i.e.*, a reduction in hours leading to a reduction in pay.

126.    Lt. Dunn seeks a declaratory judgment that the City's and Chief Fontenot's actions constitute a violation of the Louisiana Whistleblower Statute, La. Rev. Stat. Ann. § 23:967(A), and injunctive relief to end any such further violations.

## COUNT SIX
### Intentional Infliction of Emotional Distress
### (Against the Individual Defendants)

127.    Lt. Dunn incorporates by reference each and every allegation contained in paragraphs 1 through 126 as if set forth fully herein.

128.    The Individual Defendants each displayed extreme and outrageous conduct, with the intention and effect of inflicting severe emotional distress. The Individual Defendants have displayed a pattern of deliberate, repeated harassment from June 2020 to the present, after the Individual Defendants learned that Lt. Dunn had been reporting their misconduct to federal, state, and local authorities.

129.    As discussed in paragraphs 75, 76, and 79, *supra*, Chief Fontenot keeps a "hit list," and Lt. Dunn has been told that his name is on it. Officer Fontenot was recorded during a meeting, where all of the Individual Defendants were present, saying he would put "two in the back of" Lt. Dunn's head. In April 2021, Chief Fontenot also told employees at the Department that it is "time for [Lt. Dunn] to die."

130.    Chief Fontenot has ordered Lt. Dunn to write baseless disciplinary reports about employees against whom he holds a vendetta and threatens Lt. Dunn with adverse employment action if he does not comply. The Individual Defendants have collaborated to pursue harassing and baseless investigations against Lt. Dunn, including as recently as March 2021, while refusing to investigate actual incidents of illegal misconduct by other officers at the Department. The goal of these investigations is to force Lt. Dunn's resignation from his position at the Department, render him unemployable at any other law enforcement agency, and/or have Lt. Dunn arrested.

131.    Each of these actions by each Individual Defendant constitute a pattern of deliberate, repeated harassment over time in the workplace.

132.    As a result of the Individual Defendants' extreme and outrageous pattern of retaliation and harassment, Lt. Dunn has suffered from sleep deprivation and anxiety.

133.    Lt. Dunn seeks a declaratory judgment that the Individual Defendants' actions constitute intentional infliction of emotional distress, and injunctive relief to end the pattern of deliberate, repeated harassment to Lt. Dunn's detriment.

## COUNT SEVEN
### False Light Invasion of Privacy
### (Against Chief Fontenot and Officer Fontenot)

134.    Lt. Dunn incorporates by reference each and every allegation contained in paragraphs 1 through 133 as if set forth fully herein.

135.    Chief Fontenot and Officer Fontenot have made statements to Lt. Dunn's colleagues, local authorities, and citizens of Eunice that Lt. Dunn is a "dirty cop" and a "corrupt officer" who is "brainwashing everyone inside of the department." These statements unreasonably place Lt. Dunn in a false light before the public.

136.    Lt. Dunn has a protected interest in his image in the public eye as an upstanding citizen and effective law enforcement officer who strictly follows the law and Department policies.

137.    Lt. Dunn's colleagues at the Department and the citizens of Eunice, including individuals in positions of authority, have been left with the impression that Chief Fontenot's and Officer Fontenot's pervasive false statements about Lt. Dunn are true.

138.    Lt. Dunn seeks a declaratory judgment that Chief Fontenot's and Officer Fontenot's actions constitute false light invasion of privacy, and injunctive relief to halt the proliferation of Defendants' false statements to Lt. Dunn's detriment.

**COUNT EIGHT**
**Violation of Article 1, Section 7 of the Louisiana Constitution (Freedom of Expression)**
**(Against the Individual Defendants)**

139.    Lt. Dunn incorporates by reference each and every allegation in paragraphs 1 through 138 as if set forth fully herein.

140.    For the reasons set forth under Count One, the Individual Defendants have also violated Lt. Dunn's right to free expression under Article 1, Section 7 of the Louisiana Constitution, which states that "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."

141.    Lt. Dunn has notified the FBI, the Louisiana State Police, the St. Landry Parish District Attorney, the Office of the Louisiana Attorney General, and the Office of the Sheriff of St. Landry Parish about misconduct pervasive in the Eunice Police Department. Lt. Dunn contacted these agencies and individuals on his own initiative as an exercise of his freedom of speech with regards to a matter of public concern, *i.e.*, widespread misconduct in the Eunice Police Department. Lt. Dunn's interest in free speech far outweighed the Department's interest in efficiency of public services; indeed, it promotes the City's interest in efficiently and fairly rendering public services.

142.    Chief Fontenot and the other Individual Defendants learned that Lt. Dunn had blown the whistle on their misconduct and have carried out a persistent and vengeful retaliatory campaign, including but not limited to the conduct described herein. This included adverse employment actions including a reduction in compensation and retaliatory staffing assignments.

143.   Lt. Dunn seeks a declaratory judgment that the Individual Defendants' actions violate his right to free speech under the Louisiana Constitution and injunctive relief to end the Individual Defendants' violations of his free speech rights under the Louisiana Constitution.

## COUNT NINE
### Municipal Liability for Violation of 42 U.S.C. § 1983
### (Against Defendant City of Eunice)

144.   Lt. Dunn incorporates by reference each and every allegation contained in paragraphs 1 through 143 as if set forth fully herein.

145.   The City of Eunice is responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the Eunice Police Department.

146.   The City of Eunice has the power to prevent or aid in the prevention of the wrongs done and conspired to be done as described herein yet failed or refused to do so in violation of 42 U.S.C. § 1983.

147.   On information and belief, the actions of the Individual Defendants resulted from and were taken pursuant to the actual and *de facto* policies, customs, and practices of the City of Eunice, as developed and maintained by Chief Fontenot, exhibiting deliberate indifference to the constitutional rights of individuals in Eunice, which caused the violation of Lt. Dunn's rights, as described herein.  These policies, customs, and practices include the following:

      a.      Condoning, approving, and authorizing a culture and environment within the Eunice Police Department in which personnel, including the Individual Defendants, had the reasonable belief or expectation that their actions would not be properly monitored by supervisory officers and that their misconduct and/or unlawful actions would not be thoroughly investigated or sanctioned, but would be approved and tolerated;

      b.      Pervasive failure to take reasonable and necessary steps to properly investigate, charge, and maintain disciplinary action for misconduct against officers, supervisors or commanders, so that disciplinary investigations and actions, when taken, are frequently sabotaged and undermined, with the result that they are frequently abandoned or reduced in scope with a corresponding decay and decline in professionalism, accountability and

discipline in the Eunice Police Department to the detriment of the civil rights of residents and visitors to the City of Eunice;

c.  Selectively enforcing Eunice Police Department policies and pursuing disciplinary action against personnel who criticize, report, and record incidents of police misconduct or whom Chief Fontenot considers disloyal to him;

d.  Authorizing, permitting, ratifying, and condoning policies, practices, customs, and procedures whereby constitutionally protected activities involving the rights to speech have been the subject of disruption, interference, harassment and intimidation, in an effort to deter, frustrate, intimidate, and have a chilling effect upon the rights of Lt. Dunn and other employees of the Eunice Police Department, to freely and lawfully report crime and incidents of police misconduct without fear of retaliation or negative employment consequences.

148.  As a result of these policies, customs, and practices, the residents of the City of Eunice are put at risk because unconstitutional and illegal police practices—such as officers' excessive use of force—go undisciplined and uncorrected.

149.  The foregoing policies, customs, or practices of the City of Eunice are carried out with malicious, willful, wanton, and reckless disregard for the constitutional rights of Lt. Dunn and other employees who dare speak out about matters of public concern.

150.  The violation of Lt. Dunn's rights is not an isolated incident, but rather an ongoing practice of unjust retaliation against officers who observe and report policy violations and incidents of police misconduct that reflect poorly on Chief Fontenot or otherwise have potential negative political consequences.

151.  Chief Fontenot engages in a regular pattern of such conduct, including:

a.  Refusing to investigate wrongdoing by police officers who are loyal to him and are willing to stay silent about violations committed by Eunice Police Department personnel;

b.  Disciplining employees he dislikes without basis, and opening unfounded investigations against those employees in an effort to discredit and/or push them out of the Department;

     c.     Maintaining a "hit list" of officers who speak out about police misconduct and matters of public concern; and

     d.     Imposing on personnel who report unlawful behavior within Department ranks unfavorable working conditions.

152.    As a result of the foregoing customs, policies, usages, practices, procedures, and rules of the City of Eunice, Lt. Dunn has experienced adverse employment consequences, including the termination of his position as a canine officer and his ability to work on narcotics investigations, and has suffered unbearable and harassing working conditions.

153.    The foregoing *de facto* policies of cronyism and retaliation were the direct and proximate cause of the constitutional violations suffered by Lt. Dunn as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Dunn respectfully requests that the Court:

154.    Issue a declaration that Defendants' actions and inactions are unlawful and unconstitutional for the reasons specified above;

155.    Enter a permanent injunction ordering the Individual Defendants to halt all unlawful and unconstitutional actions for the reasons specified above;

156.    Enter a permanent mandatory injunction ordering Defendants City of Eunice and Chief Fontenot to:

     a.     Issue and require the use of head-mounted body cameras or video recording eyeglasses by all Eunice police officers;

     b.     Require crisis intervention and de-escalation training for all Eunice Police Department employees who respond to mental health emergencies;

     c.     Require the Eunice Police Department to revise its policies to mandate that officers intervene to prevent the use of excessive force or other illegal conduct by fellow officers;

     d.     Institute and implement mandatory policies and procedures to ensure that employees of the Eunice Police Department submit accurate records of daily hours worked;

e.    Fund and appoint a full-time, paid investigator to the Eunice Civil Service Board;

f.    Eliminate all fees charged for the furnishing of copies of public records requested pursuant to the Louisiana Public Records Act, La. R.S. 44:1, *et seq.*, in the custody of the City of Eunice or the Eunice Police Department;

g.    Require the Chief of Police to disclose to the public, on a quarterly basis, the number and substance of internal and external complaints of police misconduct that were received, investigated, deemed unsubstantiated, and/or closed by the Eunice Police Department;

h.    Establish a qualified and independent oversight agency to investigate, mediate, and/or prosecute complaints of Eunice Police Department misconduct, including, but not limited to, complaints of excessive use of force; discrimination based on race, gender, religion, national origin, age, or disability; incidents involving death or serious injury; witness or evidence tampering; falsifying reports; bribery; sexual misconduct; use of drugs or alcohol while on duty; and/or inmate abuse;

i.    Deploy Eunice police officers with appropriate and adequate supervision;

j.    Install a qualified monitor to oversee and report to the Court on implementation of the policies and procedures included herein, including through periodic and regular reviews and audits of the Eunice Police Department's practices.

157.    Enter an order granting Plaintiff's costs and expenses in this action, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

158.    Award such other and further relief as the Court may deem just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: June 4, 2021                                    Respectfully submitted,

                                                       By: /s/ Stephanie Willis
                                                       Stephanie Willis (LA Bar No. 31834)
                                                       Nora Ahmed (*pro hac vice* forthcoming)
                                                       ACLU FOUNDATION OF LOUISIANA
                                                       1340 Poydras Street, Suite 2160
                                                       New Orleans, Louisiana 70112
                                                       Telephone: (504) 522-0628
                                                       Email: swillis@laaclu.org
                                                               nahmed@laaclu.org

                                                       *Of Counsel:*

                                                       Andrew W. Stern (*pro hac vice* forthcoming)
                                                       Francesca E. Brody (*pro hac vice* forthcoming)
                                                       Julia L. Bensur (*pro hac vice* forthcoming)
                                                       Sarah T. Goodfield (*pro hac vice* forthcoming)
                                                       Karma O. Farra (*pro hac vice* forthcoming)
                                                       Norman M. Hobbie, Jr. (*pro hac vice* forthcoming)
                                                       SIDLEY AUSTIN LLP
                                                       787 Seventh Avenue
                                                       New York, New York 10019
                                                       Telephone: (212) 839-5300
                                                       Fax:  (212) 839-5599
                                                       Email: astern@sidley.com
                                                               fbrody@sidley.com
                                                               jbensur@sidley.com
                                                               sgoodfield@sidley.com
                                                               kfarra@sidley.com
                                                               nhobbie@sidley.com

                                                       *Attorneys for Plaintiff Michael Dunn*