# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **MICHAEL DUNN** | **CIVIL ACTION NO. 6:21-CV-01535** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **RANDY FONTENOT, ET AL** | **MAG. JUDGE DAVID J. AYO** |

## MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE TESTIMONY AND EXPERT REPORT OF PLAINTIFF'S EXPERT, MARK S. DUNSTON

Respectfully submitted,

BECKER & HEBERT, LLC

By:  *s/Michael D. Hebert*
       MICHAEL D. HEBERT (17297)
       JAMES P. DOHERTY, III (25651)
       201 Rue Beauregard
       Lafayette, Louisiana  70508
       (337) 233-1987
       (337) 235-1748 (facsimile)
       mhebert@lawbecker.com
       james@lawbecker.com

Counsel for Defendant, CITY OF EUNICE

# TABLE OF CONTENTS

Page:

Index of Authorities ........................................................................................................ iii

I.   Introduction ........................................................................................................1

II.  Brief Factual Background ...................................................................................1

   A.  Plaintiff's General Allegations........................................................................1

   B.  Specific Factual Allegations Against the City ................................................3

   C.  Plaintiff's Retention of Mark S. Dunston........................................................4

III. Law and Argument ............................................................................................4

   A.  Standard for Admissibility of Expert Opinion................................................4

   B.  Dunston's Testimony and Opinions Should be Excluded Because they are
       Inadmissible under Fed. R. Evid. 702 and Fed. R. Evid. 704.............................8

       1.  Dunston's report and opinions do not assist the trier of fact to understand the
           evidence or to determine a fact in issue as required by Fed. R. Evid. 702(a)...............8

       2.  Dunston's report and opinions are not based on sufficient facts or data as
           required by Fed. R. Evid. 702(b) ..............................................................................12

       3.  Dunston's report and opinions are not the product of reliable principles and
           methods as required by Fed. R. Evid. 702(c)..............................................................14

       4.  Dunn's report and opinions are in violation of Fed. R. Evid. 704 because they
           contain a litany of impermissible legal conclusions thinly disguised as opinions
           ......................................................................................................................................16

   C.  Dunston's Testimony and Opinions Should be Excluded Because they are not
       Relevant under Fed. R. Evid. 401 and Fed. R. Evid. 402 or are otherwise prejudicial
       under Fed. R. Evid. 403 ..........................................................................................20

IV. Conclusion .........................................................................................................21

Certificate of Service ....................................................................................................22

## INDEX OF AUTHORITIES

Cases                                                                                                      Page:

*In re: Aircrash Disaster at New Orleans, Louisiana*, 795 F.2d 1233 (5th Cir. 1986)...................13

*Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)...................................................................19

*Black v. Food Lion, Inc*. 171 F.3d 308, 311 (5th Cir. 2003)...........................................................6

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 415, 117 S.Ct. 1382, 1394, 137 L.Ed.2d 626 (1997) ....................................................................8

*Bocanegra v. Vicmar Services, Inc*., 320 F.3d 581(5th Cir. 2003)...................................................6

*Brown v. Williams*, 124 Fed. Appx. 907, 909 (5th Cir. 2005) ...................................................8, 20

*C.P. Interest, Inc. v. California Pools, Inc*., 238 F.3d 690, 697 (5th Cir. 2001) ...........................8

*Christophersen v. Allied-Signal*, 939 F.2d 1106, 1114 (5th Cir. 1991)(en banc), *cert. denied*, 503 U.S. 912, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992).........................................15

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 391-392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989) ...........................................................................................................8, 20

*Daubert v. Merrell Dow Pharmaceutical, Inc.,* 509 U.S. 579, 589-591 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993) .................................................................5, 6, 7, 14, 22

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* ("Daubert II"), 43 F.3d 1311, 1317 (9th Cir. 1995)............................................................................................................7

*Guillory v. Domtar Industries Inc*., 95 F.3d 1320, 1331 (5th Cir. 1996).......................................14

*Hardin v. Ski Venture, Inc*., 50 F.3d 1291 (4th Cir. 1995) ...........................................................21

*Hygh v. Jacobs*, 961 F.2d 359 (2nd Cir. 1992) ...........................................................................13

*Irvine v. Murad Skin Research Laboratories, Inc*., 194 F.3d 313 (1st Cir. 1999) .......................14

*Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012)...................................8

*Kieffer v. Weston Land, Inc*., 90 F.3d 1496 (10 Cir. 1996).............................................................7

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 1175, 1176, 1179 (1999)...........................................................................................................5, 6, 7

*Leake v U.S.*, 843 F.Supp.2d 554, 564 (E.D. Pa. 12/29/11)................................................................7

*Monell v. New York Dept. of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-2036, 56 L.Ed.2d 611 (1978)................................................................8

*Moore v. Ashland Chemical, Inc.* 151 F.3d 269, 275, 276 (5th Cir. 1998) ................................5, 6

*Nagle v. Sheriff Marlin Gusman*, No. 12-1910, 2016 WL 541436, at *4 (E.D. La. Feb. 11, 2016) ................................................................14

*Owen v. Kerr-McGee Corp.*, 698 F.2d 236 (5th Cir. 1983)................................................................8

*Perry v Novartis Pharmaceuticals Corp.*, 564 F.Supp.2d 452, 468 (E.D. Pa. 2008) ....................7

*Peterson v. City of Plymouth*, 60 F.3d 469 (8th Cir. 1995) ................................................................13

*Richmond Steel, Inc. v. Puerto Rican American Insurance Company*, 954 F.2d 19, 21 (1st Cir. 1992)................................................................4

*Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) ................................................................7

*Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)................................................................13

*Savoy v. State Farm Fire & Cas. Co.*, No. 06-0517, 2006 WL 2795475 ................................7

*Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997)................................7

*Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988) ................................................................19

*Stolt Achievement, Ltd. v. Dredge B.E. Lindholm*, 447 F.3d 360, 366 (5th Cir. 2006) ................................................................6

*Sylvester v. Cain*, 311 Fed. Appx. 733, 735 (5th Cir. 2009)................................................................8, 20

*United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014) ................................................................14

*U.S. v. Paul*, 175 F.3d 906, 910 (11th Cir. 1999) ................................................................6

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997)................................................................7

<u>Statutes</u>                                                                                                                            <u>Page</u>:

Fed. R. Evid. 401 ................................................................1, 20

Fed. R. Evid. 402 ................................................................1, 20

iv

Fed. R. Evid. 403 ...................................................................................................1, 20, 21

Fed. R. Evid. 702 ...............................................................................................1, 5, 6, 8, 15

Fed. R. Evid. 702(a) .......................................................................................................8

Fed. R. Evid. 702(b) .....................................................................................................12

Fed. R. Evid. 702(c) .....................................................................................................14

Fed. R. Evid. 702(d) .....................................................................................................16

Fed. R. Evid. 703 .........................................................................................................14

Fed. R. Evid. 704 ...............................................................................................7, 8, 16, 20

La. Const. Art. VI .........................................................................................................10

La. R.S. 33:321, et seq. ("Lawrason Act") ...................................................................10, 11, 21

La. R.S. 33:321 ...........................................................................................................10

La. R.S. 33:423(A) .......................................................................................................10

La. R.S. 33:423.27 .......................................................................................................10

La. R.S. 33:2477(1),(4) .................................................................................................12

42 U.S.C. § 1983 ...............................................................................................3, 8, 19, 20

## <u>MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE TESTIMONY AND EXPERT REPORT OF PLAINTIFF'S EXPERT, MARK S. DUNSTON</u>

Defendant, the City of Eunice, files this memorandum in support of its Motion in Limine to Exclude Testimony and Expert Report of Plaintiff's named expert, Mark S. Dunston.

### I.    <u>INTRODUCTION</u>

The City of Eunice urges the instant Motion in Limine seeking to prohibit the plaintiff from offering into evidence the expert testimony of Mark S. Dunston, who has been named as an expert by the plaintiff, and who tendered a written report dated November 26, 2025[1] and supplemental written report dated February 3, 2026.[2]  The anticipated testimony and opinions as expressed in the written reports of Mr. Dunston should be excluded in entirety because they will not "assist the trier of fact to understand the evidence or to determine a fact in issue" as required by Fed. R. Evid. 702, because they are not based on sufficient facts or data as required by Fed. R. Evid. 702, because they offer legal conclusions disguised as "opinions", because they offer opinions outside the scope of police practices and procedures, because they fail to meet the relevancy standards of Fed. R. Evid. 401 and 402, and because, if relevant, are unfairly prejudicial under Fed. R. Evid. 403.

### II.    <u>BRIEF FACTUAL BACKGROUND</u>

#### A.  Plaintiff's General Allegations.

Plaintiff, Michael Dunn ("Dunn"), filed this lawsuit in June 2021, seeking declaratory and injunctive relief against the City, former Chief Randy Fontenot, former Officer Victor Fontenot,

---

[1] See Expert Report of Mark S. Dunston attached as Exhibit "A".
[2] See Supplemental Expert Report of Mark S. Dunston attached as Exhibit "B".  Dunn has filed a consent "MOTION for Extension of Expert Disclosure Deadlines, styled as Stipulation"  seeking an extension of the November 26, 2025 expert report deadline in this case to allow for the submission of this supplemental report (Doc. 228) but this court has not yet acted upon the motion.  Although the proposed Order submitted by Dunn with the motion would have allowed for the City to submit its own supplemental expert report, the City chose not to do so.

and Lt. Ryan Young.[3]  Dunn asserts First Amendment retaliation and whistleblower claims arising out of his employment as a lieutenant with the Eunice Police Department ("EPD").[4]

Dunn alleges that he has observed "pervasive corruption and misconduct" at EPD.[5]  He alleges that he reported numerous instances of misconduct by his fellow officers, including use of excessive force, neglect of the medical needs of inmates, mishandling evidence, and misuse of funds.[6]

Dunn alleges that when EPD "refused" to address these issues, he reported the "corruption and misconduct" to "state, local, and federal authorities."[7]  Dunn also alleges that he notified these authorities that former Chief Fontenot "selectively enforced the law" and "weaponized" the disciplinary process to prevent officers from exposing misconduct within EPD.[8]

According to Dunn, former Chief Fontenot discovered that he had reported Fontenot's and EPD's alleged misconduct to these outside authorities in June of 2020.[9]  Dunn alleges that former Chief Fontenot and the other Individual Defendants[10] then "engaged in a campaign of retaliation against [Plaintiff] in an attempt to force his resignation from [EPD] in violation of his First Amendment rights and numerous Louisiana state laws."[11]

Dunn does not seek damages.  Rather, he contends that he filed this lawsuit "to end corruption and wrongdoing within the [EPD] and to establish a legitimate and effective mechanism for investigating complaints of police misconduct in the City of Eunice."[12]  Dunn seeks declaratory

---

[3] Doc. 128 (First Amended Complaint) at ¶¶ 20-23.
[4] Doc. 128 at ¶ 19.
[5] Doc. 128 at ¶¶ 2, 3, 32.
[6] Doc. 128, at
[7] Doc. 128 at ¶¶ 2, 3, 5, 32.
[8] Doc. 128 at ¶ 3; see also ¶¶ 30-31; 51-54.
[9] Doc. 128 at ¶ 5.
[10] Doc. 128 at ¶ 7, footnote 4 ("Chief Fontenot, Officer Fontenot, and Lt. Young are referred to herein as the 'Individual Defendants'").
[11] Doc. 128 at ¶ 2; see also ¶ 7.
[12] Doc. 128 at ¶ 18.

and injunctive relief directed to seven categories of alleged past actions of the Individual Defendants,[13] and in two instances, directed to the alleged past actions of the City.[14]

### B. Specific Factual Allegations Against the City.

Of the nine (9) Counts set forth in Dunn's First Amended Complaint, only two are asserted against the City. In Count 5 (Violation of Louisiana State Whistleblower Statute, La. R.S. 23:967(A)), Dunn alleges that former Chief Fontenot and the City violated the whistleblower statute when, as his employers, "they took reprisals against Lt. Dunn, who in good faith, advised his employer of a violation of the law."[15] In support, Dunn further alleges in this Count 5 that "Chief Fontenot and others targeted Lt. Dunn" and that the "Individual Defendants engaged in a retaliatory campaign aimed at defaming Lt. Dunn, securing Lt. Dunn's resignation, and rendering him unemployable."[16] Dunn does not allege any acts or omissions on the part of the City beyond these allegations directed specifically against former Chief Fontenot and the Individual Defendants.

In Count 9 (Municipal Liability for Violation of 42 U.S.C. § 1983), Dunn alleges that the City is "responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the [EPD]."[17] He further alleges that the City "has the power to prevent or aid in the prevention of the wrongs done and conspired to be done as described herein yet failed to do so."[18] In conclusory fashion, Dunn alleges that the actions of the Individual Defendants resulted from and were taken pursuant to the "actual and *de facto* policies, customs, and practices of the

---

[13] Doc. 128 at ¶ 133, 139, 150, 156, 171, 176, 181.
[14] Doc. 128 at ¶ 164.
[15] Doc. 128 at ¶ 158.
[16] Doc. 128 at ¶ 162.
[17] Doc. 128 at ¶ 183.
[18] Doc. 128 at 184.

[City], as developed and maintained by Chief Fontenot."[19]    Dunn   then   references   "*de facto* policies of cronyism and retaliation" allegedly adopted by former Chief Fontenot within the EPD.[20]

### C.  Plaintiff's Retention of Mark S. Dunston

Dunn disclosed the retention of Mark S. Dunston as an expert witness on July 1, 2022.  In that disclosure, Dunn did not designate Dunston as an expert in any specific field, although it appears from his CV that his experience and qualifications are in the field of police procedures and training.  Dunston's Expert Report states, "I was asked to examine the policies and procedures of the Eunice, Louisiana, Police Department (the "EPD" or "Department"), in order to assess how they compare to accepted best practices for police departments across the country."[21]   Dunston also reveals that he examined the testimony and materials produced "to offer an opinion on the effect the EPD policies have on the Department, its employees, and the subsequent retaliation efforts against Lt. Dunn for having revealed such misconduct in order to inform my opinion."[22] Thus, Dunston appears to have been offered as an expert solely for purposes on opining on the policies and procedures of the EPD, a field which is unnecessary to assist the trier of fact in understanding the evidence in this case or determining a fact in issue with respect to Dunn's alleged deprivation of constitutional rights.

## III.    LAW AND ARGUMENT

### A.  Standard for Admissibility of Expert Opinion.

As a rule, trial courts have broad discretion in determining the qualification of an expert witness and the admissibility of expert testimony.[23]   As the party offering Mr. Dunston's

---

[19] Doc. 128 at ¶ 185.
[20] Doc. 128 at ¶ 191; see also ¶¶ 185-190 and ¶ 192.
[21] Exhibit "A", p. 1.
[22] Id, p. 2.
[23] *Richmond Steel, Inc. v. Puerto Rican American Insurance Company*, 954 F.2d 19, 21 (1st Cir. 1992).

testimony, plaintiff bears the burden of establishing the reliability and admissibility of Dunston's testimony and the opinions outlined in his report by a preponderance of the evidence.[24]   The admissibility of expert testimony is governed by Fed. R. Evid. 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Plaintiff must prove all of these elements in order for Mr. Dunston's testimony to be admissible.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held "the trial judge must ensure that any and all scientific testimony or evidence is not only relevant, but reliable."[25] Under the reliability requirement, the party that proffers the testimony must "establish a standard of evidentiary reliability" or "trustworthiness."[26]   To be valid, an expert's opinion must be "ground[ed] in the methods and procedures of science," and "supported by appropriate validation."[27]   Therefore, if an expert's testimony's "factual basis, data, principles, methods, or their application are called sufficiently into question..., the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline."[28]

---

[24] *Moore v. Ashland Chemical, Inc.* 151 F.3d 269, 276 (5th Cir. 1998).

[25] *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993).

[26] *Id.* at 590, n. 9.

[27] *Id.*

[28] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 1175 (1999).

Conjecture, hypothesis, subjective belief, and unsupported speculation are impermissible bases of expert opinion and must be discarded.[29]

The Supreme Court in *Daubert* presented four non-exclusive factors to aid a judge in determining whether proposed testimony satisfies the Rule 702 standard: (1) whether the expert's theory can and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential error rate of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.[30]   Though these factors were confected regarding the admissibility of scientific evidence, the Court's holding applies to all types of expert testimony, regardless of the subject matter.[31]

Nonetheless, in cases involving non-scientific testimony, "the test of reliability is a 'flexible' one, and *Daubert*'s list of specific factors neither necessarily nor solely applies to all experts or in every case."[32]   It is "the trial court's duty is to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"[33]

If the trial court determines that the expert's theory or technique is reliable, it must then look to the relevancy prong of the *Daubert* test.   As with any testimony, expert testimony must be relevant to an issue to be decided by the trier of fact.[34]   To be relevant, the expert testimony must be based on special knowledge and must assist the trier of fact to understand or determine a fact at

---

[29] *Daubert*, 509 U.S. at 590-591.
[30] *Id.*
[31] *Kumho*, supra.; *Stolt Achievement, Ltd. v. Dredge B.E. Lindholm*, 447 F.3d 360, 366 (5th Cir. 2006).
[32] *U.S. v. Paul*, 175 F.3d 906, 910 (11th Cir. 1999); *Moore*, supra. at 275.
[33] *Black v. Food Lion, Inc*. 171 F.3d 308 (5th Cir. 2003).
[34] *Bocanegra v. Vicmar Services, Inc*., 320 F.3d 581(5th Cir. 2003).

issue.[35]  The expert opinion must be based on facts that enable the expert "to express a reasonable accurate conclusion as opposed to conjecture or speculation."[36]

In consideration of the reliability and relevance of an expert's testimony, the trial court should consider whether the expert proposes "to testify about matters growing naturally and directly out of research conducted independent of litigation, or whether he has developed his opinions expressly for the purpose of testifying."[37]  Further, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."[38]

In that regard, "application of the *Daubert* factors is germane to evaluating whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers."[39]  In the absence of supporting data, an expert's conclusion are merely guesswork, and guesses, even educated ones, are insufficient to meet evidentiary standards.[40]

In other words, the court must assess whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting."[41]

Fed. R. Evid. 704 states, "An opinion is not objectionable just because it embraces an ultimate issue."  However, despite this seemingly broad language of Rule 704, an expert may not

---

[35] *Savoy v. State Farm Fire & Cas. Co*., No. 06-0517, 2006 WL 2795475.

[36] *Kieffer v. Weston Land, Inc*., 90 F.3d 1496 (10 Cir. 1996).

[37] *Daubert v. Merrell Dow Pharmaceuticals, Inc.* ("Daubert II"), 43 F.3d 1311, 1317 (9th Cir. 1995).

[38] *Black*, 171 F.3d at 311, citing *Kumho Tire*, 119 S.Ct. at 1179.

[39] *Watkins v. Telsmith, Inc*., 121 F.3d 984, 991 (5th Cir. 1997).

[40] See e.g. *Leake v U.S.*, 843 F.Supp.2d 554, 564 (E.D. Pa. 12/29/11), citing *Perry v Novartis Pharmaceuticals Corp.*, 564 F.Supp.2d 452, 468 (E.D. Pa. 2008), quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996). ("[T]he courtroom is not the place for scientific guesswork, even of the inspired sort.  Law lags science; it does not lead it.")

[41] *Sheehan v. Daily Racing Form, Inc*., 104 F.3d 940, 942 (7th Cir. 1997); *Kumho*, at 1176 (Daubert requires the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

offer opinions that amount to conclusions of law.[42]  Courts, citing Fed. R. Evid. 704, routinely find

that experts are not permitted to give legal conclusions.[43]

### B. Dunston's Testimony and Opinions Should be Excluded Because they are Inadmissible under Fed. R. Evid. 702 and Fed. R. Evid. 704.

*1. Dunston's report and opinions do not assist the trier of fact to understand the evidence or to determine a fact in issue as required by Fed. R. Evid. 702(a).*

To establish a § 1983 action, the plaintiff must establish (i) that there has been a violation

of rights secured by the Constitution or laws of the United States, and (ii) that such violation was

committed by a person acting under color of state law.

A Section 1983 claim requires that a plaintiff show that a defendant violated federal laws

or the Constitution.  The statute does not permit a remedy for the mere violation of a department

policy or even a state statute.[44]

A claim of municipal liability under 42 U.S.C. § 1983 requires proof of three elements: (1)

a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose moving

force is the policy or custom.[45]  The alleged deprivation must be connected to a governmental

custom, policy statement, ordinance, regulation, or decision officially adopted and promulgated

by the body's officers.[46]  The elements of the *Monell* test exist to prevent a collapse of the

municipal liability inquiry into a *respondeat superior* analysis.[47]  A municipality may not be

subject to liability merely for employing a tortfeasor.[48]  Municipal liability requires deliberate

---

[42] *C.P. Interest, Inc. v. California Pools, Inc*., 238 F.3d 690, 697 (5ᵗʰ Cir. 2001).
[43] See e.g. *Owen v. Kerr-McGee Corp*., 698 F.2d 236 (5ᵗʰ Cir. 1983).
[44] *Sylvester v. Cain*, 311 Fed. Appx. 733, 735 (5ᵗʰ Cir. 2009) ("violations of state law and prison regulations, without more, do not state a viable constitutional claim under § 1983"); *Brown v. Williams*, 124 Fed. Appx. 907, 909 (5ᵗʰ Cir. 2005).
[45] *Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012).
[46] *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-2036, 56 L.Ed.2d 611 (1978).
[47] See *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 415, 117 S.Ct. 1382, 1394, 137 L.Ed.2d 626 (1997).
[48] See, e.g., *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989).

action attributable to the municipality that is the direct cause of the alleged constitutional violation.[49]

The City directs the Court's attention to page 16 of the Dunston report where Dunston expresses his opinion that "The City of Eunice's Policies and Oversight Structure Permitted Abuse".  There, Dunston states his opinion as follows:

> In my opinion, the City of Eunice's customs, policies, and practices enabled, rather than checked, the misuse of authority by the Chief of Police.  By delegating disciplinary and operational power to the Chief – with no effective internal or external oversight – the City created an environment where retaliation, selective enforcement, and ethical violations *could* flourish without accountability. (emphasis added.)

The inadmissibility issues with this opinion are numerous.  First, Dunston does not identify or attempt to give an opinion about any governmental custom, policy statement, ordinance, regulation or decision of the City of Eunice that was the moving force behind any alleged deprivation of constitutional rights asserted by Dunn.  Second, although Dunston vaguely references "the misuse of authority by the Chief of Police", he does not tie any alleged policy to any specific constitutional violation.  Third, the opinion is speculative in that Dunston opines only that the alleged lack of oversight by the City created an environment where certain situations or conditions "could" flourish; he does not – and cannot – draw any direct link between an official policy of the City and the asserted conditions of retaliation, selective enforcement and ethical violations.  Fourth, Dunston's opinion in this regard is nothing more than legal conclusions disguised as opinions.  This opinion begins with the premise that the Chief of Police misused authority, retaliated, selectively enforced discipline and committed ethical violations.  Those are all legal conclusions that are the province of the trier of fact, not for an advocate holding himself out as an expert to declare.

---

[49] *Id*. at 391–92, 109 S.Ct. 1197.

Finally, this opinion of Dunston has the potential to confuse the trier of fact rather than assist, because it advocates for ignoring longstanding Louisiana state law, namely the Lawrason Act, and Louisiana's Civil Service system. Dunston supports his inadmissible opinion about the alleged lack of City oversight by taking issue with the "concentration of unreviewed authority in the Chief of Police", the alleged "failure of municipal checks and civil service safeguards" and "absence of external accountability and continuing risk."[50]

In 1898 Louisiana passed the Lawrason Act, La. R.S. 33:321 et seq., setting forth a general legislative charter for all municipalities created after its effective date as well as for those created prior to its effective date which chose to accept its provisions. This act dictates that except for those municipalities governed by a special legislative charter or home rule charter or plan of government adopted pursuant to Article VI of the Constitution of Louisiana, all municipalities shall be governed by the mayor-board of aldermen form of government.[51] The City of Eunice has an elected, not appointed chief of police. In a Lawrason Act municipality with an elected chief of police, the chief "shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officer, to effect disciplinary action, and for the dismissal of police personnel."[52] Furthermore, in the City of Eunice, the board of aldermen may, by resolution, designate the chief of police as the appointing authority of the police department and thereby authorize him to appoint, discipline, and discharge police personnel subject to the budgetary limitations established by the mayor and board of aldermen pertaining to the number of allotted positions for the police department."[53]

---

[50] Exhibit "A", pp. 16-17.
[51] La. R.S. 33:321.
[52] La. R.S. 33:423(A).
[53] La. R.S. 33:423.27.

Dunston's opinion and issue with respect to the "concentration of unreviewed authority in the chief of police" is distilled in the following excerpt from his report:

> Under Eunice's Procedural Orders, the Chief of Police retains "final departmental authority in all matters of policy, operations, and discipline – NO EXCEPTIONS." No independent internal-affairs officer, city administrator, or outside review body has authority to override or contemporaneously review disciplinary decisions, unless an appeal is made to the Civil Service Board (see below).  The City's Board of Aldermen and Mayor possess budgetary power but not direct oversight of disciplinary processes.  This configuration limits the practical effect of the Civil Service Board and can insulate the Chief of Police from scrutiny, allowing him to weaponize internal investigations and policy enforcement against perceived adversaries.

Here, Dunston goes well beyond expressing an opinion related to police procedures.  He is expressing a personal opinion about his perceived inadequacies of the mayor-aldermen and elected chief of police form of government established by the Louisiana Legislature in the Lawrason Act. Dunston lacks the expertise, knowledge and experience to opine on legislative matters or the execution of government functions under the Lawrason Act.  His critique of this form of government configuration will undoubtedly confuse the trier of fact.  Is Dunston insinuating that it is his opinion that this configuration is unconstitutional?  Is he advocating that this legal structure should be ignored and the City held to a different standard of accountability based on an alternative structure of government?

Dunston then doubles down on this inadmissible opinion by taking issue with Louisiana's civil service structure and the Eunice Fire and Police Civil Service Board.[54]  Dunston again steps out of the arena of opining about police practices and procedures and states, "[s]o while the Civil Service Board has *some* capacity to provide oversight, because of these issues, it is unequipped to effectively combat misconduct in a way that aligns with widely accepted governance norms for

---

[54] Exhibit "A", p. 16.

police accountability…"[55]   Dunston is not qualified to give this opinion, and this opinion is not relevant to the claims asserted by Dunn against the City.  Further, civil service boards have plenary authority to "[r]epresent the public interest in matters of personnel administration in the fire and police services of the said municipal government," to "[m]ake, . . . upon its own motion, any investigation concerning the administration of personnel or the compliance with the provisions of this Part in the said municipal fire and police services, and to "take any other action which it determines to be desirable or necessary in the public interest, or to carry out effectively the provisions and purposes of this Part [i.e., the Municipal Fire and Police Civil Service Law]".[56] So even if Dunston's opinion on this point is somehow determined to be relevant, it is clearly wrong as a matter of law.

### 2. Dunston's report and opinions are not based on sufficient facts or data as required by Fed. R. Evid. 702(b).

Attached as Exhibit B to Dunston's Expert Report are the materials Dunston reviewed in preparation for issuing his report.  A review of that list indicates that Dunston reviewed transcripts from only twelve (12) of the twenty-three (23) depositions conducted as of the time of his Expert Report.   Critical omissions from the materials reviewed by Dunston include the deposition transcripts of Mayor Scott Fontenot; current Eunice Chief of Police Kyle Lebouef; the original 30(b)(6) deposition of the City of Eunice; former EPD Deputy Chief Tony Kennedy; Louisiana Office of Inspector General lead criminal investigator Alan Shiele; St. Landry Parish Sheriff Bobby Guidroz; retired Louisiana State Police Troop Commander Eric Duplechain; former EPD Officer and current Louisiana State Police detective Walter Mire; and defendant and EPD Lieutenant (and co-defendant) Ryan Young.  Additionally, Dunston's list of materials reviewed

---

[55] *Id.*
[56] La. R.S. 33:2477 (1), (4).

indicates he did not review any written discovery conducted in this matter or any of the voluminous documents produced in response to discovery requests in this case.[57]

Instead of reviewing all deposition testimony – including that of representatives of the outside law enforcement agencies to whom Dunn reported his complaints and who essentially testified that Dunn lacked evidence of actual violations of federal or state law to substantiate his whistleblower complaints – Dunston cherry-picks self-serving and/or hearsay testimony from only certain select deponents Dunn lined up to testify in his favor.[58]    In basing his opinions on insufficient facts and data, Dunston impermissibly takes on the role of advocate for Dunn.  Trial judges "ought to insist that a proffered expert bring to the jury more than the lawyer can offer in argument."[59]   Courts also routinely exclude testimony when experts try to assert legal conclusions about the reasonableness of a defendant's act.[60]

In basing his opinions on insufficient facts or data, Dunston also impermissibly engages in credibility determinations when he opines as follows:  (1) "In a similar vein, testimony shows that Chief Fontenot used his authority to demote Lt. Dunn without cause, damaging Lt. Dunn's reputation and prospects for advancement"[61] and (2) "Other testimony reflects that the purpose of Chief Fontenot's actions was to push Lt. Dunn out of the Department."[62]   In making these

---

[57] The Bates numbered documents DUNN_0002633 through DUNN_0003115 referenced in Exhibit B to Dunston's Expert Report are documents unilaterally produced by Dunn at the time of issuance of the expert report; they were not documents exchanged by the parties through the discovery process.

[58] See for example, Exhibit "A", p. 13 and footnote 94 ("For example, I understand that Chief Fontenot assigned Lt. Dunn to chronically understaffed shifts that endangered Lt. Dunn's safety.").  Dunn bases this comment on the self-serving deposition testimony of Dunn and the hearsay testimony of Jack Ardoin and Donnie Thibodeaux.

[59] *In re: Aircrash Disaster at New Orleans, Louisiana*, 795 F.2d 1233 (5th Cir. 1986). See also *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

[60] See e.g. *Peterson v. City of Plymouth*, 60 F.3d 469 (8th Cir. 1995); *Hygh v. Jacobs*, 961 F.2d 359 (2nd Cir. 1992). That Dunston is impermissibly asserting legal conclusions about the reasonableness of former Chief Fontenot's acts is illustrated by the statement that Dunston's comparison of practices and training in the law enforcement profession is a common method "when <u>evaluating claims</u> set forth in Lt. Dunn's Amended Complaint."  Exhibit "A", p. 1. (emphasis added)

[61] Exhibit "A", p. 14.

[62] Id.

statements, Dunston assumes, sets forth as true, and speculates, without any evidentiary support, that any demotion of Dunn was without cause; that Dunn's reputation was damaged; that Dunn's prospects for advancement were damaged; and that Chief Fontenot acted with a certain intent. These kind of statements highlight the unreliability of Dunston's opinions and testimony. They can hardly be said to be "reliable" or "supported by appropriate validation"[63] and represents a clear credibility determination in favor of Dunn's witnesses. "As a general rule, an expert may not opine on another witness's credibility because this testimony does not help the trier of fact, who can make its own credibility determinations."[64]

> 3. *Dunston's report and opinions are not the product of reliable principles and methods as required by Fed. R. Evid. 702(c).*

The selective reliance upon only the self-serving and hearsay testimony of witnesses favorable to the plaintiff, the omission of examination and evaluation of the testimony of other critical witnesses, the weighing of credibility of witnesses and the repeated expressions of legal conclusions are not reliable principles and methods upon which to base an expert report or testimony. Neither is the reliance upon facts that are totally wrong.

An expert opinion purportedly based on erroneous factual information is unreliable.[65] The Fifth Circuit has excluded expert testimony specifically because it relied on facts which were not in the record or which were altered.[66] In reaching this decision, the court stated:

> Certainly nothing in Rule 703 requires a court to admit an opinion based on facts that are indisputably wrong. Even if Rule 703 will not require the exclusion of such an unfounded opinion, general principles of relevance will. In other words, an opinion based totally on incorrect facts will not speak to the case at hand and hence

---

[63] *Daubert*, at 591.
[64] *Nagle v. Sheriff Marlin Gusman*, No. 12-1910, 2016 WL 541436, at *4 (E.D. La. Feb. 11, 2016), citing *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014).
[65] See, e.g., *Irvine v. Murad Skin Research Laboratories, Inc*., 194 F.3d 313 (1st Cir. 1999).
[66] *Guillory v. Domtar Industries Inc*., 95 F.3d 1320, 1331 (5th Cir. 1996).

will be irrelevant. In any event such an opinion will not advance the express goal of "assisting the trier of fact" under rule 702.[67]

Dunston discusses in his report the termination of the EPD K-9 program in 2020. Dunston claims that there is testimony that even though Chief Fontenot's action was overturned by the Civil Service Board, nothing was done to correct Chief Fontenot's action because when "Dunn succeeded in his appeal to have his K-9 returned, Chief Fontenot sold the dog to another police department, so it was no longer in EPD custody."[68] This is a patently false statement.

Footnote 121 of Dunston's Expert Report indicates that he bases this statement on the deposition testimony of Donnie Thibodeaux, the then chairman of the Eunice Municipal Fire and Police Civil Service Board. However, the cited portion of Thibodeaux's deposition transcript does not support the contention that the dog was sold.[69] In fact, as a result of the Civil Service Board appeal Dunston references, a Consent Judgment was reached on April 15, 2021, which states:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the K-9 that Appellant was previously caring for and handler of shall be transferred as additional consideration and/or donated by the City of Eunice to Appellant, Lt. Michael Dunn, subject to Lt. Dunn's acceptance of said transfer/donation, and the City of Eunice shall pay all boarding, veterinarian, and any other expenses that accrued/accumulated during the time the City of Eunice was in possession of the K-9, up to and until possession of the K-9 is surrendered to Lt. Dunn.[70]

Former Chief Randy Fontenot testified four years later, on January 30, 2025, that the dog had previously been housed with a local veterinarian, but that it was his understanding that Dunn had made arrangements with Louisiana K-9 to board the dog at no charge, and that the last he

---

[67] *Id.*, citing from *Christophersen v. Allied-Signal*, 939 F.2d 1106, 1114 (5th Cir. 1991)(en banc), *cert. denied*, 503 U.S. 912, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992).
[68] Exhibit "A", p. 16. Here, Dunston relies on the testimony of Donnie Thibodeaux, a representative on the Civil Service Board.
[69] Dunston cites to pages 173-175 and pages 128-130 of the Thibodeaux deposition. In actuality, the pages 128-130 are from the deposition of Lt. Dunn, wherein he testified that he was told by someone else (Paul Leblanc) that the dog had been sold.
[70] See Consent Judgment attached as Exhibit "C".

heard the dog was still there.[71]  This testimony was supported by the testimony of former EPD Officer Chase Godeaux, who testified regarding the K-9 that, "…so they end up retiring him and end up staying with Lieutenant Dunn."[72]

Thus, not only is Dunston's opinion regarding the K-9 false; there is substantial evidence directly contradicting Dunston's opinion that Dunston failed to consider.

Dunston's report and testimony are not reliable if based on erroneous factual information and should be excluded.  Having failed to apply reliable principles and methods and having utilized incorrect facts, it necessarily follows that Dunston has also not reliably applied the principles and methods to the facts of the case, in derogation of the requirements of Fed. R. Evid. 702(d).

    *4.  Dunn's report and opinions are in violation of Fed. R. Evid. 704 because they contain a litany of impermissible legal conclusions thinly disguised as opinions.*

Several of Dunston's impermissible legal conclusions have been referenced throughout this memorandum.  In addition, the City offers the below illustrative but not comprehensive list of impermissible legal conclusions disguised as opinions rife throughout Dunston's report and supplemental report:

- The EPD's written Procedural Orders are vague, outdated, and noncompliant with nationally accepted standards (IACP, CALEA).  Their ambiguity grants the Chief of Police excessive discretion…These deficiencies set the foundation for retaliatory misuse of authority and systemic misconduct within the Department.[73]

- Further, the vague and overbroad wording, combined with the plenary nature of the Chief of Police's authority, allow lawful speech to be treated as insubordination and protected whistleblowing to be punished as disloyalty.[74]

- Chief Fontenot's, Lt. Young's and Officer Fontenot's retaliatory actions against Lt. Dunn…[75]

---

[71] Deposition of Randy Fontenot, p. 205:13-206:10, attached as Exhibit "D".
[72] Deposition of Chase Godeaux, p. 111:13-15, attached as Exhibit "E".
[73] Exhibit "A", p. 2, Summary of Expert Opinions No. 1.
[74] Id. , Summary of Expert Opinions No. 2.
[75] Id., Summary of Expert Opinions No. 3.

- This lack of accountability could and did allow systemic retaliation and policy violations to persist unchecked…The City's failure to audit, review, or intervene makes it complicit in the constitutional violations alleged…[76]

- The cumulative effect of the EPD's deficient policies, retaliatory leadership, and absent oversight has created lasting, Department-wide harm.[77]

- As Lt. Dunn contends, these systemic flaws chilled legitimate whistleblowing and allowed corruption to flourish without consequence.[78]

- The breadth and ambiguity of the policies outlining the authority of the Chief of Police allowed Chief Fontenot to create the culture of fear and lawlessness within the Department…[79]

- The record indicates that Chief Fontenot used – and abused – this policy…[80]

- …the EPD's Loyalty to the Department policy, as written and as it can be interpreted by the Chief of Police, is overly broad…[81]

- Based on my review of the record in this case and my experience, it is my opinion that this discretion enabled Chief Fontenot to retaliate against Lt. Dunn and other officers by arbitrarily claiming that their lawful conduct, such as engaging in protected speech, were acts of "disloyalty" or "conduct unbecoming" of an officer in violation of Procedural Orders.[82]

- This indicates the social media policy was selectively enforced against Lt. Dunn.[83]

- In my professional opinion, Officer Fontenot's effort to coerce Dupre into falsely testifying that Lt. Dunn had engaged in corrupt practices was unethical, contrary to the prescribed best practices of the law enforcement profession and other nationally recognized policing standards and potentially illegal.[84]

- A review of the record reveals instances where Chief Fontenot used his authority to create a hostile work environment for Lt. Dunn.[85]

---

[76] Id., p. 3, Summary of Expert Opinions No. 4.
[77] Id., Summary of Expert Opinions No. 5.
[78] Id., p. 5.
[79] Id.
[80] Id., p. 7.
[81] Id., p. 9.
[82] Id., p. 11.
[83] Id., p. 12.
[84] Id.
[85] Id., p. 13.

- In my opinion, Chief Fontenot's conduct toward Lt. Dunn reflects a deliberate abuse of authority…[86]

- In my opinion, Chief Fontenot's conduct … reflected a sustained campaign of retaliation triggered by Lt. Dunn's protected whistleblowing and refusal to conform to the Department's unlawful practices.[87]

- Testimony reflects that Chief Fontenot changed work assignments and pay opportunities to punish Lt. Dunn.[88]

- Testimony also reflects that Chief Fontenot used pretextual internal investigations in order to harass Lt. Dunn.[89]

- …testimony shows that Chief Fontenot used his authority to demote Lt. Dunn without cause, damaging Lt. Dunn's reputation and prospects for advancement.[90]

- The EPD's pattern of retaliatory investigations and selective discipline violates these standards.[91]

- …I conclude to a reasonable degree of professional certainty that Chief Fontenot's retaliatory actions against Lt. Dunn…[92]

- Rather than safeguarding a whistleblower who exposed misconduct, the Department weaponized internal processes to silence him.[93]

- As outlined in the Expert Report, Chief Fontenot's justifications that there were budgetary or handler issues were pretextual; he terminated the program to retaliate against Lt. Dunn.[94]

- But the Civil Service Board is an insufficient oversight mechanism.[95]

- The Chief of Police's expansive authority is exacerbated by EPD's vague Procedural Orders…[96]

---

[86] Id.
[87] Id.
[88] Id.
[89] Id., p. 14.
[90] Id.
[91] Id., p. 15.
[92] Id.
[93] Id.
[94] Exhibit "B", p. 3.
[95] Id.
[96] Id., p. 4.

- …EPD's vague, discretionary, and overbroad Procedural Orders permit discipline that may seem ostensibly justifiable but is often pretextual and/or inconsistent.[97]

- It is therefore my opinion that, without revisions to eliminate this vagueness from EPD policies, officers are at continued risk of retaliation.[98]

Many circuit courts have recognized that expert opinions of the kind offered by Dunston is improper. In *Specht v. Jensen*, a Section 1983 suit was filed, with the plaintiff asserting unlawful searches of her home and office.[99] Plaintiff offered a legal expert who testified that warrantless searches were unlawful generally, and that his review of the facts lead him to believe that the warrantless search was unjustified.[100] An *en banc* panel of the Tenth Circuit held that although testimony on the ultimate issue of a case can be permissible, testimony which proposes to set forth the standards applicable to a given case and suggests a proper interpretation of the facts of the case in light of those standards is beyond the scope of permissible testimony and should be excluded.[101]

Also, in *Askanase v. Fatjo*, the Fifth Circuit approved of the *Specht* court's reasoning.[102] The *Askanase* court ruled that testimony from an "expert" which seeks to set forth the standard applicable to a given case and further seeks to suggest an analysis of the facts in light of the standards set forth by the "expert" constitutes impermissible encroachment on the functions of the fact-finder, whose job it is to evaluate the facts in light of the legal standards as explained by the judge.[103] Here, conclusory and speculative testimony like that proposed by Dunston, where he bases his conclusions on purported violations of policies and procedures, as well as on the allegations contained in the Amended Complaint and wherein he seeks to suggests an analysis of

---

[97] Id., p. 5.
[98] Id.
[99] *Specht v. Jensen,* 853 F.2d 805 (10th Cir. 1988).
[100] *Id*.
[101] *Id*.
[102] *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997).
[103] *Id*.

the facts is an attempt to introduce improper legal opinions; thus, the proposed testimony as outlined in Dunston's Expert Report and Supplemental Expert Report is impermissible under Rule 704.

### C. Dunston's Testimony and Opinions Should be Excluded Because they are not Relevant under Fed. R. Evid. 401 and Fed. R. Evid. 402 or are otherwise prejudicial under Fed. R. Evid. 403.

Rule 401 of the Federal Rules of Evidence contains the applicable provisions concerning relevancy for trial purposes.  Rule 401 defines relevant evidence as: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[104]  "Evidence which is not relevant is not admissible."[105]

The merits of Dunn's claims against the City require a showing that an official policy or governmental custom, policy statement, ordinance, regulation or decision of the City of Eunice was the moving force behind any alleged deprivation of constitutional rights asserted by Dunn. Dunston's report and supplemental report fail to identify, discuss, or given an opinion upon any such policy.  Dunston opines only on the actions of former Chief Fontenot and the written policies and procedures of the EPD.  As noted previously, Section 1983 does not permit a remedy for the mere violation of a department policy or even a state statute[106] and a municipality may not be subject to liability merely for employing a tortfeasor.[107]  Thus, the opinions expressed by Dunston regarding EPD policies and former Chief Fontenot's application of those policies bears no

---

[104] FRE 401.
[105] FRE 402.
[106] *Sylvester v. Cain*, 311 Fed. Appx. 733, 735 (5th Cir. 2009) ("violations of state law and prison regulations, without more, do not state a viable constitutional claim under § 1983"); *Brown v. Williams*, 124 Fed. Appx. 907, 909 (5th Cir. 2005).
[107] See, e.g., *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989).

relevance to Dunn's claims against the City.  These same opinions further lack relevance in general given that former Chief Fontenot is no longer a defendant in this action.

Dunston's report and supplemental report offer nothing more than a selective recitation of deposition testimony of a few chosen witnesses to support the narrative set forth in Dunn's Amended Complaint.  Even if somehow found to be relevant, his opinions run afoul of Fed. R. Evid. 403, which provides that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Dunston's opinions and testimony present each one of these dangers.  The City will be unfairly prejudiced, the issues confused and the jury mislead if Dunston is allowed to: (1) proffer that municipal liability can be imposed on the basis of the EPD policies and application thereof, (2) advocate that liability be imposed because he finds well-entrenched state law like the Lawrason Act and the Civil Service structure to be insufficient safeguards, and (3) set forth impermissible legal conclusions and speculative and irrelevant opinions.  Dunston's testimony will cause an undue delay, will waste time and will needlessly present cumulative evidence since it is based on a recitation of the deposition testimony of other witnesses and his interpretation thereof.

## IV.    CONCLUSION

According to federal jurisprudence, the "[t]ouchstone" of whether a witness may testify as an expert in a case is whether that witness would be "helpful", but the helpfulness to the trier of fact, not to the party's case, is what counts.[108]  Plaintiff is offering Mr. Dunston as a thinly-disguised advocate for Lt. Dunn and the allegations lodged in his First Amended Complaint.  For

---

[108] *Hardin v. Ski Venture, Inc.*, 50 F.3d 1291 (4th Cir. 1995).

the reasons more fully discussed above, Dunston's trial testimony will not be helpful to the trier of fact; indeed it will be misleading and confusing to the trier of fact.

Dunston's report and supplemental report and anticipated testimony are non-compliant with the Federal Rules of Evidence and the minimum requirements imposed by *Daubert*. Accordingly, the City respectfully requests this Honorable Court to grant this Motion in Limine to Exclude Testimony and Expert Report of Plaintiff's expert, Mark S. Dunston, excluding the report, supplemental report, opinions and testimony, resulting in disqualification of Plaintiff's named expert, Mark S. Dunston.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 24th day of February, 2026, I electronically filed the

foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of

electronic filing to all attorneys of record.

BECKER & HEBERT, LLC

 /s/ Michael D. Hebert
MICHAEL D. HEBERT