**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **MICHAEL DUNN** | **CIV. A. NO.: 6:21-CV-01535** |
| **VERSUS** | |
| | **JUDGE ROBERT R. SUMMERHAYS** |
| **VICTOR FONTENOT, RYAN YOUNG,** | |
| **and CITY OF EUNICE** | **MAGISTRATE JUDGE DAVID J. AYO** |

### MEMORANDUM IN SUPPORT OF LT. RYAN YOUNG'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

**NEUNERPATE**

**JASON T. REED** (#28733)
(jreed@neunerpate.com)
**ROBERT E. TORIAN** (#18468)
(rtorian@neunerpate.com)
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, LA 70503
Telephone: (337) 237-7000
Facsimile: (337) 233-9450
**Counsel for Defendant, Lt. Ryan Young**

# TABLE OF CONTENTS

I.  **Background** ...............................................................................................................1

II.  **Factual Allegations** ................................................................................................2

III.  **Law and Argument**.................................................................................................4

    A.  Summary Judgment Standard ...........................................................................4

    B.  Young's Rule 12(c) Motion for Judgment on the Pleadings .............................5

    C.  Plaintiff's Allegations Against Young Faile Under *Twombly* and *Iqbal*..........................5

    D.  Plaintiff's First Amendment Claims Against Young.........................................7

        1.  *Plaintiff has not suffered recognized harm pursuant to First Amendment retaliation*....................................................................7

            (a)  *Harm to reputation, harassment from investigations, and threat of arrest are not adverse employment actions* ...............................8

            (b)  *Diminishment of job prospects is not an adverse employment action* .........8

            (c)  *Plaintiff's alleged removal from leading narcotics investigation Is not an adverse employment action*............................................9

            (d)  *Plaintiff's removal from the K-9 program is not an adverse employment action*...........................................................................10

        2.  *Young did not cause the alleged adverse employment decisions*.............................12

            *(a)  Lt. Young did not have the capacity to remove Plaintiff from the K-9 program or narcotics investigations*  ........................................12

            *(b)  Lt. Young did not harm Plaintiff's reputation* ........................................14

            *(c)  Lt. Young did not harass Plaintiff with investigations*...........................14

             *(d)  Young did not harass Plaintiff with the threat of arrest* ........................15

             *(e)  Young did not cause a diminishment in job prospects*............................15

        3.  *Plaintiff's speech did not cause the alleged adverse employment actions* .............17

4. *Louisiana freedom of expression claims are analyzed the same as First Amendment claims* ...................................................................................18

E.  Conspiracy Under 1983 ...........................................................................18

1. *Plaintiff cannot satisfy element (1), existence of a conspiracy* ...............................19

    (a)  *Plaintiff admits he has no evidence in support of element (1)*.................19

    (b)  *Plaintiff's stated witnesses provide no support of element (2)*................20

    (c)  *Young's role as Ofc. Fontenot's supervisor does not create a conspiracy* ........................................................................21

    (d)  *Plaintiff cannot satisfy element (1), existence of a conspiracy*................21

2. *Plaintiff cannot satisfy element (2), depravation of rights* .....................................22

F.  Intentional Infliction of Emotional Distress.................................................22

G.  Prescription of Claims ............................................................................24

IV.    **Conclusion** ...............................................................................................24

# TABLE OF AUTHORITIES

## STATUTES

42 U.S.C. § 1983.................................................................................................................1,7,18,19,22

Fed. R. Civ. P. 56(a) & (c)...................................................................................................................4

Fed. R. Civ. P. 56(e)(2)......................................................................................................................4

Fed. R. Civ. P. 56(e)(3)......................................................................................................................4

La. C.C. art. 3492.............................................................................................................................24

La. C.C. art. 3493.1..........................................................................................................................24

Louisiana Constitution Article 1, §7............................................................................................1,7,18

Rule 12(b)(6)....................................................................................................................................5

## CASES

*Aguocha-Ohakweh v. Harris Cnty. Hosp. Dist.*, 731 F. App'x 312 (5th Cir. 2018) .....................19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) .............................................................4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ....................................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ..................................................................5,6

*Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir.1998).................................................9

*Bissada v. Arkansas Children's Hosp.*, 639 F.3d 825, 831 (8th Cir. 2011)....................................11

*Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)....................................................7,8,9

*Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003).................................................5

*C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655 (5th Cir. 2016)...........................5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327, (1986), *cert. denied*, 484 U.S. 1066 .........................4

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)..............................................................................18

*Clarkston v. White*, 943 F.3d 988, 992 n.4 (5th Cir. 2019)............................................................18

*Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir.1999) ..........................................................7,8,9

*Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221, 230–31 (5th Cir. 2016) ...........7,18

*Culbertson v. Lykos*, 790 F.3d 608 (5th Cir. 2015)..............................................................7,8

*Damond v. City of Rayville*, 127 F.4th 935, 939 (5th Cir. 2025).......................................................6

*Doe v. United States*, 831 F.3d 309 (5th Cir. 2016).........................................................................5

*Duffie v. United States,* 600 F.3d 362, 371 (5th Cir. 2010) ............................................................4

*Francois v. Anslum*, No. 21-30311, 2022 WL 101976, at *1 (5th Cir. Jan. 10, 2022)....................4

*Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) ..................................................................19,22

*Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 433 (5th Cir. 2005) ...................................4

*Heaney v. Roberts*, 846 F.3d 795, 801 n.2 (5th Cir. 2017)............................................................18

*Hernandez v. ASAP Emp. Servs., Inc.,*No. CV 17-6892, 2018 WL 310379, *3
    (E.D. La. Jan. 5, 2018)...............................................................................................................11

*Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 655 (5th Cir. 2012)............................................4

*Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.2002) ...............................5

*Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 373–74 (M.D. La. 2022) .............................18

*Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748 (5th Cir. 1986).......................................................13

*Latiolais v. Cravins*, 484 F. App'x 983, 991 (5th Cir. 2012) .........................................................19

*Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) ......................................................4

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009) ...................................................6

*Lowery v. Mills*, 157 F.4th 729, 741 (5th Cir. 2025) ....................................................................7,8

*McAfee v. 5th Cir. Judges*, 884 F.2d 221, 222 (5th Cir. 1989).....................................................19

*Mills v. City of Shreveport*, No. CV 5:17-1088, 2019 WL 2579158, *6
    (W.D. La. June 21, 2019)...........................................................................................................11

*Nicholas v. Allstate Ins. Co.*, 1999-2522 (La. 8/31/00), 765 So. 2d 1017, 1022 ..........................23

iv

*Personnel Adm'r of Massachusetts v. Feeny*, 442 U.S. 256, 279 (1979) .........................................6

*Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir.1990)*, abrogated on other grounds by Martin v. Thomas,* 973 F.2d 449 (5th Cir. 1992).........................................................18,19

*Plaisance v. Reese*, 353 F. Supp. 2d 735, 738 (E.D. La. 2004 ......................................................18

*Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009) ................................................................................................................................11

*Rodriguez v. Neeley*, 169 F.3d 220, 221–23 (5th Cir.1999) ........................................................19

*Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001)...................................................9

*Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019)..........................................................18,19

*Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018) ................................................13

*Thomas v. Tregre*, 913 F.3d 458 (5th Cir. 2019), as revised (Jan. 25, 2019) ..............................16

*Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) ......................................................22

*White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)..........................................................22

*Wilson v. Coll. of the Mainland*, 476 F. App'x 758, 761 (5th Cir. 2012) .....................................17

*Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015)....................................................................7

v

## I. BACKGROUND

The lawsuit is brought against the City of Eunice, former Eunice Police Department Officer Victor Fontenot, and Lt. Ryan Young ("Young"), a Lieutenant and Chief of Detectives with Eunice Police Department. Lt. Young is named in his individual capacity.[1]

Plaintiff pleads nine causes of action.[2] However, only the following claims are made against Young[3]:

1. Free speech retaliation pursuant to the First Amendment (Count One)[4]
2. Civil conspiracy in violation of 42 U.S.C. § 1983 (Count Two)[5]
3. Intentional infliction of emotional distress (Count Six)[6]
4. Violation of Article 1, Section 7 of the Louisiana Constitution (Count Eight)[7]

Plaintiff does not include Lt. Young in his claims for defamation (Count Three),[8] civil conspiracy (Count Four),[9] violation of Louisiana state whistleblower statute (Count Five),[10] false light invasion of privacy (Count Seven),[11] or municipal liability in violation of 42 U.S.C. § 1983 (Count Nine).[12] As set forth above, Young is included in only Counts One, Two, Six and Eight of the Amended Complaint. However, to the extent Plaintiff asserts Young is liable in connection with other counts in which he has not been specifically named, Young moves for summary judgment on those claims as well, for the reasons set forth herein.

---

[1] Rec. Doc. 128, p. 9.
[2] *Id.* at pp. 36-49.
[3] Lt. Young is not specifically named in each count, but the claims are "Against the Individual Defendants" collectively.
[4] *Id.* at p. 36.
[5] *Id.* at p. 37.
[6] *Id.* at p. 43.
[7] *Id.* at p. 45.
[8] *Id.* at p. 38.
[9] *Id.* at p. 40.
[10] *Id.* at p. 41.
[11] *Id.* at p. 44.
[12] *Id.* at p. 46.

## II. FACTUAL ALLEGATIONS

This lawsuit arises out of an alleged conspiracy to retaliate against Michael Dunn due to his reports to state and federal authorities regarding alleged conduct of members of the Eunice Police Department.[13]

Specifically with regard to Young, in Plaintiff's Amended Complaint, with approximately two hundred paragraphs contained in over fifty pages, there are only a few allegations specific to Young, none of which survive summary judgment. As set forth below, during Plaintiff's supplemental deposition, Plaintiff was unable to articulate facts supporting his claims against Young, as opposed to the claims he has made against the other Defendants. With regard to Young, Plaintiff generally alleges Young attempted to smear the Plaintiff's reputation, depicting him as a corrupt officer.[14] When deposed, however, Plaintiff could not testify to specifics facts supporting his allegations against Young:

> Q    So as we sit here, you can't think of a single time that Ryan Young committed defamation against you?
>           MS. LIU:
>                 Objection to the form.
> A    It's just all a little fuzzy.  Because it's been so many years,   I'm trying to recall specifics, but --
>           BY MR. REED:
> Q    So the answer is no, you can't think of a single instance?
>      MS. LIU:
>                 Objection to the form.
> A    I can't think of the individual instance. I know there was, I'm just I'm trying to recall them.  Because there was just -- there was so much going on between all three, I'm trying to remember.  You said specifically him, so I'm trying to go through it.
>           BY MR. REED:
> Q    Can you think of any time that Ryan Young spread rumors  that you were corrupt, as alleged in paragraph 9?

---

[13] *Id.* at pp. 1-2.
[14] *Id.* at p. 5.

A     I mean, I've heard it.  I mean, I know I've heard it.  I'm trying to recall the specific stuff you're talking about.

Q     Okay.  Tell me the first time you heard that Ryan Young spread rumors that you were corrupt.

A     That's what I just answered, I'm trying to recall the specific. It's been awhile.

Q     So you can't think of a single time, as we sit here, regarding Ryan Young?

A     I don't want to misquote anything.  I can't remember the exact details at this moment. I'm trying to.

Q     Okay.  Even if it's not exact details, can you tell me even broad strokes of Ryan Young suggesting you were corrupt?

A     I'm recollecting something, it had to do something with the last time I was a candidate, I know it had to do something with that.  I'm trying to recollect what was actually -- transpired.

Q     Nothing important enough for you to remember right now?

A     No, it's not that it wasn't --

    MS. LIU:

       Objection to the form.

A     It's not that it wasn't important.  I mean, we're talking about stuff years ago.  I'm trying my best to recall it.

* * *

Q     I'm talking about whatever you meant when you guys filed  this lawsuit and, specifically paragraph 9, "This campaign continues to harm Lieutenant Dunn by hindering his career advancement, diminishing his job prospects and making him a villain in the eyes of some of his colleagues."

A     As towards Ryan Young, the way I can try to summarize it  that Ryan Young was the supervisor of Victor Fontenot. Any type of orders or anything thereof would have either --would have came through Ryan Young, so he would have been aware of what's going on. I'm still trying to recall a specific instance, but it's just a fog right now.[15]

Simply put, the allegations specific to Young find no support in Plaintiff's testimony, and these claims should be dismissed on summary judgment.

---

[15] Exhibit A- Supplemental Deposition of Michael Dunn, pp. 58-61.

-3-

## III. LAW AND ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is not a disfavored procedural shortcut but rather an integral part of the Federal Rules of Civil Procedure, designed to secure the just, speedy, and inexpensive determination of every action.[16] Bearing that purpose in mind, summary judgment shall be granted when the pleadings, discovery, disclosure materials on file, and any affidavits show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law.[17]

Facts are "material" only if the establishment thereof might affect the outcome of the lawsuit under governing substantive law, and a factual dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.[18] A complete failure of proof concerning an essential element renders all other facts immaterial.[19] A party cannot defeat a properly supported motion for summary judgment by pointing to some metaphysical doubt regarding the material facts or by relying on conclusory allegations, unsubstantiated assertions, or a scintilla of evidence.[20]

When a motion for summary judgment is made and supported, the non-moving party may not rest upon mere allegations or denials of the non-moving party's pleadings but rather must set forth specific facts that show there is a genuine issue for trial.[21] If the non-moving party fails to respond, summary judgment shall be entered against the non-moving party if appropriate.[22]

---

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, (1986), *cert. denied*, 484 U.S. 1066.

[17] Fed. R. Civ. P. 56(a) & (c).

[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See also Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 433 (5th Cir. 2005); *Francois v. Anslum*, No. 21-30311, 2022 WL 101976, at *1 (5th Cir. Jan. 10, 2022) (citing *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019)).

[19] *Celotex*, 477 U.S. at 323.

[20] *Francois v. Anslum*, No. 21-30311, 2022 WL 101976 (5th Cir. Jan. 10, 2022) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

[21] Fed. R. Civ. P. 56(e)(2); *Anderson,* 477 U.S. at 250;   , 37 F.3d 1069 (5th Cir. 1994). *See Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 655 (5th Cir. 2012); *Duffie v. United States,* 600 F.3d 362, 371 (5th Cir. 2010).

[22] Fed. R. Civ. P. 56(e)(3).

### B.    Young's Rule 12(c) Motion for Judgment on the Pleadings

Young's Rule 12(c) Motion for Judgment on the Pleadings remains pending before the Court.[23] Young reasserts herein all arguments raised in his Rule 12(c) motion.

### C.    Plaintiff's Allegations Against Young Fail Under *Twombly* and *Iqbal*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[24] "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level".[25] Although insufficiency of the pleadings is traditionally a defense raised under Rule 12(b)(6), "Rule 12 expressly provides that a defendant not pursuing a Rule 12(b)(6) defense at the pleading stage may raise it later in the litigation, including at trial".[26] Accordingly, it is proper for this Court to analyze the sufficiency of the pleadings at this stage.[27]

Plaintiff supports his claims for free speech retaliation, civil conspiracy, intentional infliction of emotional distress, violation of the Louisiana Constitution's freedom of expression protections with nothing more than allegations that Young participated in a retaliatory scheme,[28] retaliatory campaign,[29] and a defamatory campaign,[30] with the goal of tarnishing Plaintiff's reputation and forcing his resignation.[31]

---

[23] Rec. Doc. 219.

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[25] *Twombly*, 550 U.S. at 555 (citation modified).

[26] *C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655 (5th Cir. 2016) (citing Fed. R. Civ. P. 12(h)(2)(C).

[27] *See Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) (citing *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir.2003); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.2002)) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."). *See e.g. Doe v. United States*, 831 F.3d 309 (5th Cir. 2016) (dismissing some defendants for failure to state a claim and granting summary judgment for other defendants, analyzing *Twombly* for all defendants).

[28] Rec. Doc. 128, p. 4.

[29] *Id.* at pp. 22, 37.

[30] *Id.* at p. 5.

[31] *Id.* at p. 4.

The Plaintiff fails to allege specific facts which create a basis for the stated causes of action, pursuant to *Twombly* and *Iqbal*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[32] When looking only to the Amended Complaint, Plaintiff is unable to sufficiently support his claims with the requisite factual requirement from *Twombly* and *Iqbal*. Plaintiff must also establish a facially plausible causal relationship between Lt. Young's actions and Plaintiff's alleged harm.[33] When a Plaintiff fails to allege specific acts of each defendant and instead refers to their actions collectively and generally, the claims are insufficiently pleaded.[34]

Plaintiff fails to adequately draw a link between the facts alleged and the causes of action asserted. Further, in grouping Young with the other defendants, Plaintiff attempts to sustain his claims against Young without sufficient facts. None of the facts raised in the Amended Complaint are sufficient to sustain the claims against Lt. Young. The facts raised against Young are threadbare at best. These types of statements are the precise ones *Twombly* and *Iqbal* were designed to prevent.[35]

Due to the conclusory nature of the allegations, Plaintiff's lack of factual support, and his failure to draw a causal link between the facts and the causes of action, Plaintiff's claims against Young must be dismissed pursuant to *Twombly* and *Iqbal*.

---

[32] *Iqbal*, 556 U.S. at 679.

[33] *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009).

[34] *See Damond v. City of Rayville*, 127 F.4th 935, 939 (5th Cir. 2025) (citing *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017)).

[35] "These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim, . . . As such, the allegations are conclusory and not entitled to be assumed true. To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 551, 554-555; *Personnel Adm'r of Massachusetts v. Feeny*, 442 U.S. 256, 279 (1979)).

### D.    Plaintiff's First Amendment Claims Against Young

Plaintiff's claim for First Amendment retaliation fails for multiple reasons: 1) Plaintiff did not suffer a recognized First Amendment retaliation harm, 2) Plaintiff did not suffer an adverse employment action from Young, and 3) Plaintiff's speech did not precipitate any alleged adverse employment actions. Plaintiff's claim for violation of the Louisiana Constitution Article 1, §7, fails for the same reasons.

"In order to show First Amendment retaliation, there must be conduct by an official acting under color of state law."[36] Next, "[t]o succeed in a First Amendment retaliation claim under § 1983, a public employee must show: "(1) he suffered an adverse employment action[37]; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action."[38] The failure to establish any one of these factors is fatal to the Plaintiff's First Amendment claim.

### 1.    *Plaintiff has not suffered recognized harm pursuant to First Amendment retaliation*

Plaintiff has not suffered a recognized adverse employment action pursuant to First Amendment retaliation. In the context of First Amendment retaliation, "adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."[39] The Fifth Circuit has declined to further expand the list.[40] Plaintiff alleges harm to his reputation,[41]

---

[36] *Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221, 230–31 (5th Cir. 2016) (citing *Keenan v. Tejeda*, 290 F.3d 252, 265 (5th Cir. 2002); *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir.1999)).

[37] Some Fifth Circuit cases also refer to this as an "adverse employment decision". *See Lowery v. Mills*, 157 F.4th 729, 741 (5th Cir. 2025); *Culbertson v. Lykos*, 790 F.3d 608 (5th Cir. 2015), 526 S.W.3d 462 (Tex. 2017).

[38] *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (citing *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir.2007).

[39] *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (citation modified); *Lowery*, 157 F.4th at 741 (citing *Breaux*).

[40] *Id.*

[41] Rec. Doc. 128, p. 5.

harassment from investigations,[42] harassment from the threat of arrest,[43] diminished job prospects,[44] removal from narcotics investigations[45], and removal from the K-9 program.[46] However, these are not adverse employment actions pursuant to First Amendment retaliation.

### (a)    *Harm to reputation, harassment from investigations, and threat of arrest are not adverse employment actions*

Plaintiff has no claim for reputational harm, harassment from investigations, or threat of arrest. These alleged harms do not fall into the enumerated *Breaux* adverse employment actions.[47] Further, the U.S. Supreme Court and Fifth Circuit have made clear, in the context of First Amendment retaliation, these items do not constitute adverse employment actions. "Statements by a public official that place a stigma on an individual's reputation are not actionable without more."[48] There must be "an infringement of some other interest".[49] Additionally, even if proven, "false accusations and investigations that do not lead to arrest or indictment are not actionable under the First Amendment."[50] Accordingly, these three occurrences, even if proven, are not adverse employment actions.

### (b)    *Diminishment of job prospects is not an adverse employment action*

Plaintiff's claim for diminishment of job prospects fails. For this claim, Plaintiff relies upon his inability to accept a position at Coushatta Police Department during the pendency of his

---

[42] *Id.* at p. 31.
[43] *Id.* at p. 30.
[44] *Id.* at p. 5.
[45] *Id.* at p. 33.
[46] *Id.* at p. 32.
[47] 205 F.3d at 157.
[48] *Culbertson*, 790 F.3d at 626 (citing *Paul v. Davis*, 424 U.S. 693, 710-11 (1976)).
[49] *Id.* (citing *Breaux*, 205 F.3d at 158 n. 14 (5th Cir.2000)) (citation modified).
[50] *Culbertson*, 790 F.3d at 626 (citing *Colson v. Grohman*, 174 F.3d 498, 511–12 (5th Cir.1999)). *See Lowery v. Mills*, 157 F.4th 729 (5th Cir. 2025) ("Given the narrow view of what constitutes an adverse employment action, this court has held that the following are not adverse employment actions: mere accusations or criticism, investigations, and false accusations.") (citation modified); *Breaux*, 205 F.3d 150 (investigations and making false accusations are not adverse employment actions).

investigation for an unauthorized action.[51] However, diminishment of job prospects is not among the enumerated *Breaux* adverse employment actions.[52] The Fifth Circuit has "declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech."[53] Having a chilling effect on speech is not enough.[54] Plaintiff's alleged diminishment of job prospects is not an adverse employment decision.

           *(c)*      ***Plaintiff's alleged removal from leading narcotics investigations is not an adverse employment action***[55]

Plaintiff's alleged removal from leading narcotics investigations is not an adverse employment action pursuant to First Amendment retaliation. A removal of responsibilities is not among the enumerated *Breaux* adverse employment actions.[56] Further, the Fifth Circuit has spoken on situations where employees are transferred to a different position, which is tangential to the removal of responsibilities. When an employee is transferred within his employment, "transfers can constitute adverse employment actions if they are sufficiently punitive or if the new job is markedly less prestigious and less interesting than the old one".[57] However, the Plaintiff must show the transfer caused harm "sufficiently serious to constitute a constitutional injury."[58] "[P]ersonal preferences and subjective perceptions of the plaintiff are insufficient to establish that his transfer inflicted a constitutional injury."[59]

In a situation similar to ours, the Fifth Circuit held the transfer of a police officer from a downtown foot and bike patrol unit to a regular patrol unit was not an adverse employment

---

[51] Exhibit B – Original Deposition of Michael Dunn, pp. 213-216.

[52] *See Breaux*, 205 F.3d at 157.

[53] *Id.* (citing *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir.1998) (citation modified).

[54] *See Id.; Colson*, 174 F.3d at 511.

[55] Any claim associated with Plaintiff's removal from narcotics investigations is prescribed, as he was removed from the position in May 2019, more than one year before the filing of this lawsuit on June 4th, 2021.

[56] *See Breaux*, 205 F.3d at 157.

[57] *Breaux*, 205 F.3d at 157 (citation modified).

[58] *Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001) (citing *Breaux*, 205 F.3d at 152).

[59] *Id.* at 483 (citing *Forsyth v. City of Dallas*, 91 F.3d 769, 774).

action.[60] This was because the officer could not show the transfer from a prestigious unit to a less prestigious was objectively harmful, especially in light of the fact most officers at the department served as patrol units at some point in their career.[61] The officer's personal preferences and subjective perceptions of stigma were insufficient to establish his transfer inflicted constitutional or statutory injury.[62]

Here, Plaintiff's change in responsibilities does not constitute an adverse employment action. Plaintiff did not incur a transfer of positions entirely, but rather a change in responsibilities which focuses on his role as a K-9 officer. Plaintiff must show serious constitutional injury but is unable to do so. Plaintiff relies on his personal preferences and subjective perceptions to establish harm—which is insufficient. After allegedly being transferred out of the lead role for narcotics investigations, Plaintiff returned to his normal duties as a K-9 officer.[63] Plaintiff still participated in narcotics investigations,[64] and makes no claims related to changes in rank, pay, or increased burden of obligations in conjunction with this alleged claim. A change in prestige is insufficient to show serious constitutional injury. Plaintiff did not suffer an objective, serious constitutional injury and his removal from leading narcotics investigations, even if proven, was not an adverse employment action.

### (d)    *Plaintiff's removal from the K-9 program is not an adverse employment action*

Plaintiff did not suffer an adverse employment action when the K-9 program was terminated because Plaintiff settled his related civil service suit with the City. After termination of

---

[60] *Id.* at 485

[61] *Id.* at 484-85.

[62] *Id.*

[63] Exhibit B – Original Deposition of Michael Dunn, pp. 409-410.

[64] *Id.*

the program, Plaintiff appealed the decision.[65] Ultimately, he chose to enter into a consent judgment with the City—a settlement which included a cash payout but not a reinstatement of the K-9 program.[66]

Although the Fifth Circuit has not squarely addressed this issue, other federal Circuit courts and federal Louisiana district courts have signaled that when a plaintiff settles the alleged adverse employment action with his employer, he has no claim for a civil rights violation. In *Bissada v. Arkansas Children's Hosp.*, a Title VII case, the Eighth Circuit held that when a plaintiff settled a claim with his employer, he "cannot now claim he suffered an adverse employment action because the action was taken with his knowledge and consent."[67] In *Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, a Title VII case, the Fourth Circuit noted the plaintiff "did not plead significant adverse employment actions, in view of the voluntary settlement she entered with [her employer]". Ultimately, the plaintiff did not suffer an adverse employment action.[68] In *Hernandez v. ASAP Emp. Servs., Inc.*, an ADA discrimination case, the court held the plaintiff had no claim for an adverse employment action because he reached a settlement with his employer.[69] In *Mills v. City of Shreveport*, a Title VII case, the Court considered Plaintiff's settlement with the civil service board, ultimately holding plaintiff did not suffer an adverse employment action.[70]

Both logic and jurisprudence from other Circuits and Louisiana district courts show Plaintiff did not suffer an adverse employment action. Due to his choice to settle with the City, Plaintiff cannot establish he suffered an adverse employment action when he is the one who ultimately decided the outcome.

---

[65] Exhibit C – Michael Dunn 2020 Notice of Appeal.
[66] See Rec. Doc. 159-4; Rec. Doc. 128, pp. 32-33.
[67] *Bissada v. Arkansas Children's Hosp.*, 639 F.3d 825, 831 (8th Cir. 2011).
[68] *Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009).
[69] *Hernandez v. ASAP Emp. Servs., Inc.*,No. CV 17-6892, 2018 WL 310379, *3 (E.D. La. Jan. 5, 2018).
[70] *Mills v. City of Shreveport*, No. CV 5:17-1088, 2019 WL 2579158, *6 (W.D. La. June 21, 2019).

### 2. *Young did not cause the alleged adverse employment decisions*

Even if the above alleged actions were adverse employment actions, Plaintiff fails to show Young caused these alleged harms. Young did not remove Plaintiff from the K-9 program or narcotics investigations, nor did he influence these decisions. Further, Young did not cause harm to Plaintiff's reputation, harass Plaintiff with investigations, or harass Plaintiff with the threat of arrest. Lastly, the evidence establishes Plaintiff does not have diminished job prospects, and any such alleged diminishment was caused by Plaintiff's own actions.

### (a)    *Young did not have the capacity to remove Plaintiff from the K-9 program or narcotics investigations*

Young did not remove Plaintiff from the K-9 program or narcotics investigations, nor did he influence these decisions. Plaintiff alleges and testified it was Chief Fontenot who terminated the K-9 program[71] and removed him from narcotics investigations.[72] Further, even if it was alleged Young was responsible, Young could not cause these alleged adverse employment decisions because he did not have the authority to discipline Plaintiff or change his role. Plaintiff testified Young is the same rank as him,[73] and Young has never been his supervisor[74]. Plaintiff further testified Young has never had the power or authority to make an adverse employment decision for Plaintiff.[75] Additionally, as an investigator, Young was not permitted to make recommendations for discipline in the course of conducting investigations.[76] No other witnesses testified Young took adverse employment actions against Plaintiff—because it was not possible for Young to do so. Therefore, Young did not and could not have removed Plaintiff from his K-9 role or from narcotics

---

[71] See Rec. Doc. 128, p. 32; Exhibit A – Supplemental Deposition of Michael Dunn, pp. 122-123; Exhibit B – Original Deposition of Michael Dunn, p. 121.
[72] Rec. Doc. 128, p. 22.
[73] Exhibit A – Supplemental Deposition of Michael Dunn, p. 123.
[74] Exhibit A – Supplemental Deposition of Michael Dunn, p. 13.
[75] See Exhibit A – Supplemental Deposition of Michael Dunn, p. 123.
[76] Exhibit D – Deposition of Ryan Young, p. 66.

investigations.

Further, there is no evidence Young influenced Chief Fontenot regarding these decisions, as Plaintiff alleges.[77] In the context of First Amendment retaliation, an individual defendant who is not the final decisionmaker may be liable if the "individual defendant's animus against a coworker's exercise of First Amendment rights is a link in the causal chain that leads to a plaintiff's firing".[78] Individual liability turns on traditional "but-for" causation principles.[79]

The facts fail to establish Young had influence over the K-9 program. Plaintiff instead relies solely on an unsupported allegation in Plaintiff's Amended Complaint: "Lt. Young suggested to Chief Fontenot that removing the canine program would cause Lt. Dunn to quit."[80] Even if proven, Young's alleged comment is not a recommendation, and instead amounts to speculation that if the program was terminated, Lt. Dunn may quit to pursue the program elsewhere. Additionally, Chief Fontenot testified to the numerous legitimate reasons he had for terminating the program, including the dogs being ineffective, units being used out-of-jurisdiction too frequently, and overtime expenses.[81] It was the second time the program had been terminated.[82] Mayor Scott Fontenot also confirmed the budget concerns from the Chief was a legitimate reason to discontinue the program.[83] Lastly, even if it was a recommendation, it cannot be said that but-for Young's alleged comment, Chief Fontenot would have maintained the K-9 program at EPD. Accordingly, Plaintiff has failed to meet his but-for burden.

Likewise, there are no facts establishing Young had influence over Plaintiff's removal from

---

[77] See Exhibit A – Supplemental Deposition of Michael Dunn, pp. 122-123.

[78] *Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018). *See Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748 (5th Cir. 1986) (foundational jurisprudence for the *Sims* rule).

[79] *Id.* (citation omitted).

[80] Rec. Doc. 128, p. 32.

[81] Exhibit E – Deposition of Randy Fontenot, pp. 196-197.

[82] Exhibit E – Deposition of Randy Fontenot, p. 202.

[83] Exhibit F – Deposition of Scott Fontenot, p. 348.

narcotics investigations. Plaintiff presented no evidence in a complaint, deposition, or otherwise, that Young was responsible for that change. Plaintiff has likewise failed to meet his but-for burden.

For the reasons above, Young cannot be liable for the alleged adverse employment decisions related to Plaintiff's removal from the K-9 program and leading narcotics investigations. Young had no authority to make these decisions, nor did he influence these decisions. Plaintiff's claim fails because it does not meet element (1) of First Amendment retaliation.

### (b)    *Young did not harm Plaintiff's reputation*

As set forth above, in his deposition, Plaintiff was unable to provide facts establishing Young harmed his reputation. When Plaintiff was asked to name a single instance where Young defamed him[84], spread rumors about him,[85] or describe how Young suggested he was corrupt,[86] he was unable to do so.

### (c)    *Young did not harass Plaintiff with investigations*

Plaintiff likewise fails to establish Young harassed Plaintiff with investigations. Plaintiff alleges Young was involved in an unspecified capacity and concludes the investigations were unjustified.[87] The nature and extent of Young's alleged involvement is unclear. Even if Young was involved, any alleged participation in an internal investigation is not actionable. As Chief of Detectives, Young has a mandatory duty to conduct internal investigations, [88] and may also conduct a criminal investigation just as any other officer may.[89] Furthermore, all officers in a supervisor role, such as Young, have an obligation to investigate any actions taken by officers during their shift.[90]

---

[84] Exhibit A – Supplemental Deposition of Michael Dunn, pp. 58-59.
[85] *Id.* at p. 59-60.
[86] *Id.* at p. 60.
[87] Rec. Doc. 128, p. 30; Exhibit A – Supplemental Deposition of Michael Dunn, p. 62.
[88] Exhibit D – Deposition of Ryan Young, p. 20; Exhibit A – Supplemental Deposition of Michael Dunn, p. 65.
[89] Exhibit E – Deposition of Randy Fontenot, pp. 75-77.
[90] See Exhibit E – Deposition of Randy Fontenot, pp. 74-75.

#### (d)    *Young did not harass Plaintiff with the threat of arrest*

Plaintiff cannot establish Young harassed him with the threat of arrest. As analyzed below, the evidence establishes the threat of arrest never happened. Plaintiff explained his allegations during his original deposition, where he testified: "Tony Kennedy [another EPD officer] calls me to the side of the road one day and gave me a heads up that [Chief] Randy [Fontenot] was trying to convince Lieutenant Young to have me arrested for malfeasance in office for refusing to go to state police for the investigation."[91] However, when Mr. Kennedy was asked in his deposition if he was "aware of any instances in which Chief Fontenot wanted to arrest Lieutenant Dunn for malfeasance", he denied knowledge of Chief Fontenot making such a statement.[92] Mr. Kennedy is retired[93] and would have no incentive to lie about this event. Young also denies Chief Fontenot asked him to investigate or arrest Plaintiff for his refusal to speak with the State police.[94] Accordingly, Plaintiff cannot establish a basis for this accusation.

Additionally, even if this event did happen, this would not constitute an adverse employment action by Young. Plaintiff avers the alleged decision to attempt his arrest came from Chief Fontenot, not from Young.[95] Young would not have been involved in the decision, as he does not make recommendations for discipline.[96] Lastly, an arrest never occurred.[97] Instead, Plaintiff's counsel sent a letter which resolved the issue, and no further action was taken.[98]

#### (e)    *Young did not cause a diminishment in job prospects*

Plaintiff cannot establish Young diminished his job prospects. This claim by Plaintiff relies

---

[91] Exhibit B – Original Deposition of Michael Dunn, p. 177.
[92] Exhibit G – Deposition of Tony Kennedy, pp. 110-111.
[93] Exhibit G – Deposition of Tony Kennedy, p. 13.
[94] Exhibit D – Deposition of Ryan Young, p. 72.
[95] Rec. Doc. 128, p. 30.
[96] Exhibit D – Deposition of Ryan Young, p. 66.
[97] Exhibit A – Supplemental Deposition of Michael Dunn, pp. 117-118.
[98] *Id.*

upon his inability to accept a job offer during the pendency of his alleged investigation for his unapproved overtime.[99] However, Young had no part in launching this alleged investigation, which was solely done by Deputy Chief Tony Kennedy and Chief Fontenot.[100] As analyzed above, Young's participation in the alleged investigation—the extent to which is not explained by Plaintiff—is not actionable, as it is Young's duty to conduct investigations.[101] Additionally, Plaintiff chose to appeal the chief's decision, which extended the pendency of the alleged investigation.[102]

In reality, Plaintiff has had other employment opportunities, and any struggles to find acceptable employment are due to his own choices. Plaintiff admitted in 2023 he had a job offer from the district attorney's office to work as an investigator, but chose to remain at EPD.[103] Plaintiff testified years later he was made an offer to join the LSU Police Department, but chose to remain at EPD.[104] Further, Plaintiff admitted his alleged difficulties finding suitable new employment was due to his pending lawsuits—lawsuits he chose to bring.[105] Additionally, Plaintiff admitted he has chosen not to submit additional employment applications because he is vested with the department and plans to remain at EPD at least four more years.[106]

Young cannot be faulted for Plaintiff's choices. Plaintiff chose to decline the job at the district attorney's office, chose to decline the job at LSU PD, chose to appeal his disciplinary violation, chose to bring these lawsuits, chose not apply for other jobs, and chose to remain at EPD

---

[99] Exhibit B – Original Deposition of Michael Dunn, pp. 213-216.
[100] Exhibit H – Michael Dunn 2022 Notice of Appeal, p. 1.
[101] Exhibit D – Deposition of Ryan Young, p. 20.
[102] Exhibit H – Michael Dunn 2022 Notice of Appeal, p. 1.
[103] Exhibit B – Original Deposition of Michael Dunn, p. 217.
[104] Exhibit A – Supplemental Deposition of Michael Dunn, p. 27.
[105] Exhibit A – Supplemental Deposition of Michael Dunn, pp. 233-234.
[106] Exhibit A – Supplemental Deposition of Michael Dunn, pp. 234-235. *See* Exhibit B – Original Deposition of Michael Dunn, pp. 218-219. *See also Thomas v. Tregre*, 913 F.3d 458 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (citing *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) (employer's refusal to give Plaintiff a job did not constitute an adverse employment action because Plaintiff never applied for the position).

to gain pension benefits. Plaintiff cannot rely on his own choices as a basis for harm.

### 3. *Plaintiff's speech did not cause the alleged adverse employment actions*

Plaintiff's speech did not precipitate any alleged adverse employment actions by Young. When analyzing element (4), whether Plaintiff's speech precipitated the adverse employment action, the Fifth Circuit has "described this fourth requisite showing as demanding that the plaintiff establish that his protected conduct was a 'substantial factor' or 'motivating factor' in the employer's adverse employment action."[107] Here, Plaintiff cannot meet his burden in showing his actions were a substantial or motivating factor in any of the alleged adverse employment actions by Young.

The evidence shows individuals within the Eunice law enforcement community had no knowledge of Young trying to take action against Plaintiff. Neutral parties to Young routinely speak of him as being an upstanding police officer, with no knowledge of pertinent wrongdoing by him. Officer Jack Ardoin testified he has never witnessed misconduct from Lt. Young,[108] never heard Young indicate he was out to get Plaintiff,[109] and believes Young is well respected in the law enforcement community.[110] City Marshall Terry Darbonne could not recall anything negative about Young's reputation.[111] Donnie Thibodeaux, a former K-9 officer, testified he has never seen Young do anything illegal.[112] Officer Buddy Dupre testified he has never witnessed misconduct by Young, Young has never asked him to violate a law or policy, and Young has never asked him to act unethically.[113] Officer Chase Godeaux testified Young has a good reputation in the law

---

[107] *Wilson v. Coll. of the Mainland*, 476 F. App'x 758, 761 (5th Cir. 2012) (citation modified).
[108] Exhibit I – Deposition of Jack Ardoin, p. 141.
[109] *Id.* at p. 239.
[110] *Id.* at p. 97.
[111] Exhibit J – Deposition of Terry Darbonne, p. 75.
[112] Exhibit K – Deposition of Donnie Thibodeaux, p. 257.
[113] Exhibit L – Deposition of Buddy Dupre, p. 72.

enforcement community.[114]

### 4. *Louisiana freedom of expression claims are analyzed the same as First Amendment claims*

Lastly, Plaintiff's claim for violation of the Louisiana Constitution fails for the same reasons as his First Amendment claim. The Fifth Circuit, when faced with a Louisiana Constitution, Article 1, §7 claim, has stated:

> Louisiana's constitutional protection of free speech mirrors that of the First Amendment, *Heaney v. Roberts*, 846 F.3d 795, 801 n.2 (5th Cir. 2017), and the Louisiana Supreme Court would recognize the same [QI] defense for claims under Article I, Section 7, that federal courts recognize for § 1983 First Amendment claims, *Id.* Therefore, if summary judgment is proper as to Plaintiffs' First Amendment claims, summary judgment is also proper on Plaintiffs' Article I, § 7 state law claims. *Cripps v. La. Dep't of Agric. & Forestry*, 819 F.3d 221, 231 (5th Cir. 2016). Accordingly, the two claims are analyzed as a single issue.[115]

Therefore, for the same reasons as stated above, Plaintiff's Louisiana Constitutional claim should be dismissed.

### E.    Conspiracy Under 1983

Plaintiff's claim for civil conspiracy pursuant to §1983 fails for two reasons: 1) Plaintiff cannot establish the existence of a conspiracy involving Young, and 2) there was no depravation of civil rights. "[T]o prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[116] Civil conspiracy is essentially "a legal mechanism through which to impose liability on all defendants without regard to who committed

---

[114] Exhibit M – Deposition of Chase Godeaux, p. 55
[115] *Clarkston v. White*, 943 F.3d 988, 992 n.4 (5th Cir. 2019) (internal quotations omitted).
[116] *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir.1990), *abrogated on other grounds by Martin v. Thomas,* 973 F.2d 449 (5th Cir. 1992); *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019). *See Plaisance v. Reese*, 353 F. Supp. 2d 735, 738 (E.D. La. 2004); *Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 373–74 (M.D. La. 2022); *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994).

the particular act".[117] There is no conspiracy claim without an actual violation of § 1983.[118]

### 1.  *Plaintiff cannot satisfy element (1), existence of a conspiracy*

First, Plaintiff cannot establish the existence of a conspiracy among the parties. The Fifth Circuit has never explicitly provided a framework for determining element (1), the existence of a conspiracy. However, the Fifth Circuit routinely dismisses cases when "the existence of a conspiracy agreement is not supported by the evidence".[119] Plaintiff "cannot rely on conclusional allegations to establish a conspiracy, but rather must allege material facts to support his claim."[120]

### (a)    *Plaintiff admits he has no evidence in support of element (1)*

Plaintiff is unable to establish element (1), the existence of a conspiracy among the Individual Defendants. Plaintiff's Amended Complaint fails to raise any specific facts in support of this element.[121] Further, when asked the basis of this accusation, he testified it is "based off the totality of all the evidence and stuff that was taken and collected".[122] However, at his original deposition, when asked if he has seen the Individual Defendants physically conspiring together,[123] if he has seen any written agreement between them,[124] if he has any witnesses that can testify to the existence of a conspiracy,[125] or if he had any evidence of a conspiracy,[126] he answered "no" to each inquiry.

---

[117] *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).

[118] *Id.* (citing *Pfannstiel*, 918 F.2d at 1187). "No deprivation, no § 1983 conspiracy." *Shaw,* 918 F.3d at 419.

[119] *Latiolais v. Cravins*, 484 F. App'x 983, 991 (5th Cir. 2012). *See e.g. Rodriguez v. Neeley*, 169 F.3d 220, 221–23 (5th Cir.1999) (dismissing section 1983 conspiracy claims because the existence of a conspiracy agreement was supported only through conclusory allegations); *Shaw*, 918 F.3d 414 (same); *Aguocha-Ohakweh v. Harris Cnty. Hosp. Dist.*, 731 F. App'x 312 (5th Cir. 2018) (same).

[120] *McAfee v. 5th Cir. Judges*, 884 F.2d 221, 222 (5th Cir. 1989).

[121] *See* Rec. Doc. 128, pp. 37-38.

[122] Exhibit B – Original Deposition of Michael Dunn, pp. 377-378.

[123] *Id.* at p. 378.

[124] *Id.*

[125] *Id.* at p. 381.

[126] *Id.* at 379.

### (b)    *Plaintiff's stated witnesses provide no support of element (2)*

At his supplemental deposition, three years after his original deposition, Plaintiff revised his answer regarding his knowledge of other witnesses. This time, Plaintiff alleged Joshua Dupre was involved and that the defendants spoke with "Brad or Brian Guidroz", a Louisiana State Police officer, but did not elaborate as to the extent of their alleged agreement or plot.[127] Other than the Dupre allegation, Plaintiff confirmed there were no other instances where he claims Young tried to set him up.[128]

Plaintiff's reliance on Mr. Dupre in support of his civil conspiracy claim is misplaced. Plaintiff alleges a criminal suspect, Mr. Dupre, stated individuals at the department were trying to "set up" Lt. Dunn.[129] However, when asked if Mr. Dupre said anything to implicate Young, Plaintiff confessed he never heard Young implicated by Mr. Dupre, but just that "they" were trying to set him up.[130] Mr. Dupre's testimony at his criminal hearing confirms this, where the only mention of Young is that "Victor, Ryan Young and the Chief, they all beefing with Dunn".[131] The criminal transcript contains no direct indication of wrongdoing on Young's part.

Plaintiff's reliance on Officer Guidroz is also misplaced. Ofc. Guidroz testified Plaintiff gave him "very vague information and nothing very detailed. Nothing that was actionable."[132] Ofc. Guidroz was only able to refer him to the FBI.[133] Further, Ofc. Guidroz testified Young "has never done anything to make me question his integrity".[134] Ofc. Guidroz provides no support for Plaintiff's allegations.

---

[127] Exhibit A – Supplemental Deposition of Michael Dunn, pp. 77-78.
[128] Exhibit A – Supplemental Deposition of Michael Dunn, p. 75.
[129] Rec. Doc. 128, p. 25.
[130] Exhibit A – Supplemental Deposition of Michael Dunn, pp. 68-70.
[131] Exhibit N – Joshua Dupre Criminal Hearing, p. 11.
[132] Exhibit O – Deposition of Brad Guidroz, pp. 26, 44.
[133] *Id*. at p. 26.
[134] *Id.* at p. 35.

### (c)    Young's role as Ofc. Fontenot's supervisor does not create a conspiracy

Plaintiff attempts to support conspiracy allegations against Young by virtue of the fact he previously supervised Victor Fontenot.[135] However, this too fails. For the reasons stated in part (i), Plaintiff cannot show that Young and Ofc. Fontenot entered into a conspiracy against him. Additionally, Young cannot be held liable for all actions conducted by Ofc. Fontenot simply by virtue of being his supervisor.

Plaintiff claims an "informal investigation" was conducted against him after a criminal suspect, Joshua Dupre, suggested Mr. Dupre had paid Plaintiff bribes in exchange for information.[136] Young denies any such "informal investigation" was conducted.[137] However, even if this allegation is taken as true for purposes of summary judgment, no impropriety or constitutional violation resulted.

After learning of Mr. Dupre's allegations against Plaintiff, Chief Fontenot and Young elected to refer the matter to the State Police.[138] The inquiry ended when the State Police did not gain any actionable information from Mr. Dupre.[139] Ofc. Walter Mire of the Louisiana State Police testified that an investigation concluding with no actionable information from informants is unremarkable and happens "all the time".[140] For these reasons, Plaintiff cannot establish that Young has civil conspiracy liability due to his role as the supervisor of Ofc. Fontenot.

### (d)    Plaintiff cannot satisfy element (1), existence of a conspiracy

Plaintiff has been unable to implicate Young in a conspiracy. Plaintiff failed to raise sufficient facts for such a claim, even when given numerous opportunities during the course of

---

[135] *See* Exhibit A – Supplemental Deposition of Michael Dunn, p. 61.
[136] Rec. Doc. 128, p. 30. Exhibit P – Deposition of Victor Fontenot, p. 210-211; Exhibit Q – Joshua Dupre Sworn Statement.
[137] Exhibit D – Deposition of Ryan Young, p. 111.
[138] Exhibit R – Deposition of Walter Mire, p. 38; *See* Exhibit P – Deposition of Victor Fontenot, pp. 198-199.
[139] *Id.* at p. 38-39.
[140] *Id.* at p. 40.

discovery. Accordingly, this claim against Young must be dismissed.

### 2. *Plaintiff cannot satisfy element (2), depravation of rights*

Second, Plaintiff's claim for civil conspiracy fails because he is unable to establish element (2), a deprivation of civil rights. "[A] conspiracy claim is not actionable without an actual violation of section 1983."[141] To establish a §1983 claim, there must be "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor. Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."[142]

The only civil rights violation claimed by Plaintiff is First Amendment retaliation, and the remaining claims are state tort claims. As analyzed above, Plaintiff is unable to show constitutional harm pursuant to § 1983 because Plaintiff has not suffered a recognized adverse employment action and Plaintiff cannot show that the defendants' actions precipitated the alleged adverse employment actions. Plaintiff fails to show he has suffered a § 1983 violation. Where there is no § 1983 violation, there is no claim for conspiracy.[143] Accordingly, this claim should be dismissed for failure to meet element (2) of civil conspiracy.

### F.    Intentional Infliction of Emotional Distress

Under Louisiana law, "in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[144]

---

[141] *Hale, supra.*
[142] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation modified).
[143] *See Hale, supra.*
[144] *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

Regarding his claim of intentional infliction of emotional distress ("IIED"), Plaintiff alleges Young intentionally failed to provide backup to Plaintiff,[145] makes a general reference to Young's investigations,[146] and broadly alleges the Individual Defendants intentionally inflicted severe emotional distress through extreme and outrageous conduct.[147] However, Plaintiff's claim fails for two reasons: 1) Young's conduct was not extreme and outrageous, and 2) Young had no desire to inflict severe emotional distress and did not have certainty that emotional distress would result.

First, Young's conduct was not extreme and outrageous. The Louisiana Supreme Court refers to the American Institute's Restatement (Second) of Torts § 46 in their analysis of extreme and outrageous behavior, which is described as the following:

> conduct . . . characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim, "Outrageous!"[148]

The facts belie any notion of extreme or outrageous conduct on the part of Young. Plaintiff was involved in a shooting which took place after the filing of this lawsuit, and Young responded as backup for Plaintiff while the shootout was actively taking place.[149] After the shooting, Young gave a positive statement to the investigator which contributed to Plaintiff being cleared of wrongdoing associated with the shooting.[150]

---

[145] Rec. Doc. 128, p. 29.
[146] *Id.* at p. 44.
[147] Rec. Doc. 128, p. 43-44.
[148] *Nicholas v. Allstate Ins. Co.*, 1999-2522 (La. 8/31/00), 765 So. 2d 1017, 1022.
[149] Exhibit A – Supplemental Deposition of Michael Dunn, p. 34.
[150] Exhibit A – Supplemental Deposition of Michael Dunn, p. 37.

Further, as analyzed above, Young's alleged investigations of Plaintiff were necessary, legitimate, and unremarkable. The evidence shows even though Young had opportunities to retaliate against Plaintiff, he chose not to, and Plaintiff fails to meet his burden for element (1) of IIED.

Second, Young did not desire to inflict emotional distress upon him, nor did he have knowledge that his actions would cause distress. Plaintiff fails to raise any facts which show Young acted with intent to cause emotional distress. Further, Young testified he had no intention "to inflict any hard times on Lieutenant Dunn".[151] Plaintiff cannot rest on his conclusions of malice without any evidence of same. Accordingly, this claim fails because Plaintiff has not met his burden for element (2) of IIED.

### G.    Prescription of Claims

This suit was filed on June 4th, 2021. Accordingly, this claim is subject to a prescriptive period of one year.[152] Therefore, any events occurring before June 4th, 2020, are prescribed and may not be raised in support of any claim. In particular, any claim associated with Plaintiff's removal from narcotics investigations is prescribed, as he was removed from the position in May 2019, more than one year before the filing of this lawsuit.[153]

### IV.    CONCLUSION

For the foregoing reasons, the defendant, Lt. Ryan Young, prays his Motion for Summary Judgment be granted, and that all of the Plaintiffs' claims against Lt. Ryan Young be dismissed, with prejudice, and at the Plaintiffs' sole cost.

---

[151] Exhibit D – Deposition of Ryan Young, p. 200.
[152] Louisiana law established a one-year prescriptive period for delictual actions until July 1, 2024. See La. C.C. art. 3492; La. C.C. art. 3493.1.
[153] Rec. Doc. 128, p. 22; Exhibit B – Original Deposition of Michael Dunn, p. 409.

Respectfully submitted,

**NEUNERPATE**

/s/ Robert E. Torian
**JASON T. REED** (#28733)
(jreed@neunerpate.com)
**ROBERT E. TORIAN** (#18468)
(rtorian@neunerpate.com)
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, LA 70503
Telephone: (337) 237-7000
Facsimile: (337) 233-9450
**Counsel for Defendant, Lt. Ryan Young**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all known counsel of record via the Court's electronic filing system.

Lafayette, Louisiana this 24th day of February, 2025.

/s/ Robert E. Torian
Counsel

-25-