THE TWENTY-SEVENTH JUDICIAL DISTRICT COURT

IN AND FOR THE PARISH OF ST. LANDRY

STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS                          CRIMINAL DOCKET NO. 19-K-1788-C

JOSHUA DUPRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STATE OF LOUISIANA

VERSUS                          CRIMINAL DOCKET NO. 20-K-2689-C

JOSHUA DUPRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STATE OF LOUISIANA

VERSUS                          CRIMINAL DOCKET NO. 20-K-2690-C

JOSHUA DUPRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## TRANSCRIPT OF PROBATION REVOCATION HEARING

PROCEEDINGS had on the above entitled and numbered cause at Opelousas, Louisiana, before The Honorable A. Gerard Caswell, Judge of the Twenty-Seventh Judicial District Court, in and for the Parish of St. Landry, State of Louisiana, on the 8th day of October, 2020.

APPEARANCES:

MS. SHAUNN CAILLIER-HARDEN, Assistant District Attorney, in and for the Parish of St. Landry, State of Louisiana;

MR. IRVIN J. CELESTINE, JR., Attorney at Law, 214 West Landry Street, Opelousas, Louisiana, 70570, standing in for MR. QUINCY L. CAWTHORNE, Attorney at Law, 521 East Landry Street, Opelousas, Louisiana, 70570; Counsel for Defendant; and

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**EXHIBIT N**

REPORTED BY DONNA B. CHACHERE, Certified Digital Reporter, Twenty-Seventh Judicial District Court, in and for the Parish of St. Landry, State of Louisiana.

<u>INDEX</u>

PAGE

**Witnesses called on behalf of the State:**

**NONE**

**Witnesses called on behalf of the Defense:**

**JOSHUA DUPRE**
      Direct Examination by Mr. Celestine.............  8

**MS. CAILLIER-HARDEN:** Your Honor, next is an add on, Mr. Joshua Dupre. It is-- let's do this, Your Honor, Docket No. 19-K-1788-C, he needs to-- we need to reset for arraignment on 11/19, and also on Docket No. 20-K-2689-C, it also encompasses Docket No. 20-K-2690-C. I'd ask that it be refixed for Division "C" for arraignment for November 19th.

**THE COURT:** So ordered.

**MS. CAILLIER-HARDEN:** And now, I think Your Honor, we are here on a revocation matter set by the Court.

**THE COURT:** Are we ready to proceed?

**MS. CAILLIER-HARDEN:** Yes, sir.

**THE COURT:** All right. I'm aware, I'm the one who set it. I had Mr. Dupre in lineup. So the issue is whether or not he has violated the conditions of his bond as a result of the new arrest, and let me just get my dockets numbers correct. His new arrest is Docket No. 20-M-3687-C, and 20-M-3686-C, both of which are drug charges. One's a possession with intent to distribute Schedule II, Cocaine. The other is principle to possession with intent to distribute Schedule II, Meth, and possession of a uniform controlled dangerous substance in a drug free zone. Now, the issue is whether or not bond conditions in Docket Numbers 19-K-1788-C, 20-K-2689-C and 20-K-2690-C have been violated. The Court would note that in Docket No. 19-K-1788-C, there's a condition of no criminal activity and no use

4

or possession of a controlled dangerous substance. In Docket No. 20-K-2689-C, both of those same conditions and Docket No. 20-K-2690-B, both of those same conditions.

MR. CELESTINE: Judge, with regards to the two new criminal arrests,...

THE COURT: Yes.

MR. CELESTINE: ...I am not sure, but the lineup sheet is incomplete. So--

MS. CAILLIER-HARDEN: Did you check the computer, not what I have? Mr. Celestine, this is the question I have for you, sir, and you may be correct. I'm not saying that you're not. Did you check the actual clerk's file in the clerk's record versus what I had?

THE COURT: Are you talking about the Probable Cause Affidavit having the first page missing?

MS. CAILLIER-HARDEN: Yes, sir.

MR. CELESTINE: Yes, sir.

THE COURT: I'm aware of that. The reason it didn't affect my decision, is I approved it on warrant now, and I had all of the pages.

MR. CELESTINE: Oh, okay.

THE COURT: It was already approved, so when they brought it in, I didn't need to see it. They just failed to attach it. It exists, because I approved it on warrant now.

MS. CAILLIER-HARDEN: And that's what I wanted to make sure. Mr. Celestine, you had the opportunity to actually review the clerk's --

5

THE COURT: Now, whether they got it to the clerk's file yet or not, but I can tell you, the officer submitted it to me, via warrant, now electronically, and I approved it very early on the morning of his lineup. So when I got here, and he said it was missing, in fact, my deputy told me that they're supposed to be getting that front page. Somehow or another, it didn't get attached. I said, I've already seen it. They sent it to me electronically.

MR. CELESTINE: And the other matter has one-- I think it's one of three. I don't believe the other two pages are in that one.

THE COURT: Let me check. In the two new ones you mean?

MR. CELESTINE: Yes, sir. That one--

**(At which time, Court and counsel have a discussion at the bench, but out of the hearing of the Court Reporter, after which the following proceedings were had.)**

MS. CAILLIER-HARDEN: The one you reference is Docket No. 20-M-3687-C.

THE COURT: Docket No. 20-M-3687-C, has page one, but you see when it says one of three and two of three, you're looking for page three. Page three is an actual warrant that just isn't attached that I executed electronically, and that's the same thing, one and two.

MR. CELESTINE: This one is the one that didn't have--

THE COURT: Okay. You can look at them.

(At which time, Mr. Celestine looks through documents from the Court, after which the following proceedings were had.)

THE COURT: Are we ready to proceed?

MR. CELESTINE: Yes, Your Honor.

THE COURT: All right. Mr. Dupre is appearing on the screen. Mr. Celestine is counsel. Again, the Court will take judicial notice of the conditions of bond in Docket No. 19-K-1788-C, 20-K-2689-C and 20-K-2690-C, and will take judicial notice of the Probable Cause Affidavits for arrest in Docket No. 20-M-3686-C and 20-M-3687-C. The issue is whether or not the conditions of no criminal activity and no controlled dangerous substances have been violated as a result of the new arrests. Anything further than that, that the State wants to put in?

MS. CAILLIER-HARDEN: No, sir, other than I ask the Court to take judicial notice of each individual record, sir.

THE COURT: I did.

MS. CAILLIER-HARDEN: Thank you.

THE COURT: Mr. Celestine?

MR. CELESTINE: Your Honor, I call Mr. Dupre.

THE COURT: Let's swear in the defendant.

MADAM CLERK: Raise your right hand, please. Do you solemnly swear or affirm the testimony you're about to give in this matter shall be the truth, the whole truth, and nothing but the truth, so help you, God?

7

THE DEFENDANT: Yes, ma'am.

THE COURT: All right, Mr. Dupre, before you testify, I want you to understand something. The Louisiana Constitution and the United States Constitution gives you an absolute right not to have to testify in any criminal proceedings in which you are a defendant. It's called the right against self incrimination. You cannot be required to testify and if you do not testify, I will not presume or assume any guilt on your part, just by virtue of the fact that you did not testify. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you also understand if you testify, the District Attorney can take anything you say and use it against you in prosecuting you?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Do you wish to testify?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Proceed, Mr. Celestine.

<u>JOSHUA DUPRE</u>

called as a witness, having been duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. CELESTINE:

Q.   Mr. Dupre, you're aware of the new allegations, or the new criminal charges against you?

A.   Yes, sir.

Q.   Specifically, I believe you were recently arrested on a

8

warrant in regards to a possession with intent to distribute charges?

A.   Yes, sir.

Q.   Okay.

A.   This matter--

Q.   I'm sorry.

A.   This matter that's going on, like I'm trapped in the crossfire with the Eunice Police Department, like--

THE COURT: Hang on, and answer the questions of your lawyer, please.

MR. CELESTINE CONTINUES:

Q.   So with regards to the charges, you maintain your innocence, correct?

A.   Yes, sir.

Q.   And isn't it true-- is it true that you had some recent interactions with the detective on both of these matters?

A.   Yes, sir.

Q.   What--

MS. CAILLIER-HARDEN: Mr. Celestine, for clarification, which detective?

MR. CELESTINE: I'm sorry.

THE COURT: Victor Fontenot.

MR. CELESTINE CONTINUES:

Q.   Detective Fontenot, correct?

A.   Yes, Victor.

Q.   Victor.

A.   Victor, yes, sir.

Q.   Okay.  What specific issues are you having with Detective Victor?

A.   All right.  This is what's going on.  My name got drawn in, something with Officer Dunn.  Something about I'm paying Officer Dunn--

Q.   Who is Officer Dunn?

THE COURT: Lieutenant Mike Dunn, with the Eunice Police Department.

**MR. CELESTINE CONTINUES:**

A.   Yes, he got a lawsuit out right now on Eunice Police Department, for falsely using his name, or whatever. So ever since somebody told Detective Victor that I'm paying Officer Dunn money for information, which I'm not. I don't where they get that from, and this is how it all started. I got text messages in my phone, in one of my phones,...

Q.   Okay. Wait hold on.

A.   ...in my phone.

Q.   You're allegedly paying Detective Dunn money for what?

THE COURT: No, Dunn's allegedly paying him for information.

MR. CELESTINE: No, no.

THE DEFENDANT: No.

THE COURT: No. Okay, I'm sorry.

THE DEFENDANT:  That's what-- yes, they said I'm paying Dunn for information, like to get information...

THE COURT: Okay.

THE DEFENDANT: ...about what's going on with the police department, but I ain't paying nobody.

**MR. CELESTINE CONTINUES:**

Q.   And who approached you with regards to that?

A.   Uh, Detective Victor. He's threatening me, riding along my house every day. Man, I'm talking about-- I got text messages in my phone from him telling me he was going to put these new charges on me, for me not to get out, that I have a hold on me. That he's coming with new charges, a possession with intent is nine tenths

of the law, sir.  I ain't had nothing on me when he stopped me, so I don't know where they getting possession.

Q.    The new charges, the facts are not necessarily a possession with intent.  It's allegedly, it would actually be alleged distribution on two dates, but you are stating you are unaware of that, correct?

A.    Yes, sir.  I was in Springville, Florida, picking up equipment for a-- I was on a construction job and I stayed out there like two, about a week and half or something like that, and Victor told me that I caught this charge like a month ago, or something like that, which I wasn't even around.  He told me--

Q.    Wait, hold on.  What does the Detective-- what does he want you to do?  What is he looking for you to do?

A.    He really thinks that I got some information that make-- some information about me paying Dunn money, 'cause like they got some altercation going on in the Eunice Police Department right now.  Like Victor, Ryan Young and the Chief, they all beefing with Dunn; and like, I'm in the middle of it, like I'm on Dunn's side.  So he threatened me, telling me I need to give him some information on Dunn so they can get rid of his ass, his butt, or whatever, something like that.  Man, I ain't got no-- I don't know what y'all talking about.  I ain't never paid this man.  I don't know--

Q.    Okay.

A.    I ain't never (inaudible)-- as  a matter of fact this man got me on like-- Dunn already arrested me on a (inaudible) charge, so like--

Q.    When were you arrested by Detective Dunn, what year?

A.    Yes, sir.  I been arrested by Detective Dunn, too.

Q.    When was this, 2018?

A.    Yes, sir, before-- like before Christmas or so.

Q.    Okay.

A.    When Officer Dunn came on the scene, I let him know what's

11

going on, and he's like, huh? I'm like, yeah, man, this is all going on, because they thinking I'm giving you money for information, brah. I'm in a (inaudible) spot.

Q. What information would you-- what information are you alleged to be receiving from Dunn?

A. Yeah like-- 'cause the cops, like the narcotics, they went to my rent house that I don't stay there, I'm renting out. They went over there, but nobody was at the place at the time. So he telling me, like Dunn called me and told me, don't go over there, but I haven't been to my rent house that whole day. You know, and the new charges that I got today, right now, he told me with his own words, that he was going to do this to me to where I don't get out of jail, and he kept my phone. He kept the phone that got the text messages in there, 'cause I told him recently when he text me the other day, I told him, man, I got all these text messages and I'm bringing it to Opelousas so they can see that man. You threatening me, brah. I don't know what's going on. I don't know how they get some information about me paying--

Q. How many times has the detective attempted to--

A. Every time he seen me. Every time he seen me, sir. Every time he seen--

Q. Give me an estimate. Estimate how many times this has happened.

A. Man, if I'm out on the street-- three, three times-- every time he sees me, he gonna mess with me. You know, he gonna mess with me.

Q. How many times--

A. He be pullin' on the side--

Q. How many times in total would you say? Just guess.

A. At least three times a day.

Q. Three times a day?

A. About three times a day to where I'm hiding, so I don't see

12

him.  Like when I got picked up the other day, he kept passing around my mom house, and I'm like man, I ain't got nothing to hide from.  I'm just go ahead and go back where I be.  You know, and I left-- you know, he wasn't around, but I don't know where he come from, and he seen my truck from a long distance, and he came after me.  So I'm fed up with this, him stopping me like that.  So if I wouldn't have got out the car and reacted on, you know, him stopping me like that, I wouldn't be in jail right now.

Q.  Okay.

A.  They arrested me, 'cause I went off on him telling him that. I ain't got no information for you, brah.  You need to leave me alone, man, and you know he charged me with a possession with intent.  I ain't got caught with nothin'.  I don't know when he did search me to where I got caught with something, like on the first charges.  That's why he picked me up, because he wants information on Dunn, and you know, I ain't got no information.  That's why he came with the first charges to pick me up, because he looked at the first charges.  The first charges is possession with intent to distribute.  I ain't never got caught with nothin', that's why-- I don't know what's going on with this here.  I don't know.  I'm being falsely accused.  I'm being threatened, everything, you know. You have something I don't even know-- there's something going on with the Eunice Police Department.  My name got thrown in like I'm paying--

Q.  Okay.  So--

          THE COURT:  I got what he's trying to tell me.

          MR. CELESTINE:  Right.  I was trying to stop him.

          THE COURT:  I got what he's trying to tell me.

13

MR. CELESTINE CONTINUES:

Q. So, long story short--

A. Officer Dunn filed a lawsuit on the City of Eunice, and when I seen that in the newspaper, I said, aw, it's about to go down. I know he about to mess with me, and bam, there it is. He came met me the other day.

Q. Okay. So with everything being said, you maintain--

A. (Inaudible.)

Q. Listen, listen. You maintain your innocence in these matters, correct?

A. Yes, sir. Man, I'm working-- as a matter of fact, I'm working. Man, I got things going on. I'm on top of a roof right now. I was supposed to go back to work this morning, and I couldn't even go back to work, because of this here. You know I don't know what--

Q. Okay. All right. That's all right.

MR. CELESTINE: No further questions, Judge.

THE COURT: Does the prosecution have any questions?

MS. CAILLIER-HARDEN: No, sir, Your Honor. We'll defer to the Court.

THE COURT: So Mr. Dupre, you understand the two new arrests indicate that a confidential informant made a buy of crack cocaine. One directly from you and another, basically between you and Mr. Vigers. Arthur Vigers made the sale, and that police officers watched it all go down from a distance; and you're saying that didn't happen?

THE DEFENDANT: Sir--

THE COURT: I'm just asking you a

14

question.  Are you saying that didn't happen?

THE DEFENDANT: No, sir.  That did not happen.  As a matter of fact, me and Arthur Vigers got these same charges with Officer Frank, a couple of years prior back, you know.  Man, man, you just don't understand what's going on.  You don't understand.  Your Honor, I wish--

THE COURT: Well, in 2020, in July of 2020, you were arrested by Detective Fontenot, alleging that you sold crack cocaine to a confidential informant then, right?

THE DEFENDANT: Yes, sir.

THE COURT:  That's what you were arrested for, but you're telling me that you didn't do that either?

THE DEFENDANT: The arrest was for truancy.  They arrest me-- they ain't even bring me to the police station.  They brought me to their station, and they straight went in my head, like "I know you paying Dunn."

THE COURT:  "Their" station, whose station, "their" station?

THE DEFENDANT: The narcotics station, like over there by the DMV.  They brought me straight over there, and they pressed me, like "I know you paying Dunn money."  You know they ain't never said nothin' about no charges, or nothin', you know what I'm saying.  He straight up said-- really, why don't you let me go, if I could bring him some information on Dunn, which I don't have no information.  I

15

got information in my phone that he threatened me for information on Dunn.

MR. CELESTINE: Judge, I--

THE DEFENDANT: I'm just, like I'm just in the middle of something, and I don't really know what's going on.

THE COURT: I tell you what I'm willing to do.  I am willing to reconvene this hearing next week, with a subpoena to Victor Fontenot to be here and testify in front of me and for me to ask him questions.

MR. CELESTINE: And Judge, I would ask also that, obviously, if there's CI buys and there's audio video that the Court have an opportunity--

THE COURT: I don't know is there's a video.  The Probable Cause doesn't mention a video.

MR. CELESTINE: Right.  Well Eunice is pretty good about audio/video.

THE DEFENDANT: He told me-- he showed me a video already.  He told me he's seen--

THE COURT: What he told you is immaterial to me, because I don't know that.  All right. Here's what we are going to do.  We are going to reset this bond revocation hearing.  I'm trying to help you, Mr. Dupre, so bear with me.

THE DEFENDANT: I understand.  I understand.

THE COURT: Now, you're going to have to stay in jail while I do it, because I can't

16

let you out until I know.  Now, if you don't want me to do that, I'll rule today.

THE DEFENDANT: No, no.

MS. CAILLIER-HARDEN: Judge, may I approach?

THE COURT: Okay.

**(At which time, Court and counsel have a discussion at the bench, but out of the hearing of the Court Reporter, after which the following proceedings were had.)**

THE COURT: This matter is going to be reset for next Wednesday, the 14th, and we'll take it up right after lineup. We'll schedule it for 8:30.  I would like the District Attorney to subpoena Detective Victor Fontenot to come, and I would like Detective Victor Fontenot, if he has a phone seized from this defendant at the time of arrest, to bring it with him.

THE DEFENDANT: Yes, sir, bring my phone.

MR. CELESTINE: Thank you, Judge.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

STATE OF LOUISIANA

PARISH OF ST. LANDRY


This certificate is valid only for a transcript accompanied by my original signature and original seal on this page.


This certificate is valid only for a transcript accompanied by my original signature and original seal on this page.


I, DONNA B. CHACHERE, Certified Digital Reporter in and for the State of Louisiana, employed as an Official or Deputy Official Court Reporter by the Twenty-Seventh Judicial District Court for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify:

That this testimony was reported by me in the digital reporting method;

That it was prepared and transcribed by me or under my direction and supervision;

That it is a true and correct transcript to the best of my ability and understanding;

That the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board or by the Supreme Court of Louisiana; and

That I am not related to counsel or to the parties herein, nor am I otherwise interested in the outcome of this matter.

Opelousas, Louisiana, this 21st day of December, 2020.

_Donna B. Chachere_
Donna B. Chachere
Certified Digital Reporter

18