**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

MICHAEL DUNN,

      Plaintiff,

          v.

RANDY FONTENOT, VICTOR FONTENOT, RYAN YOUNG, CITY OF EUNICE, and JOHN DOE,

      Defendants.

Civ. A. No.: 6:21-cv-01535

JUDGE ROBERT R. SUMMERHAYS

MAGISTRATE JUDGE DAVID J. AYO

**MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANT CITY OF EUNICE'S MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................4

    A.    Lt. Dunn Observed and Reported Widespread Misconduct and State Law Violations at EPD ............................................................................................................4

    B.    Chief Fontenot, Lt. Young, and Officer Fontenot Retaliate Against Lt. Dunn ...........5

    C.    The Written Policies and Chief Fontenot's Retaliatory Custom ................................6

LEGAL STANDARD.............................................................................................................7

ARGUMENT...........................................................................................................................8

I.      LT. DUNN HAS PROVEN HIS *MONELL* CLAIM............................................................8

    A.    Lt. Dunn Marshalled Ample Evidence to Show an Unconstitutional Policy Under Five Independent *Monell* Theories ...........................................................................9

    B.    Lt. Dunn Suffered Several Actionable Adverse Employment Actions .................13

II.    A REASONABLE JURY COULD FIND THAT THE CITY VIOLATED ARTICLE 1 § 7 OF THE LOUISIANA STATE CONSTITUTION (COUNT FIVE AGAINST THE CITY OF EUNICE) ...........................................................................................................16

    A.    The Record Provides Sufficient Evidence for a Reasonable Jury to Find that Lt. Dunn Reported Actual Violations of Louisiana State Law ...................................18

    B.    The Record Contains Evidence of Material Reprisals Within the Meaning of the Whistleblower Statute........................................................................................19

CONCLUSION......................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Hays*,
   65 F.4th 736 (5th Cir. 2023) ..............................................................................................8

*Am. Mfrs. v. Colbert*,
   48 F.3d 530 (5th Cir. 1995) ...............................................................................................18

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................................16

*Bennett v. Serpas*,
   2017 WL 2778109 (E.D. La. June 26, 2017)......................................................................14

*Breaux v. City of Garland*,
   205 F.3d 150 (5th Cir. 2000) ..............................................................................................14

*Browning v. Sw. Research Inst.*,
   288 F. App'x 170 (5th Cir. 2008) .......................................................................................15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................................................7

*Conners v. Pohlmann*,
   2021 WL 4862069 (E.D. La. Oct. 19, 2021) ........................................................................7

*EEOC v. Chevron Phillips Chem. Co.*,
   570 F.3d 606 (5th Cir. 2009) ..............................................................................................18

*Freedom from Religion Found., Inc. v. Abbott*,
   955 F.3d 417 (5th Cir. 2020) ................................................................................................9

*Gautreau v. EnLink Midstream Operating GP, LLC*,
   342 So.3d 939 (La. Ct. App. 2022)......................................................................................18

*Haire v. Bd. of Supervisors of La. State Univ.*,
   719 F.3d 356 (5th Cir. 2013) ..............................................................................................17

*Int'l Shortstop Inc. v. Rally's, Inc.*,
   939 F.2d 1257 (5th Cir. 1991) ..............................................................................................7

*Johnson v. Hosp. Corp. of Am.*,
   767 F. Supp. 2d 678 (W.D. La. 2011)..................................................................................20

*Kyger v. Lowe's Home Ctrs., Inc.*,
  2005 WL 78944 (E.D. La. Jan. 11, 2005)....................................................................19

*Lightell v. Walker*,
  527 F. Supp. 3d 866 (E.D. La. 2021).........................................................................19

*Littell v. Houston Indep. Sch. Dist.*,
  894 F.3d 616 (5th Cir. 2018) .......................................................................................8

*Lou v. Lopinto*,
  2023 WL 3976132 (E.D. La. June 13, 2023)..............................................................18

*Matthias v. Bingley*,
  906 F.2d 1047 (5th Cir. 1990) ......................................................................................8

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978)............................................................................................ *passim*

*Odeh v. City of Baton Rouge/Par. of E. Baton Rouge*,
  191 F. Supp. 3d 623 (M.D. La. 2016)...................................................................18, 19

*Owens v. La. State Univ.*,
  709 F. Supp. 3d 219 (M.D. La. 2023).........................................................................9

*Peterson v. City of Fort Worth*,
  588 F.3d 838 (5th Cir. 2009) .......................................................................................8

*Richardson v. Axion Logistics, LLC*,
  2016 WL 2595105 (M.D. La. May 4, 2016).................................................................19

*Sharp v. City of Houston*,
  164 F.3d 923 (5th Cir. 1999) .................................................................14, 15, 16, 17

*Smith v. AT&T Sols., Inc.*,
  90 F. App'x 718 (5th Cir. 2004) ................................................................................20

*Tolan v. Cotton*,
  572 U.S. 650 (2014)......................................................................................................7

*Woodard v. Andrus*,
  419 F.3d 348 (5th Cir. 2005) .......................................................................................8

*Zarnow v. City of Wichita Falls*,
  614 F.3d 161 (5th Cir. 2010) .......................................................................................9

*Zelenak v. Beauregard Elec. Coop. Inc.*,
  2025 WL 2025177 (W.D. La. July 18, 2025)..............................................................19

## Statutes

42 U.S.C. § 1983 .......................................................................................................................1, 8

La. R.S. 14:19 .............................................................................................................................5, 19

La. R.S. 14:110 ...........................................................................................................................4, 18

La. R.S. 14:122.2 ............................................................................................................................4

La. R.S. 23:967 ............................................................................................................17, 18, 19, 20

La. R.S. 130.1 ..............................................................................................................................5, 19

La. R.S. 14:66 ..............................................................................................................................5, 19

## Other Authorities

U.S. Const. First Amendment ...........................................................................................................9

U.S. Const. Fifth Amendment......................................................................................................1, 16

Fed. R. Civ. P. 56.........................................................................................................................7, 16

Louisiana Constitution Article 1 § 5...........................................................................................5, 19

Louisiana Constitution Article 1 § 7.............................................................................................17

Plaintiff Lieutenant Michael Dunn ("Lt. Dunn"), by and through his undersigned counsel, respectfully submits this brief in opposition to Defendant the City of Eunice's (the "City") motion for summary judgment (ECF Nos. 241 & 241-2, the "Motion" or "Mot.").

**<u>INTRODUCTION</u>**

Faced with incontrovertible evidence of retaliation, Defendant the City of Eunice (the "City") nitpicks—with little case law or evidentiary support—Plaintiff Michael Dunn's ("Lt. Dunn") claims under 42 U.S.C. § 1983 (the "*Monell* claim") and the Louisiana Whistleblower Statute ("Louisiana Whistleblower claim"). In doing so, the City admits, or otherwise does not contest, many of the elements that Lt. Dunn will prove to satisfy his case. For instance, the City admits that Lt. Dunn reported—internally and externally—misconduct committed by personnel at Eunice Police Department ("EPD"). The City concedes, too, that Lt. Dunn was placed on administrative leave and stripped of his canine duties. For purposes of its motion, the City likewise does not contest that Lt. Dunn was stripped of narcotics duties, that he was ostracized within EPD, and that a civilian named Joshua Dupre testified—under oath and after waiving his Fifth Amendment rights—that Defendant Officer Victor Fontenot ("Officer Fontenot") coerced him to falsely accuse Lt. Dunn of corruption. Rather than challenge those facts—because it cannot—the City seeks haven behind a few baseless arguments. The City's contentions lack any foundation in fact or law, and the Court should therefore reject them.

At its core, this case concerns retaliation against a veteran police officer who spoke out about unconstitutional practices and violations of state law, including the use of excessive force against civilians, neglect of inmates' medical needs, falsified and mishandled evidence, threats against public officials, the facilitated escape of a detainee, and misuse of public funds. For years, Lt. Dunn reported that misconduct internally. And when the internal reports went unaddressed, he

1

turned to external sources. His reports were met with swift and unyielding retaliation. Lt. Dunn filed this action to end that retaliation and ensure it cannot happen to any other EPD officers.

After years of discovery, the City seeks summary judgment on narrow grounds. On Lt. Dunn's *Monell* claim, the City says that (1) Lt. Dunn cannot prove an actionable written policy or widespread custom, and (2) the actions taken against him do not amount to adverse employment action. And on Lt. Dunn's Louisiana Whistleblower claim, the City claims that Lt. Dunn demonstrated neither actual violations of state law nor reprisals. The City is wrong in each respect, and while Lt. Dunn believes that the *Monell* claim can be decided in his favor at this stage, it is certainly not the case that the facts are *undisputed* as to the lack of a violative policy, adverse employment action, and legal violations.

Start with Lt. Dunn's *Monell* claim. At least five theories independently support a finding of actionable municipal policy: (1) suspect official policies, (2) widespread customs or practices, (3) single retaliatory acts by a policymaker, (4) ratification of constitutional violations, and (5) deliberate indifference/failure to supervise.[1] The City challenges only the first two theories— *i.e.*, unconstitutional policies and widespread customs. That the City does not even challenge the latter three means that the *Monell* claim cannot be decided for it now.

As to the City's written policies, the undisputed record evidence shows that EPD's written policies are unconstitutional because they vest the Chief of Police with unbridled discretion to restrict protected speech. EPD's procedural orders (which are its written policies) empower the Chief of Police to interpret the policies, investigate violations, and punish EPD personnel as he sees fit. The broadly worded policies likewise permit the Chief to mete out punishment for

---

[1] As explained in Lt. Dunn's motion for summary judgment, the undisputed record evidence compels judgment in Lt. Dunn's favor on three of his *Monell* theories, including widespread customs or practice, ratification, and deliberate indifference. *See* ECF No. 252-1 at 19–29.

violating the "conduct unbecoming an officer" and "loyalty to the Department" policies or for "publicly criticiz[ing EPD], its policies, or other members." These policies create the structural mechanism for retaliation, free-speech violations, and misuse of power. And that is exactly what Chief Fontenot did to Lt. Dunn.

Even setting aside those suspect policies, the undisputed evidence establishes that Chief Fontenot fostered a widespread custom of retaliating against EPD personnel who reported misconduct. Besides Lt. Dunn, four EPD officers testified to that. Indeed, Chief Fontenot's own words reveal the custom. He said that EPD personnel reporting EPD misconduct "constantly . . . to the mayor, the [city council], and [Eunice] Civil Service Board" was "a problem." And he stated that anyone who appealed his decisions "need[s] to die."

The City's adverse employment action argument fares no better. Contrary to the City's position, the actions Chief Fontenot, Officer Fontenot, and Lt. Young took against Lt. Dunn go well beyond interpersonal conflicts. They establish actual and constructive demotions. Chief Fontenot stripped Lt. Dunn of desirable duties as canine officer and narcotics officer—both actual demotions. And Chief Fontenot, together with Officer Fontenot and Lt. Young, initiated a relentless retaliatory campaign against Lt. Dunn, which has ostracized him within EPD, made him radioactive in the broader law enforcement community, and put his life in danger. That is textbook constructive demotion under settled Fifth Circuit law.

The City's arguments on Lt. Dunn's Louisiana Whistleblower claim are similarly deficient. The record contains substantial evidence that Lt. Dunn reported specific violations of Louisiana law and, in response, suffered tangible reprisals, including the actual and constructive demotions described above. The City's insistence that no "actual violation" occurred because outside

3

agencies did not formally adjudicate wrongdoing misstates Louisiana law, and its attempt to minimize the reprisals is foreclosed by the factual record.

In short, Lt. Dunn has proven beyond dispute his *Monell* claim, and genuine disputes of material fact abound on his Louisiana Whistleblower Statute claim. Therefore, the City of Eunice's motion for summary judgment must be denied.

## BACKGROUND

Lt. Dunn has served at EPD for over fifteen years, during which time he has built a reputation for integrity and competence. *See* Plaintiff's Statement of Contested and Supplemental Facts in Opposition to Defendants Ryan Young's and City of Eunice's Motions for Summary Judgment ("Dunn SOF") ¶¶ 37–38.[2] He was promoted to lieutenant in 2016, and in that capacity, he had various responsibilities, including supervising and training EPD personnel, *id.*; "handl[ing] various narcotics issues," City of Eunice Statement of Uncontested Material Facts ("City SUMF") ¶ 5, and spearheading EPD's canine program, Dunn SOF ¶ 37. Lt. Dunn's record, as described by a fellow officer, is "impeccable." Dunn SOF ¶ 38.

### A.   Lt. Dunn Observed and Reported Widespread Misconduct and State Law Violations at EPD

Since 2017, Lt. Dunn has observed his fellow officers at EPD violate laws and individuals' constitutional rights, including, among others, officers using excessive force against civilians and mishandling evidence of rape. Dunn SOF ¶¶ 52–56. Lt. Dunn sought to remedy that misconduct by reporting it internally to Chief Fontenot. *Id.* Nothing changed; indeed, Lt. Dunn's reports went uninvestigated. *Id.*

---

[2] Record citations herein refer to the Dunn SOF or exhibits appended to the Declaration of Norman M. Hobbie Jr., Esq. in Opposition to Defendants Ryan Young's and the City of Eunice's Motions for Summary Judgment ("Hobbie Decl.").

Lt. Dunn documented—and reported—specific violations of state law.  The record shows that he reported Officer Fontenot's attempt to facilitate an inmate's escape, in violation of Louisiana's simple and aggravated escape statute, La. R.S. 14:110.  Dunn SOF ¶ 53.  He reported Officer Fontenot's verbal threats aimed at Lt. Dunn, which constitutes threatening a public official in violation of La. R.S. 14:122.2.  *Id.* ¶ 62.  Lt. Dunn reported instances of excessive force against restrained detainees, in violation of La. R.S. 14:19.  *Id.* ¶ 54.  He reported the mishandling of rape evidence, in violation of La. R.S. 130.1.  Dunn SOF ¶¶ 55, 62.  And he reported coercive investigative tactics and extortion, in violation of Article 1 Section 5 of the Louisiana Constitution and La. R.S. 14:66.  *See* Dunn SOF ¶¶ 56, 69–78.  Indeed, the City admits that Lt. Dunn "reported various instances of what he considered to be police misconduct to the Louisiana Attorney General's Office, the FBI, the St. Landry District Attorney's Office, the Louisiana State Police, and the St. Landry Parish Sheriff's Office."  City SUMF ¶ 8.

**B.      Chief Fontenot, Lt. Young, and Officer Fontenot Retaliate Against Lt. Dunn**

For reporting that misconduct, the City—through its policymaker Chief Fontenot—swiftly retaliated against Lt. Dunn.  The retaliation took two forms.  First, Chief Fontenot stripped Lt. Dunn of desirable duties, which constituted actual demotions.  Dunn SOF ¶¶ 37, 58, 61, 65, 66.  Specifically, in May 2019, Chief Fontenot removed Lt. Dunn from narcotics investigations after learning that Lt. Dunn had reported misconduct to the Louisiana State Police.  *Id.* ¶ 58.  And in June 2020—just one day after learning that Lt. Dunn had reported misconduct to the St. Landry District Attorney's Office—Chief Fontenot "eliminated [EPD's] K-9 program," of which Lt. Dunn was the only member.  *Id.* ¶ 65; *see also* City SUMF ¶ 4.

Second, and in tandem with that misconduct, Chief Fontenot's repeated targeting of Lt. Dunn amounted to a constructive demotion.  Chief Fontenot placed Lt. Dunn on administrative leave. City SUMF ¶ 2.  He—alongside Lt. Young and Officer Fontenot—smeared Lt. Dunn within

EPD and beyond, making Lt. Dunn unemployable at other law enforcement agencies.  Dunn SOF ¶¶ 90–91.  They leveled threats at him and his dog.  *Id.* ¶ 62.  They spewed, and encouraged other EPD personnel to express, vile rhetoric about Lt. Dunn.  *Id.*  They instigated baseless investigations into him; indeed, they even coerced a civilian to falsely accuse Lt. Dunn of corruption.  *Id.* ¶¶ 68–78.  And, eventually, Chief Fontenot placed Lt. Dunn on the less desirable night shift—which was understaffed and, thus, made it "[v]ery, very dangerous" for Lt. Dunn and the Eunice community at large.  *Id.* ¶¶ 61, 81–86.

The objective was clear: "get rid of" Lt. Dunn by any means necessary.  *Id.* ¶¶ 63, 88 (quoting Thibodeaux Tr. 52:7–18, 409:8–410:2).  As one former EPD officer testified, "Chief Fontenot told me that he would do whatever it took to remove [Lt.] Dunn and get him to quit or be fired."  *Id.* ¶ 88 (quoting  Lee Tr. 39:1–11).  An EPD lieutenant testified, too, that "it was more important for Chief Fontenot to punish [Lt. Dunn] . . . than it was for him to protect the city of Eunice."  *Id.* (quoting Thibodeaux Tr. 145:20–24).

### C.    The Written Policies and Chief Fontenot's Retaliatory Custom

The City's written policies enabled Chief Fontenot's retaliation against Lt. Dunn.  To name just a few examples, the City maintains policies that (1) confer absolute "disciplinary authority" on the Chief of Police; (2) mandate "loyalty" to the Department; (3) prohibit EPD personnel from "publicly criticiz[ing] the Department"; and (4) forbid "conduct unbecoming an officer."  *Id.* ¶¶ 41–44.  That unbridled authority and the vaguely defined policies empowered Chief Fontenot to suppress free speech without any oversight.

Chief Fontenot likewise created a widespread retaliatory custom at EPD.  For years, Chief Fontenot retaliated against officers who dared to report misconduct at EPD.  *Id.* ¶¶ 45–51.  He fired some, demoted others, and when his appointing authority was taken away, he resorted to other, more insidious tactics.  *Id.* ¶¶ 49, 61–62.  He reassigned insubordinate officers to less

desirable duties, removed responsibilities, and altered their schedules—all in an effort to force them to resign. *Id.* ¶¶ 49, 61–62, 67–69. And, aside from Lt. Dunn, four current and former EPD officers faced Chief Fontenot's wrath because they reported EPD misconduct. *Id.* ¶¶ 47–50. First, Lt. Donnie Thibodeaux explained that Chief Fontenot demoted him and reassigned him to an unfavorable shift because of his service on the Civil Service Board (when the Board overturned several of Chief Fontenot's decisions). *Id.* ¶ 48. Second, Lt. Stephanie Myers explained that, after she reported misconduct, Chief Fontenot stripped her of her duties, denied her appropriate office space, and placed her on leave. *Id.* Third, Lt. Jeremy Ivory made comments perceived as critical of EPD and thereafter was demoted by Chief Fontenot. *Id.* And fourth, former Deputy Chief Varden Guillory testified that Chief Fontenot mistreated him because he refused to follow "illegal" orders. *Id.* ¶ 47.

Chief Fontenot's intent was to instill fear in subordinate EPD officers and thereby chill any dissent. And, empowered by the written unconstitutional policies, Chief Fontenot was able to achieve his goal: many EPD officers are "afraid" to report misconduct out of fear. *Id.* ¶¶ 45–51. Lt. Dunn refused to waver in the face of that retaliatory regime, and he suffered—and continues to suffer—the consequences as a result.

## LEGAL STANDARD

Summary judgment is only appropriate when the record shows "there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56). When the movant "bears the burden of proving the dispositive issue at trial, the moving party must come forward with evidence which would entitled it to a directed verdict if the evidence went uncontroverted at trial. *Conners v. Pohlmann*, 2021 WL 4862069, at *2 (E.D. La. Oct. 19, 2021) (quotation marks omitted) (quoting *Int'l Shortstop Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991)).

## ARGUMENT

### I.    LT. DUNN HAS PROVEN HIS *MONELL* CLAIM[3]

Section 1983 imposes "liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).  To prevail on this claim, Lt. Dunn must "show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

The undisputed evidence compels the conclusion that Lt. Dunn has done so.  He has proven that the City—through its policymaker Chief Fontenot—maintained various actionable policies: (1) suspect written policies that invite viewpoint-based discipline; (2) an ingrained pattern of unconstitutional violations; (3) actionable retaliatory decisions by a final policymaker for which the City is liable; (4) ratification of retaliatory conduct; and (5) deliberate indifference to the need for supervision.  *See Matthias v. Bingley*, 906 F.2d 1047, 1054 (5th Cir. 1990) (defining official policy in part as a "statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority); *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005) (affirming that a single decision by the final policymaker may trigger *Monell* liability; *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (articulating the ratification theory); *see also Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (discussing *Monell* deliberate

---

[3] The City's brief in support of its motion under Rule 56 often speaks in terms of alleged *pleading* deficiencies.  *See, e.g.*, Mot. at 2–3.  The Court should swiftly reject those arguments as procedurally improper.  Summary judgment tests the evidentiary record—not the adequacy of the pleadings.  *See* Fed. R. Civ. P. 56(a); 12(b)(6), 12(c); *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).  Moreover, the City has contemporaneously filed a motion challenging Plaintiff's pleadings, ECF No. 240–3, which fails for all the reasons discussed in Plaintiff's brief in opposition to that motion.

8

indifference theory). And the record evidence establishes beyond dispute that those policies were the moving force behind the violations of Lt. Dunn's free-speech rights.

The City argues that Lt. Dunn failed to prove (i) a municipal policy by unconstitutional written policies or "sufficiently numerous prior" constitutional violations, and (ii) an adverse employment action. Mot. at 4–12. Neither contention is persuasive.

**A.     Lt. Dunn Marshalled Ample Evidence to Show an Unconstitutional Policy Under Five Independent *Monell* Theories**

As an initial matter, the City nowhere contends that Lt. Dunn failed to establish *Monell* theories by ratification and deliberate indifference failure to supervise. Nor could it: as Lt. Dunn explained in his motion for summary judgment, undisputed evidence proves that Chief Fontenot—the City's policymaker for all matters related to EPD—ratified and failed to supervise widely known violations of Lt. Dunn's free-speech rights.[4] ECF No. 252-1 at 19–29. Instead, the City insists that Lt. Dunn cannot establish an unconstitutional policy or "sufficiently numerous prior incidents" to establish a custom. Mot. at 5.

1.     EPD's Suspect Written Policies

The City's written procedures are unconstitutional because they vest the Chief of Police with unbridled discretion to restrict protected speech. A municipality is liable under *Monell* if it has "caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Zarnow v. City of Wichita Falls*, 614 F.3d 161 (5th Cir. 2010) (citation omitted). "Unbridled discretion runs afoul of the First

---

[4] As Lt. Dunn explained in his motion for summary judgment, the record evidence establishes Lt. Dunn's entitlement to judgment on other *Monell* theories—including "ratification" and "deliberate indifference failure to supervise"—which the City does not contest in its motion. ECF No. 252-1 at 16–29. For that reason, and given the extensive dispositive motions briefing before the Court, Plaintiff does not—and need not—rehash those arguments here and instead expressly incorporates them by reference to his motion for summary judgment. *See id.*; *see also Owens v. La. State Univ.*, 709 F. Supp. 3d 219, 244 (M.D. La. 2023) (considering arguments "incorporate[d] by reference" in "another . . . brief before the Court").

Amendment because it risks self-censorship and creates proof problems in as-applied challenges." *Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 427 (5th Cir. 2020).

EPD's written procedural orders are marked by imprecision and elasticity, vesting the EPD chief with unchecked authority to investigate and punish dissent. *See* Hobbie Decl., Ex. 32 (Dunston Expert Report at 2). Specifically, the Department's provisions governing "Conduct Unbecoming an Officer," "Loyalty to the Department," "Social Media," and "Public Statements" are drafted in capacious terms, leaving critical terms undefined and unmoored from any objectively measurable standards. For instance, the conduct unbecoming an officer policy requires EPD personnel to "conduct themselves at all times, both on duty and off duty, in such a manner as to reflect most favorably on the Department." *See* Dunn SOF ¶¶ 42–44 (Eunice Police Department, Procedural Orders at 13). The loyalty policy prohibits EPD personnel from "publicly criticiz[ing] the Department, its policies, or other members or employees." *Id.* ¶ 43. The policies imbue the EPD chief with sweeping discretion to interpret, investigate, and impose discipline—without any meaningful oversight. *Id.* ¶¶ 41–44.

Policies of this sort do not merely regulate conduct; they chill it. As police chief and expert Mark Dunston observed, these structural deficiencies "set the foundation for retaliatory misuse of authority and systemic misconduct within the [Eunice Police] Department." *See* Hobbie Decl., Ex. 32 (Dunston Expert Report at 2). By blurring the line between misconduct and protected activity, they deter officers from reporting wrongdoing and discourage candor within the ranks. Dunn SOF ¶ 45 (quoting Thibodeaux Tr. 28:2–25, 331:19–22). And that is precisely what happened here.

This unfettered authority to take disciplinary action had real effects on Lt. Dunn. For instance, after Lt. Dunn reported an unlawful arrest to the Louisiana State Police, Chief Fontenot

removed him from narcotics investigations. *See id.* ¶ 58. (Lt. Dunn Tr. 198:20–200:12); *see also id.* ¶¶ 45, 57 (quoting Thibodeaux Tr. 141:23–142:8) ("right after every time [Lt. Dunn] would [report Chief Fontenot's actions] Chief Fontenot would retaliate, "usually within a week""). Likewise, Chief Fontenot placed Lt. Dunn on administrative leave for making a Facebook post about crime in his neighborhood. *See id.* ¶¶ 59–61. Furthermore, the day after learning that Lt. Dunn reported EPD misconduct to the St. Landry Parish District Attorney's Office, Chief Fontenot eliminated the canine program altogether to punish Lt. Dunn. *See id.* ¶¶ 65–67. Chief Fontenot placed Lt. Dunn on the less desirable night shift, understaffing him during dangerous shifts, which placed his life at risk. *Id.* ¶ 61; *see also id.* ¶ 86 (Darbonne Tr. 28:3-9) (short-staffed shifts are "[v]ery, very dangerous").

The City has no response to this evidence. Instead, it asserts that Lt. Dunn's expert "failed" to identify any unconstitutional policy or custom. Mot. at 8. But, for one thing, the opposite is true: Mr. Dunston identified, with specificity, the policy features and structural mechanisms that enable unconstitutional retaliation. *See* Hobbie Decl., Ex. 32 (Dunston Expert Report at 2–3). And, for another thing, the City cannot both fault Chief Dunston for drawing too many legal conclusions and, at the same time, contend that Mr. Dunston *didn't form enough* legal conclusions. *See* Mot. at 8. The City cannot have it both ways.[5]

---

[5] The City makes passing reference to Lt. Dunn's apparent failure to prove that Chief Fontenot was "motivated by an[] unconstitutional reason." Mot. at 8. The Court should reject that contention for at least two reasons. First, the City cites no case law for its manufactured requirement that a plaintiff needs to show an unconstitutional motive. That is not the law. Second, the circumstantial and direct evidence leaves no doubt that Chief Fontenot was motivated to retaliate against Lt. Dunn because of his protected speech. The timing was suspect: Chief Fontenot retaliated against Lt. Dunn "usually within a week" of his reporting. Dunn SOF ¶¶ 45, 57. And Chief Fontenot openly expressed his desire to "get rid of" Lt. Dunn. *Id.* ¶ 88. Chief Fontenot admitted that he found Lt. Dunn's "constant[]" reporting "to the mayor, the [city council], and the Civil Service Board" to be "a problem"; notably, the *reporting*, and not the *misconduct*, was Chief Fontenot's focus. *Id.* ¶ 46. Chief Fontenot even told former EPD officer Jonathan Lee that "he would do whatever it took to remove [Lt.] Dunn and get him to quit or be fired." *Id.* ¶ 88. Chief Fontenot, moreover, discussed with Officer Fontenot "shutting [Lt. Dunn] up," meaning "killing him," and asked Officer

11

In short, the EPD policies on their face forbid EPD personnel from publicly reporting EPD misconduct, and they grant limitless authority to EPD's Chief to investigate and punish anyone who does so. Chief Fontenot wielded that policies to retaliate against Lt. Dunn. That constitutionally suspect regime directly caused violations of Lt. Dunn's, and other EPD personnel's free-speech rights. The City is liable under *Monell*.[6]

### 2. Chief Fontenot Perpetrated a Widespread Custom of Retaliation Against EPD Officers

The record evidence also demonstrates a widespread custom or practice of retaliation for protected speech. In *Murphy v. City of Ville Platte*, the court held that a policymaker's "condon[ing] and engag[ing] in multiple unlawful activities . . . for over a year" and a "widespread practice of retaliating against individuals for engaging in lawful and constitutionally protected activities" establishes a municipal custom of retaliation. 2018 WL 6920357, at *9 (W.D. La. Dec. 12, 2018). That is what happened here.

For years, Chief Fontenot retaliated against officers who dared to speak out about misconduct at EPD. Dunn SOF ¶¶ 45–50. He fired some, demoted others, and when his appointing authority was taken away, he resorted to more insidious tactics. *See id*. ¶¶ 45–50. 60, 61, 65–67. He reassigned insubordinate officers to less desirable duties, removed responsibilities, and altered their schedules—all in an effort to force them to resign. *See id.* ¶¶ 47–49, 61. Chief Fontenot's motive was clear: he wanted to crush any dissent.

The City contends that Lt. Dunn has not established "sufficiently numerous prior incidents to survive a *Monell* claim at the motion for summary judgment stage." Mot. at 5. And, essentially

---

Fontenot to "set [Lt. Dunn] up with something." *Id.* ¶ 90. The City cannot seriously dispute the mountain of evidence of Chief Fontenot's motive.

[6] The City's motion does not challenge causation—*i.e.*, that the City's policies were the "moving force" behind Lt. Dunn's constitutional harms—and, thus, Lt. Dunn need not address it. *But see* ECF No. 252-1 at 21.

acknowledging that Chief Fontenot targeted certain officers, the City says that the record evidence establishes that Chief Fontenot's targeting officers amounted to "incorrect or ill-advised personnel decisions" and favoritism. *Id.* at 7. But that blatantly misconstrues the record evidence.

Aside from Lt. Dunn, four current and former EPD officers testified that they faced Chief Fontenot's retaliation because of their reporting, or rectifying, misconduct. First, Chief Fontenot demoted and reassigned Lt. Thibodeaux to an unfavorable shift because of his service on the Civil Service Board (when the Board overturned several of Chief Fontenot's decisions). *See* Dunn SOF ¶ 48. Second, after Lt. Stephanie Myers reported misconduct, Chief Fontenot stripped her of duties, denied her appropriate office space, and placed her on leave. *Id.* Third, Chief Fontenot demoted Lt. Jeremy Ivory after he made comments perceived as critical of EPD. *Id.* And fourth, Chief Fontenot mistreated former Deputy Chief Varden Guillory because he refused to follow "illegal" orders. *Id.* ¶ 47. There is not a shred of evidence in the record that shows these acts were anything other than retaliatory.

Nor can this set of decisions be chalked up to poor management. Officers knew that retaliation for reporting misconduct was not happenstance; it was expected. *Id.* ¶ 45. Indeed, Chief Fontenot stated that "[a]nybody appealing" his decisions "need[ed] to die." *Id.* ¶ 46. That evidence reflects an unconstitutional *retaliatory* pattern—not a pattern of ill-advised personnel decisions. *Bennett v. Serpas*, 2017 WL 2778109, at *2 (E.D. La. June 26, 2017) ("[P]attern of similar violations" demonstrates municipal "custom or policy").

## B.    Lt. Dunn Suffered Several Actionable Adverse Employment Actions

As for Lt. Dunn's constitutional harm, the City does not contest the veracity of Lt. Dunn's allegations; rather, it asserts that the punishment Lt. Dunn faced does not rise to the level of an adverse employment action. Mot. at 8–12. "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Breaux v. City of Garland*, 205

13

F.3d 150, 157 (5th Cir. 2000).  Moreover, it is "well established" in the Fifth Circuit that a transfer that amounts to a demotion is an actionable adverse employment action.  *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).  The "transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement."  *Id.*

The record here reflects multiple such actions: first, termination of the canine program for which Lt. Dunn was independently responsible; second, stripping Lt. Dunn of narcotics investigative duties; and third, a constructive demotion by falsely accusing Lt. Dunn of corruption, placing him on leave, and putting him on dangerous, understaffed shifts, which placed his life at risk.  Dunn SOF ¶¶ 1, 4, 37, 58, 61, 65, 66, 86, 90.

None of the City's arguments to the contrary passes muster.  Mot. at 8–11.  First, the City claims that Lt. Dunn suffered no adverse action because Chief Fontenot "discontinued the entire" canine program.  *Id.* at 10.  But that is misleading.  Lt. Dunn was the EPD's sole canine handler.  Ending the program did not broadly reorganize a program, it affected one officer: Lt. Dunn.  *See* Dunn SOF ¶¶ 4, 66 (Thibodeaux Tr. 194:5–6, 194:22–197:4).  Moreover, the record shows Chief Fontenot's motive for terminating the canine program was to force Lt. Dunn out.  *See* Dunn SOF ¶ 63 (Thibodeaux Tr. 51:25–52:20; 409:8–410:2); ("[Lt.] Young told [Chief Fontenot] if he wanted to get rid of [Lt.] Dunn, that's the way to do it."); *see also id.* ¶¶ 61, 67, 88.  In doing so, Chief Fontenot deprived Lt. Dunn of desirable duties, tangible benefits, and meaningful avenues for advancement.  *See id.* ¶¶ 37, 61, 66, 86.  He lost substantial responsibilities, a recognized position of authority, and his assigned canine.  *See id* ¶¶ 37, 61, 66.  That is a quintessential demotion under settled Fifth Circuit law.  *See Sharp*, 164 F.3d at 933

14

Second, the City asserts that Lt. Dunn's removal from narcotics duties cannot be an adverse employment action because Lt. Dunn never formally held the "narcotics officer" title.  That Lt. Dunn did not hold the formal title of "narcotics officer" is of no moment: Fifth Circuit case law is clear that a demotion "need not result in a decrease in . . . title," *id.*, and the mere "loss of job responsibilities can in some circumstances constitute an adverse employment action," *Browning v. Sw. Research Inst.*, 288 F. App'x 170, 178 (5th Cir. 2008).  The City does not dispute that Lt. Dunn carried out narcotics duties at EPD.  *See* Mot. at 10; City SUMF ¶ 5; *see also* Dunn SOF ¶ 37 (Lt. Dunn Tr. 120:8–13; 198:20–199:23; 407:21–409:23) (testifying that he supervised and assisted narcotics-related investigations); *id.* (Chief Fontenot Tr. 226:20–21) (admitting Lt. Dunn "assisted with some narcotics investigations").  The removal of those duties was an actual demotion under *Sharp* and *Browning*.

Third, the City claims that placing Lt. Dunn on administrative leave and coercing a civilian to falsely accuse Lt. Dunn of corruption could not amount to an adverse employment action.[7]  Mot. at 9, 11.  The City is wrong: those acts, among others, form the basis of a constructive demotion. A constructive demotion occurs when an employer or coworkers make work conditions "so intolerable" that an employee is effectively demoted.  *Sharp*, 164 F.3d at 934.  In *Sharp*, the Fifth Circuit affirmed that an officer's voluntary transfer to a less desirable post constituted a "constructive demotion," where members of her unit retaliated against her for violating her police

---

[7] The City appears to separately argue that Lt. Dunn cannot rely at all on the Joshua Dupre's sworn testimony that Officer Fontenot coerced him to falsely accuse Lt. Dunn of corruption because, according to the City, Mr. Dupre provided a prior handwritten note that contradicts his later testimony.  This contention fails for several reasons, the most obvious is that Mr. Dupre testified—under oath after waiving his Fifth Amendment rights—that he was coerced by Officer Fontenot to falsely accuse Lt. Dunn of corruption. Dunn SOF ¶¶ 76–78.  Moreover, the City's desired inference would require the Court to draw inferences in favor of the movant rather than the nonmovant, thereby turning the Rule 56 summary judgment standard on its head.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (holding "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor").

department's "code of silence." *Id.* at 935. The retaliatory acts included "a pattern of social ostracism and professional disapprobation" and "misdeeds such as tampering with [the plaintiff's equipment] and failing to come quickly to her aid after her car accident," which "caused her reasonably to fear for her safety if she stayed in" her unit. *Id.* at 931, 934.

Chief Fontenot used the same playbook here to try to force Lt. Dunn to resign. Chief Fontenot (1) reduced Lt. Dunn's duties and responsibilities, (2) placed Lt. Dunn on administrative leave to stigmatize him, (3) permitted and ratified baseless investigations into him, (4) put Lt. Dunn in harm's way by placing him on short-staffed night shifts, and (5) tolerated open attacks on Lt. Dunn's character and threats of violence against him. Dunn SOF ¶¶ 1, 49, 60–86. The persistent attacks on Lt. Dunn quickly spread around the law enforcement community, which had the predictable effect of deepening the harm they caused Lt. Dunn. *Id.* at 88–91. As a result of Chief Fontenot's conduct, fellow officers inside EPD and beyond distrusted Lt. Dunn. *Id.* Subordinate officers did not respect or heed his commands. *Id.* Other law enforcement agencies refused to work with him. *Id.* ¶¶ 29, 91. The existence of sham investigations in his file made him unemployable by other law enforcement agencies. *Id.* The overt retaliation was to such a degree that officers and civilians alike stated that they believed Lt. Dunn's safety was at risk. *Id.* ¶ 86, 90. This is precisely the type of constructive demotion contemplated in *Sharp*, 164 F.3d at 934.[8]

## II.    A REASONABLE JURY COULD FIND THAT THE CITY VIOLATED ARTICLE 1 § 7 OF THE LOUISIANA STATE CONSTITUTION (COUNT FIVE AGAINST THE CITY OF EUNICE)

The City's motion on Lt. Dunn's Louisiana Whistleblower claim fares no better. The Louisiana Whistleblower Statute prohibits reprisal against an employee who, in good faith and after advising the employer of the violation, discloses or threatens to disclose "a workplace act or

---

[8] For similar reasons, Lt. Dunn has demonstrated that he experienced a constructive discharge. *See* § I.A.2 to Plaintiff's Brief in Opposition to Ryan Young's Motion for Summary Judgment.

practice that is in violation of state law." La. R.S. 23:967(A)(1). To prevail, a plaintiff must prove (1) an actual violation of Louisiana law, (2) that he advised the employer of the violation, (3) that he disclosed or threatened to disclose it, (4) that he suffered a reprisal, and (5) that the reprisal was causally connected to the disclosure. *Haire v. Bd. of Supervisors of La. State Univ.*, 719 F.3d 356, 367 (5th Cir. 2013).

The City does not challenge the second, third, and fifth elements—that Lt. Dunn advised the City of these violations, that he disclosed them to outside authorities, and causation. Instead, it presents myriad legally flawed and unfounded arguments about Lt. Dunn's burden of proving an "actual violation" of state law and "reprisals." Mot. at 12–14. The Court should swiftly reject the City's baseless contentions.

At the outset, the Court should deny the City's apparent motion for summary judgment on Lt. Dunn's Whistleblower claim because it impermissibly relies entirely on *the pleadings*. *See id.* Summary judgment, of course, centers on the evidence mustered during discovery—not the pleadings. That flaw, standing alone, dooms the City's motion on Lt. Dunn's Whistleblower claim. *See Am. Mfrs. v. Colbert*, 48 F.3d 530, at *2 (5th Cir. 1995) ("[T]he moving party cannot meet its initial summary judgment burden merely by denying the allegations in the opponent's complaint."); *Lou v. Lopinto*, 2023 WL 3976132, at *5 (E.D. La. June 13, 2023) (similar).

In any event, the City's arguments fail because they misconstrue the Louisiana Whistleblower Statute's requirements regarding "actual violation" of Louisiana law and "reprisals." Mot. at 12–15. Under the statute as written, neither argument supports dismissal at summary judgment. *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 612-13 (5th Cir. 2009).

17

A.    The Record Provides Sufficient Evidence for a Reasonable Jury to Find that Lt. Dunn Reported Actual Violations of Louisiana State Law

The Louisiana Whistleblower Statute prohibits reprisal against an employee who, in good faith and after advising the employer of the violation, discloses or threatens to disclose "a workplace act or practice that is in violation of state law."  La. R.S. 23:967(A)(1).  To prevail, a plaintiff must establish that he reported an "actual violation" of state law; however, the reported violation need not be followed by a criminal prosecution or other finding of wrongdoing.  *Odeh v. City of Baton Rouge/Par. of E. Baton Rouge*, 191 F. Supp. 3d 623, 628 (M.D. La. 2016); *Gautreau v. EnLink Midstream Operating GP, LLC*, 342 So.3d 939, 947 (La. Ct. App. 2022).

Lt. Dunn documented and reported specific violations of state law.  The record shows that he reported an attempt to facilitate an inmate's escape, in violation of Louisiana's simple and aggravated escape statute, La. R.S. 14:110.  *See* Dunn SOF ¶ 53.  Lt. Dunn likewise reported excessive force against restrained detainees, in violation of La. R.S. 14:19.  *See id.* ¶ 54.  He reported the mishandling of rape evidence in violation of statutory investigative standards, in violation of La. R.S. 130.1.  And he reported coercive investigative tactics and extortion, in violation of Article 1 Section 5 of the Louisiana Constitution and La. R.S. 14:66.  *See id.* ¶¶ 56, 76.[9]  Each act constitutes a violation of Louisiana state law.

---

[9] The City's assertion that Lt. Dunn "must also show that it is the City that committed an actual violation of state law, not simply its employees," misstates La. R.S. 23:967.  Mot. at 13–14.  To be sure, courts have rejected whistleblower claims where the alleged violation involved wholly unauthorized rogue conduct that could not be attributed to the employer.  *See Kyger v. Lowe's Home Ctrs., Inc.*, 2005 WL 78944, at *3 (E.D. La. Jan. 11, 2005); *Richardson v. Axion Logistics, LLC*, 2016 WL 2595105, at *5 (M.D. La. May 4, 2016).  But those cases do not require the employer itself to be the direct statutory violator where employees commit unlawful acts in the course and scope of their employment and under supervisory authority.  And "[t]he bad acts of a co-employee may be attributed to the employer under the LWS if the employer condones or authorizes them."  *Zelenak v. Beauregard Elec. Coop. Inc.*, 2025 WL 2025177, at *2 (W.D. La. July 18, 2025).  Here, the reported violations allegedly occurred within EPD and were carried out by sworn officers acting in their official capacities with the knowledge of EPD's leadership.  Moreover, the record evidence establishes that Chief Fontenot condoned and authorized the actions.  The statute does not allow the City to disclaim responsibility for such conduct.  *See Murphy*, 2018 WL 6920357, at *9 (denying motion to dismiss where complaint "allege[d] Chief . . . condoned and engaged in *multiple* unlawful activities").

The City makes much of the lack of any "finding of wrongdoing" by the agencies to whom Lt. Dunn reported the misconduct.  Mot. at 14.  But the City cites no case law for this invented requirement—that is because Louisiana courts have never recognized such a requirement.  Indeed, courts within this circuit routinely find issues of fact precluding summary judgment on a Louisiana Whistleblower claim without any previous adjudication of wrongdoing.  *Odeh*, 191 F. Supp. 3d at 629 (fact issue precludes summary judgment even without prior adjudication of wrongdoing).

Lt. Dunn has identified concrete violations tied to specific Louisiana laws and supported them with testimony, recordings, documentation, and corroborating witnesses.  At minimum, this evidence creates a genuine dispute of material fact as to whether Louisiana law was violated.  Summary judgment on the "actual violation" element is therefore improper.

**B.      The Record Contains Evidence of Material Reprisals Within the Meaning of the Whistleblower Statute**

The City's contention that Lt. Dunn did not suffer a "reprisal" under La. R.S. 23:967 fails for the same reasons its adverse-employment-action argument fails.  *See supra* § I.B.  The City concedes that the reprisal requirement under the Louisiana Whistleblower Statute overlaps with the adverse-employment-action requirement discussed *supra* § I.B.  For good reason: courts within this Circuit hold that the Louisiana Whistleblower Statute's "reprisal" requirement is similar to the adverse-employment-action requirement underlying retaliation claims.  *See Smith v. AT&T Sols., Inc.*, 90 F. App'x 718 (5th Cir. 2004) (holding that "the appropriate framework for analyzing a retaliation claim under the Louisiana whistleblower statute is the same as that applied in Title VII retaliation cases"); *Johnson v. Hosp. Corp. of Am.*, 767 F. Supp. 2d 678 (W.D. La. 2011) (analyzing "reprisal" under the Louisiana Whistleblower Statute using Title VII retaliation standards).  Thus, for the same reasons discussed above, *see supra* § I.B, Lt. Dunn has faced actionable reprisals.

19

## **CONCLUSION**

For the foregoing reasons, Lt. Dunn respectfully request that the Court deny the City's

Motion for Summary Judgment on Counts Five and Nine.


Dated; March 17, 2026                                        Respectfully submitted,

By: */s/ Norman M. Hobbie Jr.*                    By: */s/ Malcolm C. Lloyd*
Francesca E. Brody (*pro hac vice*)              Malcolm C. Lloyd (LA Bar No. 41573)
Peter J. Mardian (*pro hac vice*)                 Charles Andrew Perry (LA Bar No. 40906)
Cassandra Liu (*pro hac vice*)                      Nora Ahmed (*pro hac vice*)
James R. Horner (*pro hac vice*)                 ACLU FOUNDATION OF LOUISIANA
Yu Kyung Kim (*pro hac vice*)                    1340 Poydras Street, Suite 2160
Norman M. Hobbie Jr. (*pro hac vice)*          New Orleans, Louisiana 70112
Alexandra Bieler (*pro hac vice*)                  Telephone: (504) 522-0628
SIDLEY AUSTIN LLP
787 Seventh Avenue                                    Hector Pagan (*pro hac vice*)
New York, New York 10019                        SIDLEY AUSTIN LLP
Telephone: (212) 839-5300                          60 State Street
Fax:  (212) 839-5599                                   Boston, Massachusetts 02109
                                                              Telephone: (617) 223-0300
Amit Bhatla (*pro hac vice*)                        Fax: (617) 223-0301
SIDLEY AUSTIN LLP
1501 K Street, N.W
Washington, DC 20005
Telephone: (202) 736-8000
Fax: (202) 736-8711

*Attorneys for Plaintiff Michael Dunn*

20

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2026, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Norman M. Hobbie Jr.
Norman M. Hobbie Jr.