**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **MICHAEL DUNN** | **CIV. A. NO.: 6:21-CV-01535** |
| **VERSUS** | |
| | **JUDGE ROBERT R. SUMMERHAYS** |
| **VICTOR FONTENOT, RYAN YOUNG,** | |
| **and CITY OF EUNICE** | **MAGISTRATE JUDGE DAVID J. AYO** |

**LT. RYAN YOUNG'S POST-ARGUMENT BRIEF**

 **NOW COMES** Lt. Ryan Young ("Young"), who respectfully submits the following post-oral argument briefing, pursuant to the instruction of this Honorable Court, specifically responding to the questions posed by the Court for oral argument.

**I. QUESTION 1: DUNN HAS NOT SUFFERED AN ADVERSE EMPLOYMENT ACTION; THERE IS NO CAUSAL CONNECTION BETWEEN YOUNG AND ANY ALLEGED ADVERSE EMPLOYMENT ACTION**

 Plaintiff argues the following alleged actions constituted an adverse employment action: (1) demotion from canine handler; (2) retaliatory transfers to understaffed and more dangerous night shifts; (3) effective demotion; (4) constructive demotion or discharge.[1] However, these fail as a matter of law because none was caused by any action of Ryan Young and because these allegations do not constitute an adverse employment action.

 **1. Termination of the K-9 Program**

 There exists no causal link between any action alleged against Young and the termination of the program. Plaintiff's PowerPoint presentation regarding causation includes three citations.[2] First, he cites a joke made by Young to poke fun at Victor Fontenot.[3] Second, he cites Donnie

---

[1] ECF No. 326, p. 3.
[2] ECF No. 326, pp. 16-17.
[3] ECF No. 326, p. 16 (citing ECF No. 252-1, pp. 16-17) (citing ECF No. 252-3, p. 307) ("It was just a joke to tease Victor").

Thibodeaux's inadmissible hearsay-within-hearsay recollection of a statement by an unknown declarant.[4] Third, Plaintiff cites Joshua Dupre's probation revocation hearing, which only mentions Young to the extent that he is "beefing with Dunn".[5] A joke, a hearsay-within-hearsay statement of an unknown declarant, and a statement not implicating Young are insufficient to show the "but-for" causal link to Young for any of the four alleged adverse employment actions.[6]

Additionally, as a separate basis for dismissal and for the reasons more thoroughly set forth both in Defendants' briefs and at oral argument, Plaintiff entered into a consent judgment[7] which acted to waive any subsequent cause of action regarding the termination of the K-9 program.[8]

### 2. Retaliatory Transfers to Night Shifts

Plaintiff alleges Chief Fontenot placed Plaintiff on understaffed, dangerous night shifts.[9] However, Plaintiff fails to show how Young caused these shift assignments. Plaintiff makes no allegation Young was responsible for any shift or staffing allocations. Plaintiff's testimony only reinforces this, testifying that Young is the same rank as Plaintiff and Young has no ability to make changes as to Plaintiff's role.[10] A lack of causal link is fatal to Plaintiff's claim against Young.[11]

### 3. Effective Demotion

Plaintiff alleges he suffered an effective demotion via decreased duties, citing *Thompson*

---

[4] ECF No. 326, p. 16 (citing ECF No. 252-1, pp. 16-17) (citing ECF No. 252-3, p. 307) (citing ECF No. 252-3, pp. 153, 173) ("I don't remember who said it" and later confirms he did not hear Young state the hearsay statement).

[5] ECF No. 252-3, p. 326. *See also* ECF No. 252-1, p. 18 (Plaintiff interpreting Dupre's statement to mean only Victor Fontenot was threatening).

[6] *See Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018) ("individual liability for a government official who violates constitutional rights, including First Amendment ones, turns on traditional tort principles of 'but-for' causation").

[7] *See* ECF No. 237-5; ECF No. 267-16.

[8] *Matter of W. Texas Mktg. Corp.*, 12 F.3d 497, 500 (5th Cir. 1994) (citing *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169 (5th Cir. 1992)) ("this court has long recognized that a consent judgment is a judgment on the merits, and is normally given the finality accorded under the rules of claim preclusion.") (parenthetical modified).

[9] ECF No. 326, pp. 5-6.

[10] *See* ECF No. 237-3, p. 32 (Dunn Supplemental Deposition, p. 123). *See also* ECF No. 237-4, p. 10 (Dunn Original Deposition, p. 34) (stating the chief sets his schedule).

[11] *See Sims supra.*

*v. City of Waco, Texas*, 764 F.3d 500 (5th Cir. 2014), *abrogated by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023), in support of this claim.[12] But this fails because *Thompson* is a Title VII and 42 U.S.C. § 1981 discrimination case,[13] which is inapplicable in the context of First Amendment retaliation. The Fifth Circuit has construed the "adverse employment decision" narrowly in the First Amendment retaliation context under *Breaux*[14] and has rejected the broader *Burlington Northern* formulation.[15] Additionally, Plaintiff raises no facts supporting the contention that Young caused a decrease in Plaintiff's duties.[16] For these reasons, this claim fails.

### 4. Constructive Demotion

Plaintiff did not suffer a constructive demotion or discharge.[17] Plaintiff defines constructive demotion as "A pattern of 'social ostracism,' 'professional disapprobation,' and threat[s to] physical safety'".[18] This definition is incorrect. Instead, a constructive demotion necessarily requires a *voluntary* transfer, that was made under conditions sufficient to be perceived as an *involuntary* transfer. Plaintiff's definition is a facially inaccurate reading of *Sharp*, is inconsistent with the Fifth Circuit's interpretation of *Sharp*, and is inconsistent with the *Breaux* actions.

First, the *Sharp* court opens its analysis stating "an adverse employment action can include a transfer, because it may serve as a demotion", followed by a multipage breakdown of the history of Fifth Circuit transfer law.[19] Before *Sharp*, it was already established that an *involuntary* transfer

---

[12] ECF No. 326, p. 7.

[13] "'The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims'". *Brenda Brenyah v. Columbia Hospital Corporation of Bay Area*, 2026 WL 2023814 (5th Cir. 2026) (quoting *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)).

[14] *Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000).

[15] *Lowery v. Mills*, 157 F.4th 729, 743 (5th Cir. 2025).

[16] *See Sims supra.*

[17] Under the jurisprudence, constructive demotion and constructive discharge are two separate claims. Constructive demotion occurs when a plaintiff requests a transfer due to intolerable workplace conditions. *See e.g. Sharp v. City of Houston*, 164 F.3d 923 (5th Cir. 1999). Constructive discharge occurs when a plaintiff resigns due to intolerable workplace conditions. *See e.g. Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998).

[18] ECF No. 326, p. 9 (citing *Sharp*, 164 F.3d at 931.

[19] *Sharp,* 164 F.3d at 933-34.

constitutes an adverse employment action if the transfer was sufficiently punitive.[20] The purpose of *Sharp* was to determine if this type of *voluntary* transfer constitutes an adverse employment action. Ultimately, the court narrowly concluded a voluntary transfer was actionable:

> The jury could have found that **the transfer**, albeit at Sharp's request, was a constructive demotion, the involuntary result of conditions so intolerable that a reasonable person would feel compelled to leave, and that **the transfer constituted a non-trivial adverse employment action**.[21]

The language of *Sharp* is clear: a constructive demotion requires a voluntary transfer.

Second, the Fifth Circuit interprets *Sharp* as requiring a transfer. The *Breaux* court reasons:

> The court held that in *Sharp* the plaintiff was constructively demoted ... because the defendants created an intolerable situation causing her to **transfer** to a less desirable position. . . . Since [the *Breaux* plaintiffs] still have their jobs with the Department and have **neither been demoted nor transferred** to less desirable positions, they have failed to show that the Defendants' actions amounted to a constructive or actual adverse employment action.[22]

This reading is not exclusive to *Breaux*, and at least a dozen other Fifth Circuit cases interpret *Sharp* as requiring a transfer.[23]

Third, Plaintiff's definition of constructive demotion is inconsistent with the *Breaux* list, which clarified adverse employment actions post-*Sharp*.[24] *Breaux* also explicitly rejects the theory

---

[20] *See e.g. Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992) (a transfer from elite mounted patrol to a teaching post at the police academy was effectively a demotion, thus an adverse employment action).

[21] *Sharp,* 164 F.3d at 934 (citation modified).

[22] *Breaux* 205 F.3d at 160-61 (citation modified).

[23] *See e.g. Colson v. Grohman*, 174 F.3d 498, 514 (5th Cir. 1999) (in First Amendment retaliation context); *Goudeau v. E. Baton Rouge Par. Sch. Bd.*, 540 F. App'x 429 (5th Cir. 2013) (in First Amendment retaliation context); *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 420 (5th Cir. 2018) (Dennis, J., concurring) (in First Amendment retaliation context); *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014), *abrogated by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) (in Title VII context); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 n. 7 (5th Cir. 2016) (in Title VII context); *Alvarado v. Texas Rangers*, 492 F.3d 605, 612-13 (5th Cir. 2007), *abrogated by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) (in Title VII context); *Greene v. DaimlerChrysler Servs. of N. Am.*, 128 F. App'x 353, 357 (5th Cir. 2005) (in Title VII context); *Pickens v. Shell Tech. Ventures Inc.*, 118 F. App'x 842, 848 (5th Cir. 2004) (in Title VII context); *Weidinger v. Flooring Servs. Inc.*, 1999 WL 236038, *4 (5th Cir. 1999) (in Title VII context); *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040 (5th Cir. Oct. 8, 2024) (in gender discrimination context); *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 394 (5th Cir. 2002) (in ADEA context); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 770 (5th Cir. 2001) (in FMLA context).

[24] *Breaux*, 205 F.3d at 157 (limiting adverse employment actions to "discharges, demotions, refusals to hire, refusals

that the aggregation of actions constituting a "'vengeful vendetta'" is actionable if the Plaintiff remains with their employer and is not transferred to a less desirable position.[25]

When reading *Sharp* as the Fifth Circuit does—necessarily requiring a voluntary transfer—Plaintiff's claim fails because he has not requested a transfer. Allegations regarding workplace conditions are insufficient, as a matter of law, without a voluntary transfer.[26] Accordingly, his claim for constructive demotion fails.

Plaintiff also alternatively raises constructive discharge. A constructive discharge occurs when a Plaintiff resigns due to intolerable workplace conditions.[27] Here, Plaintiff has not resigned, and thus constructive discharge is inapplicable.

Lastly, even if Plaintiff's definition were correct, he raises no facts supporting the claim that Young created workplace conditions so intolerable that it required him to transfer or resign. The lack of causal link between Young and constructive demotion/discharge is fatal for his claim.[28]

## II. QUESTIONS #2 AND #4: PLAINTIFF DOES NOT HAVE ARTICLE III STANDING

In order to maintain Article III standing, the Plaintiff must demonstrate (1) injury; (2) causation; (3) redressability.[29] As the party invoking federal jurisdiction, the Plaintiff bears the burden of establishing each of these elements.[30] Here, Plaintiff fails to meet all three elements.

### (1) Injury

---

to promote, and reprimands. Transfers can constitute adverse employment actions if they are sufficiently punitive, or if the new job is markedly less prestigious and less interesting than the old one.").

[25] *Breaux* 205 F.3d at 160-61.

[26] Plaintiff's allegations regarding involuntary transfer are briefed above in section (2).

[27] *Green v. Brennan,* 578 U.S. 547, 555 (2016) ("A claim of constructive discharge therefore has two basic elements. A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. But he must also show that he actually resigned.") (citation modified). *See Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748 (5th Cir. 1986) (in First Amendment retaliation context); *Caldwell v. Lozano*, 689 F. App'x 315 (5th Cir. 2017) (same).

[28] *See Sims supra.* ("individual liability for a government official who violates constitutional rights, including First Amendment ones, turns on traditional tort principles of 'but-for' causation").

[29] *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citation modified).

[30] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

First, Plaintiff fails to meet element (1), injury, because there is not a substantial likelihood he will suffer injury in the future. In *Bauer v. Texas*, the Fifth Circuit stated the following:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a **substantial likelihood that he will suffer injury in the future** (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). . . . Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury. **Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.** *Lyons*, 461 U.S. at 103 (quoting *O'Shea v. Littleton*, 414 U.S. 488 (1974)).[31]

The Supreme Court has "withheld relief in equity even when recognizing that comparable facts would create a cause of action for damages."[32]

Here, Plaintiff is not suffering continuing, present adverse effects from an adverse employment action. None of Plaintiff's four alleged adverse employment actions, even if established, are actively ongoing or causing present adverse effects. Regarding the K-9, Plaintiff was reinstated as a K-9 officer in spring of 2025.[33] Regarding his shift, Plaintiff testified that he is presently on a rotating shift schedule—equally working both days and nights,[34] and testified that staffing issues have been resolved since Chief LeBouef assumed office.[35] Effective demotion is not a recognized injury in this circuit under First Amendment retaliation and § 1983 claims, and Young is not responsible for Plaintiff's shift schedule.[36] Constructive demotion/discharge is inapplicable as Plaintiff has not requested a transfer nor has he resigned, and makes no allegations that Young is actively causing an intolerable workplace.

---

[31] *Bauer*, 341 F.3d at 358 (citation modified).
[32] *O'Shea*, 414 U.S. at 502 (citing *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951)).
[33] ECF No. 237-3, p. 3.
[34] See ECF No. 237-3, p. 4.
[35] *Id.* at p. 63.
[36] *See* ECF No. 237-3, p. 32 (Dunn Supplemental Deposition, p. 123). *See also* ECF No. 237-4, p. 10 (Dunn Original Deposition, p. 34) (stating the chief sets his schedule).

Plaintiff alleges his ongoing harm consists of (1) deprivation of duties, (2) professional and reputational harm, and (3) chilled speech.[37] But these too are insufficient. Any ongoing deprivation of duties would be caused by Chief LeBeauf, who is not named in this lawsuit. Reputational harm is not actionable under First Amendment retaliation.[38] Chilling is also inadequate because litigants "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending". [39] "Because allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm, the plaintiffs in Laird—and [the Plaintiff] here—lack standing."[40]

Likewise, there is not a substantial likelihood he will suffer injury in the future. There is no indication of any "real and immediate" unconstitutional action by Young. Additionally, Chief Fontenot and Victor Fontenot no longer work at EPD, which eliminates the possibility of a civil conspiracy. Because there is no continuing, present adverse effect, nor a substantial likelihood of future injury, Plaintiff has failed to show the injury-in-fact element of standing. He therefore does not have Article III standing for this lawsuit.

### (2) Causation

Second, even if *arguendo,* there were any continuous and present adverse effects, Plaintiff cannot show sufficient causation by any Defendant. "There must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."[41] As analyzed in part I of this brief, Plaintiff fails to show a causal link between his

---

[37] ECF No. 326, p. 20.
[38] "Statements by a public official that place a stigma on an individual's reputation are not actionable." *Culbertson*, 790 F.3d at 626 (citing *Paul v. Davis*, 424 U.S. 693, 710-11 (1976)).
[39] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).
[40] *Id.* at p. 418 (citation modified).
[41] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified).

alleged harm and any action by Young. The only allegations against Young are his joke at the expense of Victor Fontenot,[42] Donnie Thibodeaux's inadmissible hearsay-within-hearsay statement by an unknown declarant;[43] and Joshua Dupre's statement which doesn't implicate Young.[44] But these allegations are not causally related to any hypothetical present adverse effect. The first two allegations—the joke and Thibodeaux's statement—relate to the K-9 program, which is irrelevant since Plaintiff is presently a K-9 officer.[45] It is unclear how the last allegation—Joshua Dupre's statement—relates to any hypothetical present adverse effect or future action by Young.

Whatever this hypothetical current injury is, Young necessarily cannot be responsible for this harm because Young has no authority to supervise or manage Dunn. Plaintiff's current duties and work conditions are established by Chief LeBouef—a third party not presently before the Court.[46] Further, Plaintiff has not raised any claims against Chief LeBouef, has not named him in this lawsuit, has not alleged any civil rights violations as to Chief LeBouef, and testified that there are no issues between himself and Chief LeBouef.[47]

### (3) Redress

Plaintiff fails to meet element (3), redressability, because there is nothing this Court can order which will redress Plaintiff's injury. "It must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[48] "Because injunctive and declaratory relief cannot conceivably remedy any past wrong, plaintiffs seeking injunctive and declaratory

---

[42] ECF No. 326, p. 16 (citing ECF No. 252-1, pp. 16-17) (citing ECF No. 252-3, p. 307) ("It was just a joke to tease Victor").

[43] ECF No. 326, p. 16 (citing ECF No. 252-1, pp. 16-17) (citing ECF No. 252-3, p. 307) (citing ECF No. 252-3, pp. 153, 173) ("I don't remember who said it" and later confirms he did not hear Young state the hearsay statement).

[44] ECF No. 326, p. 17 (citing ECF No. 252-1, pp. 17-18) (citing ECF No. 252-3, p. 326) ("Victor, Ryan Young and the Chief, they all beefing with Dunn").

[45] ECF No. 237-3, p. 3.

[46] ECF No. 237-7, p. 9 (listing the duties of the EPD chief of police).

[47] ECF 237-3, p. 12 ("[Chief LeBouef and I] never had a cross word. We had no issues, as far as I know.").

[48] *Lujan*, 504 U.S. at 561.

relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury."[49]

As to Young, Plaintiff, in his Amended Complaint, prayed for the Court to "[i]ssue a declaration that Defendants' actions and inactions are unlawful and unconstitutional", "[e]nter a permanent injunction ordering the Individual Defendants to (i) halt all unlawful and unconstitutional actions", and "(ii) publicly apologize to Lt. Dunn for the significant harm their conduct has inflicted, and continues to inflict, on his employment prospects and well-being".[50] But because there is no continuing injury or future threatened injury, there is no relief to grant. Further, it is merely speculative that any alleged injury is redressed by any of the requested relief.[51]

### (4) Emotional Distress Claim[52]

As to the emotional distress claim, the above reasoning also applies, and there is no Article III standing because Plaintiff cannot show threat of ongoing or future tortious conduct by Young. Thus, elements (1) and (3) of standing are not satisfied. Even if *arguendo* Plaintiff had a damages claim for emotional distress, it does not create standing for equitable relief alone.[53]

The Supreme Court has held plaintiffs do not have standing for equitable relief based solely on continuing emotional consequences. In *Lyons*, the Supreme Court stated: "It is the reality of the threat of repeated injury that is relevant to the standing inquiry. . . . The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat

---

[49] *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (citation modified).
[50] ECF No. 128, p. 49.
[51] *See Ashcroft v. Mattis*, 431 U.S. 171 (1977) (a Plaintiff does not have standing on the basis that equitable relief would grant him "emotional satisfaction").
[52] The Court has asked the parties to brief question #4 as to defamation and intentional infliction of emotional distress. However, Plaintiff's claim of for defamation is only brought as to Victor Fontenot, and thus we brief only as to IIED.
[53] *See O'Shea v. Littleton*, 414 U.S. at 501 n. 5 ("we have withheld relief in equity even when recognizing that comparable facts would create a cause of action for damages.").

of future injury by the defendant."[54] In *Ashcroft v. Mattis*, the Supreme Court held a plaintiff does not have standing on the basis that equitable relief would grant him "emotional satisfaction".[55] Here, because there are no facts establishing an immediate threat of future actions inflicting emotional distress and any equitable relief is merely hypothetical to grant redress his alleged harm, Plaintiff fails to establish Article III standing.

## III. QUESTION #3: THERE IS NO BASIS FOR INSTITUTIONAL REFORM RELIEF

The issue of institutional reform relief is not relevant as to Young because he cannot provide any of the institutional reform requested, nor does Plaintiff pray for same as to Young.

## IV. CONCLUSION: RYAN YOUNG SHOULD BE DISMISSED

Plaintiff's claims fail both substantively and procedurally. Plaintiff's four asserted adverse employment actions fail substantively because Plaintiff cannot show the allegations constitute an adverse employment action, nor that Young caused the alleged actions. Further, Plaintiff cannot show Article III standing for purely equitable relief. This case for equitable relief was mooted upon the retirement of Chief Fontenot. This Court should—just as the Supreme Court did in the cited cases—dismiss for lack of Article III standing.

---

[54] *Lyons*, 461 U.S. at 107 n. 8.
[55] *Ashcroft v. Mattis*, 431 U.S. 171 (1977).

Respectfully submitted,

**NEUNERPATE**


/s/ Jason T. Reed
**JASON T. REED** (#28733)
(jreed@neunerpate.com)
**ROBERT E. TORIAN** (#18468)
(rtorian@neunerpate.com)
**SPENCER R. CHISM** (#41697)
(schism@neunerpate.com)
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, LA 70503
Telephone: (337) 237-7000
Facsimile: (337) 233-9450
**Counsel for Defendant, Lt. Ryan Young**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all known counsel of record via the Court's electronic filing system.

Lafayette, Louisiana this 20th day of July, 2026.


/s/ Jason T. Reed
Counsel

-11-