**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **MICHAEL DUNN** | **CASE NO. 6:21-CV-01535** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **RANDY FONTENOT ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

# MEMORANDUM RULING

The present matters before the Court are (1) the Rule 12(c) Motion for Judgment on the Pleadings **[ECF No. 219]** filed by Ryan Young; (2) the Motion for Summary Judgment on behalf of Defendant, Lt. Ryan Young **[ECF No. 237]**; (3) the Motion for Summary Judgment **[ECF No. 241]** filed by the City of Eunice; (4) Plaintiff Michael Dunn's Motion for Partial Summary Judgment **[ECF No. 252]**; and (5) the Motion to Dismiss under Rules (12)(b)(1), 12(b)(6), and 12(c) **[ECF No. 254]** filed by the City of Eunice. Oppositions have been filed to each respective motion. The Court took these motions under advisement following oral argument. After considering the parties' arguments, the record, and the relevant authorities, the Court rules as follows.

## I.
## Background

Plaintiff Michael Dunn asserts First Amendment retaliation and whistleblower claims arising out of his employment with the City of Eunice. Dunn is a lieutenant with the Eunice Police Department ("EPD").[1] He alleges that he observed "pervasive corruption and misconduct" at EPD under former chief Fontenot's leadership from 2017 until Fontenot's retirement.[2] Dunn alleges that

[1] ECF No. 128 at ¶ 19.
[2] *Id.* at ¶¶ 2, 3, 32.

he reported numerous instances of misconduct by his fellow officers, including use of excessive force, neglect of the medical needs of inmates, mishandling evidence, and misuse of funds.[3] Dunn alleges that he reported this corruption and misconduct to state, local, and federal authorities when the EPD failed to address his complaints.[4] Dunn also alleges that he notified these authorities that former chief Fontenot selectively enforced the law and "weaponized" the disciplinary process to prevent officers from exposing misconduct within the EPD.[5]

According to Dunn, former chief Fontenot discovered that he had reported Fontenot's and EPD's alleged misconduct to outside authorities in June of 2020.[6] Dunn alleges that former chief Fontenot, Lieutenant Ryan Young and Officer Victor Fontenot (collectively the "Individual Defendants") then "engaged in a campaign of retaliation against [Plaintiff] in an attempt to force his resignation from [EPD] in violation of his First Amendment rights and numerous Louisiana state laws."[7] Specifically, Dunn alleges six adverse employment actions that he contends were taken in retaliation for the exercise of his First Amendment rights: (1) former chief Fontenot placed him on administrative leave for social media posts; (2) he was removed from the Eunice Police Department's K-9 Unit; (3) he was removed from the department's narcotics unit; (4) he was transferred to the department's night shift; (5) he was "effectively" demoted when he was allegedly stripped of his duties and authority as a lieutenant in the department; and (6) he was "constructively" demoted or discharged as a result of threats, criticism, false allegations, ostracism, and efforts by former chief Fontenot and other officers to undermine Dunn's reputation and authority.[8]

---

[3] *Id.*
[4] *Id.* at ¶¶ 2, 3, 5, 32.
[5] *Id.* at ¶ 3; *see also* ¶¶ 30-31; 51-54.
[6] *Id.* at ¶ 5.
[7] *Id.* at ¶ 2; *see also* ¶ 7.
[8] ECF Nos. 1, 326.

Dunn filed the present action on June 4, 2021, seeking declaratory and injunctive relief against the City of Eunice, and the Individual Defendants.[9] He does not seek damages. Rather, Dunn contends that he filed the present action "to end corruption and wrongdoing within the [EPD] and to establish a legitimate and effective mechanism for investigating complaints of police misconduct in the City of Eunice."[10] After former chief Fontenot declined to run for reelection, in the November 2022 election, Kyle LeBouef received the majority of the vote and was sworn into office as the Chief of Police for the City of Eunice on December 29, 2022.[11]

In his Amended Complaint, Dunn seeks a declaration that "Defendants' actions and inactions are unlawful and unconstitutional."[12] Dunn seeks a declaratory judgment in Count 1 "that the Individual Defendants actions violated his First Amendment rights;"[13] in Count 2 "that the Individual Defendants' actions constituted an illegal civil conspiracy;"[14] in Count 3 that statements of former chief Fontenot and Victor Fontenot "were false and defamatory;"[15] in Count 4 that the actions of former chief Fontenot and Victor Fontenot "constituted and constitute an illegal civil conspiracy;"[16] in Count 5 that the actions of former chief Fontenot and the City of Eunice "constitute a violation of the Louisiana Whistleblower Statute;"[17] in Count 6 "that the Individual Defendants actions constituted intentional infliction of emotional distress;"[18] in Count 7 that the actions of former chief Fontenot and Victor Fontenot "actions constitute false light invasion of privacy;"[19] and in Count 8 "that the Individual Defendants actions violate his right to free speech

[9] ECF No. 128 at ¶¶ 20-23.
[10] *Id.* at ¶ 18.
[11] ECF No. 159, Exhibit A, Election Returns and Oath of Office.
[12] ECF No. 128 at ¶ 193.
[13] *Id.* at ¶ 133.
[14] *Id.* at ¶ 139.
[15] *Id.* at ¶ 150.
[16] *Id.* at ¶ 156.
[17] *Id.* at ¶ 164.
[18] *Id.* at ¶ 171.
[19] *Id.* at ¶ 176.

under the Louisiana Constitution;"[20] and in Count 9 that the City of Eunice is liable under the argument of municipal liability for violation of 42 U.S.C. § 1983. Dunn seeks an injunction ordering the Individual Defendants to "halt all unlawful and unconstitutional actions" and to "publicly apologize" to Dunn.[21] He also seeks an injunction against the City of Eunice directing the City to take numerous actions. On March 20, 2025, the Court dismissed all claims against former chief Fontenot. Claims remain as to the City of Eunice, Victor Fontenot, Ryan Young and unnamed John Doe defendants.

## II.
## Legal Standards

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure permit a party to challenge the subject matter jurisdiction of the district court.[22] "[A] claim is 'properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate' the claim."[23] Standing and mootness are required elements of subject matter jurisdiction and are therefore properly challenged on a Rule 12(b)(1) motion to dismiss.[24] The burden of proof on a Rule 12(b)(1) motion lies with the party asserting jurisdiction.[25] A dismissal based upon a lack of subject matter jurisdiction is warranted when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[26] "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint

---

[20] *Id.* at ¶ 181.
[21] *Id.* at ¶ 194.
[22] Fed. R. Civ. P. 12(b)(1).
[23] *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018)(quoting *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012).
[24] *See Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017); *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct 402, 404, 30 L.Ed.2d 413 (1971).
[25] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[26] *Id.*, at 161.

alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[27] When filed in conjunction with other Rule 12 motions, "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[28]

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level."[29] "A legally sufficient complaint does not need to contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action."[30] In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.[31] Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.[32]

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).[33] The "inquiry focuses on the allegations in the pleadings" and not on whether the "plaintiff actually has sufficient evidence to succeed on the merits."[34]

---

[27] *Id.*
[28] *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).
[29] *National Bi-Weekly Admin. Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).
[30] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[31] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 667 F.2d 1045 (5th Cir. 1982).
[32] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).
[33] *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009).
[34] *Id.*

Under Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[35] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[37] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[38]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[39] "Credibility determinations are not part of the summary judgment analysis."[40] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[41] Under Rule 56(f), a court may "[a]fter giving notice and a reasonable time to respond

---

[35] Fed. R. Civ. P. 56(a).
[36] *Id.*
[37] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[38] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[39] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[40] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[41] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

… (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

## III.
## Standing and Mootness

Defendants challenge Dunn's claims on the grounds of standing and mootness. Since these are jurisdictional challenges, they must be addressed before addressing Defendants' arguments on the merits. Jurisdiction under Article III of the Constitution requires the presence of a "case or controversy" among the parties to a federal lawsuit.[42] Standing is one aspect of this case-or-controversy requirement.[43] Standing identifies "those disputes which are appropriately resolved through the judicial process,"[44] and "serves to prevent the judicial process from being used to usurp the powers of the political branches."[45] Courts have adopted various "prudential" standing doctrines but Article III standing requires at a minimum, that the plaintiff show (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) a showing that the injury will likely "be redressed by a favorable decision."[46] The injury-in-fact requirement ensures that the plaintiff has a "personal stake in the outcome of the controversy."[47] The plaintiff's injury must be "concrete, particularized, and actual or imminent …."[48] The causation element of standing requires that the plaintiff's injury be "fairly traceable to the

[42] U.S. Const. amend. III, § 2; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1549 (2016).
[43] *Spokeo, Inc.*, 136 S.Ct. at 1549 ("[T]he doctrine of standing derives from [Article III's] case-or-controversy requirement….")
[44] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
[45] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).
[46] *Lujan*, 504 U.S. at 560–561.
[47] *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted).
[48] *Clapper*, 568 U.S. at 409 (quoting *Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

defendant's allegedly unlawful conduct,"[49]while "redressability" requires a showing that the plaintiff's injury is likely to be redressed by the relief requested in the complaint.[50]

In contrast, the Fifth Circuit has described "mootness" as "the doctrine of standing in a time frame."[51] In other words, a plaintiff must not only establish that he or she has standing under Article III at the commencement of the case, the plaintiff's personal stake that "exist[ed] at the commencement of the litigation (standing)" must "continue throughout [the case's] existence (mootness)."[52] Even if a plaintiff has standing at the commencement of the case, the case may nevertheless become moot by events that occur during litigation and eliminate the plaintiff's personal interest in the case. [53]

In the present case, Dunn alleges former Eunice Police Chief Randy Fontenot conspired with other members of the Department (including defendants Ryan Young and Victor Fontenot) to engage in "a campaign of retaliation against [Plaintiff] in an attempt to force his resignation from [EPD] in violation of his First Amendment rights and numerous Louisiana state laws."[54] The crux of Defendants' standing and mootness arguments is that Randy Fontenot is no longer the Eunice Police Chief and Dunn cannot point any facts showing that the current Eunice Police Chief, Kyle LeBoeuf, has engaged in any campaign to retaliate against him. As a result, according to Defendants, the retaliatory campaign ceased with Fontenot's departure. Because Dunn is only seeking prospective injunctive and declaratory relief and not damages, Defendants argue that any injuries he suffered resulting from Randy Fontenot's actions are not redressable by purely

---

[49] *Allen v. Wright*, 468 U.S. 737, 751 (1984).
[50] *Id.*
[51] *Centers for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).
[52] *Id.*
[53] *Pool v. City of Houston*, 978 F.3d. 307, 313 (5th Cir. 2020).
[54] *Id.* at ¶ 2; *see also* ¶ 7.

prospective relief. Alternatively, they argue that Fontenot's departure during the pendency of the case moots Dunn's claims.

Dunn argues that prospective injunctive and declaratory relief would restore his reputation and the status and duties that were stripped from him during Randy Fontenot's tenure. Dunn points to the allegation in his Amended Complaint that his injuries "continue to this day."[55] He alleges that former chief Fontenot and the other defendants "launched a retaliatory campaign designed to 'get rid' of Lt. Dunn," and that they "spread false allegations that Lt. Dunn was a 'dirty' and 'corrupt' cop."[56] According to Dunn, the "fallout" from this campaign "continue[] to harm Lt. Dunn by hindering his career advancement, diminishing his job prospects, and making him a villain in the eyes of some colleagues and residents of Eunice—which also has the consequence of making Lt. Dunn's job more dangerous and threatening his physical safety."[57] Dunn argues that the harm to his reputation and the stripping of his duties as a Eunice Police Department lieutenant are the present and continuing adverse effects of Randy Fontenot's conduct, and that these continuing effects satisfy the requirements for standing.

The court agrees with Dunn that the departure of Randy Fontenot as Eunice police chief and the termination of Fontenot's campaign against him does not, alone, deprive Dunn of standing or moot all of his claims. While "[p]ast exposure to illegal conduct" does not in itself establish standing for equitable relief, it can if it is accompanied by "continuing, present adverse effects."[58] So, if Dunn can prove the elements of a retaliation claim based on the past actions of former chief Fontenot, Dunn could satisfy the requirements for standing by showing that he continues to suffer from the adverse employment actions taken by Fontenot. If Dunn makes this showing, his injuries

---

[55] ECF No. 278 at 8.
[56] *Id.*
[57] *Id.*
[58] *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015).

could be redressable by prospective injunctive relief regardless of Fontenot's subsequent departure and that relief would not be moot. However, whether Dunn can show "continuing, present adverse effects" from Fontenot's conduct requires a closer examination of Dunn's claims and the substance of the injunctive and declaratory relief he is seeking.

**A. First Amendment Retaliation Claims.**

Dunn alleges six adverse employment actions that he contends were taken in retaliation for the exercise of his First Amendment rights: (1) former chief Fontenot placed him on administrative leave for social media posts; (2) he was removed from the Eunice Police Department's K-9 Unit; (3) he was removed from the department's narcotics unit; (4) he was transferred to the department's night shift; (5) he was "effectively" demoted when he was allegedly stripped of his duties and authority as a lieutenant in the department; and (6) he was "constructively" demoted or discharged as a result of threats, criticism, false allegations, ostracism, and efforts by former chief Fontenot and other officers to undermine Dunn's reputation and authority.[59] With respect to the narcotics unit, night shift transfer, and "effective demotion" arguments, Dunn points to evidence in the summary judgment record that creates genuine issues of material fact as to whether Dunn's injuries from these actions are ongoing and whether they are redressable through injunctive relief. Dunn's claims for injunctive relief with respect to the remaining retaliatory acts lack standing or are moot as discussed below.

1. Administrative Leave.

Dunn's administrative leave allegations are based on former chief Fontenot's use of the Eunice Police Department's Officer Conduct Policy to discipline Dunn for social media posts that Fontenot did not like. These allegations are the subject of a related case that was previously

---

[59] ECF Nos. 1, 326.

dismissed (the "Related Action").[60] Specifically, Dunn created a Facebook post on his personal account while off duty that discussed his concerns about criminal activity at the local Knights of Columbus ("KC") Hall.[61] Dunn's post reported a tip by another Eunice police officer about a possible shooting threat at the KC Hall later that night.[62] Dunn's Facebook post detailed the history of criminal activity taking place at the KC Hall and warned local residents of the possibility of a shooting. Dunn contends that Fontenot was a friend of the managers of the KC Hall and disapproved of Dunn's complaints.[63] Fontenot subsequently opened an investigation over Dunn's August 2019 Facebook posts, alleging that Dunn's posts violated a section of the Eunice Police Department Procedures Order 15-7 Code of Conduct and Ethics titled "Conduct Unbecoming of an Officer" (the "Officer Conduct Policy") and placed Dunn on paid administrative leave. [64] Dunn appealed his discipline to the Eunice Municipal Fire and Police Civil Service Board, which ruled in Dunn's favor and reversed Fontenot's decision to place him on leave.[65] The City of Eunice Board of Alderman then took the additional step of removing Fontenot's "appointing authority" and, accordingly, his power to fire and discipline officers.[66]

As the Court explained in dismissing the Related Action, Dunn lacks standing to assert a claim based on the administrative leave imposed in connection with his social media posts or, alternatively, the claim is moot.[67] "Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements."[68] "Because injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and

---

[60] *Dunn v. City of Eunice, et al.*, 21-cv-1063 (W.D. La. Aug. 17, 2020) (ECF No. 97, Order Dismissing Case).
[61] ECF No. 128 at ¶6; *Dunn v. City of Eunice, et al.*, 21-cv-1063 (ECF No. 1, Complaint).
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Dunn v. City of Eunice, et al.*, 21-cv-1063 (ECF No. 96, Memorandum Ruling)
[68] *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019).

declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury."[69] "For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur."[70] "Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."[71] Put simply, "[t]he plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred," and "the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."[72]

Dunn's paid administrative leave terminated prior to the filing of the present action when the Eunice Civil Service Board reversed Fontenot's decision and the City stripped Fontenot of appointing authority. Dunn has not pointed to any evidence in the summary judgment record that he is suffering any continued discipline or other sanction based on this pre-petition administrative leave or his social media posts. Moreover, after this case was filed, Fontenot left his position with the Eunice Police Department and Dunn has not pointed to any evidence that the current Chief of the Eunice Police Department has attempted to reimpose that administrative leave or otherwise discipline Dunn for his social media posts. Chief LeBouef even stated in his declaration that "[f]rom his date of hire to the date of this declaration, Lt. Dunn has not been disciplined by the Eunice Police Department, and he has been, and remains, an officer in good standing with the Eunice Police Department."[73] In short, Dunn has not pointed to evidence of any "continuing injury

---

[69] *Id.*; 11A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2942 at 47 (2013) ("Because injunctive relief looks to the future, and is designed to deter rather than punish, relief will be denied if the conduct has been discontinued on the ground that the dispute has become moot and does not require the court's intervention.")
[70] *Id.* at 721.
[71] *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 95- 96 (1983); *Cone Corp. v. Florida Dept of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991)).
[72] *Id.*; *Serafine v. Crump*, 800 Fed. Appx. 234, 236 (5th Cir. 2020).
[73] ECF No. 272-4 at 2.

or threatened future injury" with respect to allegations of retaliation arising from his social media posts.[74]

2. Removal From K-9 Program.

Dunn next points to Fontenot's decision to remove him from the Eunice Police Department's K-9 Unit as retaliation for the exercise of his First Amendment rights. In 2019, Dunn was the sole canine handler for the Eunice Police Department. Dunn alleges that Fontenot "ordered the removal of [Dunn's] canine and equipment and eliminated the canine program" after Fontenot learned that Dunn had approached the District Attorney's Office about his concerns about the department.[75] Dunn alleges that he suffered a loss of hours, compensation, and prestige as a result of Fontenot's actions.[76] Dunn has pointed to sufficient evidence that at least creates a genuine issue of material fact as to the retaliatory motive for former chief Fontenot's actions in eliminating the Department's K-9 Unit.

The problem with this claim is that the prospective relief requested by Dunn with respect to his K-9 duties is now moot. Dunn seeks broad injunctive relief to end Defendants' violations of his First Amendment rights and a specific request to restore the duties stripped from him—presumably the restoration of his K-9 duties. But the summary judgment record shows that, after former chief Fontenot's departure, current Chief LeBouef restored the K-9 program and assigned Dunn a police dog.[77] In his deposition testimony, Dunn acknowledged that his K-9 duties had recently been restored but testified that he had not received any K-9 assignments yet.[78] However, he also testified that he did not know why he has not received K-9-related assignments and has not

[74] Even if this request for injunctive relief is not moot, Dunn's administrative leave was not the equivalent of a reprimand and, even it was, "a rescinded reprimand does not rise to the level of an adverse employment action if it was rescinded through internal … procedures." *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000).
[75] ECF No. 128 at ¶ 109.
[76] *Id.*
[77] ECF No. 297, Exhibit 40, p. 228.
[78] *Id.*, p. 229.

pointed to any evidence that the lack of assignments is a result of continuing retaliation against Dunn for the exercise of his First Amendment rights.[79] Dunn's request for injunctive relief essentially requests the Court wade into the internal management and assignment practices of the Eunice Police Department without any evidence of ongoing retaliatory actions with respect to Dunn's K-9 assignments. Because Dunn has not pointed to evidence of any "continuing injury or threatened future injury" with respect to allegations of retaliation arising from Dunn's K-9 duties, these allegations cannot support the prospective injunctive relief that he is requesting.[80]

3. Constructive Demotion/Discharge Allegations.

Dunn also alleges a broad pattern of retaliation orchestrated by former chief Fontenot involving a pattern of "social ostracism," "professional disapprobation," and "threats to physical safety," all designed to force Dunn out of the Eunice Police Department. Dunn alleges that he has been "ostracized out to a corner," and that all of his duties as a police lieutenant have been "stripped away."[81] He alleges that this scheme to force him to quit also included threats to his safety, false allegations of corruption, that other officers do not respect his authority, and that some of his co-workers do not answer his back-up calls.[82] Dunn seeks injunctive relief barring defendants from continuing with their scheme to force Dunn out of the department. He also seeks an injunction ordering Defendants to restore the duties and authority of his position as a police lieutenant.[83]

---

[79] Dunn testified as follows when asked about his reinstatement to K-9 duties:

> Yes, I have the K-9, I can do that. But just in the last three months, there's been at least 10 to 15 narcotics operations I've begged to help with, to help to rid the drug problem. And I have yet to be allowed, be a part of, know what's going on, nothing. ***What the reasoning behind it being, I don't know.*** Now, I have e-mails, I have called them, I have told them, hey, I'm willing to help because this is -- this is what I do, this is what I'm good at. Search and seizure, search warrants, stuff like this, and I have a dog. My own department hasn't used me once.

ECF No. 297, Exhibit 40, p. 229.

[80] *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019).

[81] ECF No. 326 at 9-11.

[82] *Id.*

[83] ECF No. 128 at ¶¶193-196.

These allegations suffer from at least two problems. First, Dunn's "constructive demotion" argument is based on *Sharp v. City of Houston*.[84] Dunn contends that, under *Sharp*, a scheme involving "social ostracism," "professional disapprobation," and "threats to physical safety" designed to force a police officer to resign in retaliation for exercising that officer's First Amendment rights is a "constructive demotion or discharge" that is an actionable adverse employment action.[85] This argument mischaracterizes *Sharp's* holding. The portion of the *Sharp* opinion cited by Dunn refers to "social ostracism," "professional disapprobation," and "threats to physical safety" with respect to constructive ***notice*** to the plaintiff's supervisors in the context of hostile work environment claims under Title VII—not constructive *demotion or discharge* in a First Amendment retaliation case.[86] In *Sharp*, the plaintiff's First Amendment retaliation was grounded on a voluntary transfer from an "elite Mounted Patrol" to a teaching post at the Police Academy that the court deemed the equivalent of a demotion.[87] Here, Dunn alleges that some of his duties have been stripped but there is no evidence in the summary judgment record that he was formally transferred, voluntarily or involuntarily, to a less prestigious position as in *Sharp*. Throughout this case, as stated in Chief LeBouef's declaration, Dunn remained a police lieutenant in good standing at the Eunice Police Department.

Second, and more importantly, the injunctive relief requested by Dunn to address his alleged constructive demotion—that Defendants cease the retaliatory conduct—is moot. Like the allegations involving Dunn's administrative leave and the elimination of the K-9 unit, these allegations are rooted in an alleged campaign of retaliation orchestrated by former chief Fontenot. As with these other allegations, Dunn has not pointed to evidence that former chief Fontenot's

---

[84] 164 F.3d 923 (5th Cir. 1999).
[85] ECF No. 326 at 9.
[86] 164 F.3d at 929-32.
[87] *Id.* at 927-28, 933-35.

broad retaliatory campaign and efforts to force Dunn's resignation have continued after Fontenot left his position as Chief of Police. While Dunn expresses disagreement with Chief LeBoeuf over department policies, he does not cite any instances demonstrating that LeBouef has continued, or that he is likely to resume, former chief Fontenot's retaliatory campaign.[88] Accordingly, injunctive relief to enjoin the former chief's campaign to force Dunn out of the department is moot because Dunn has not pointed to evidence of any "continuing injury or threatened future injury" that is not "conjectural, hypothetical, or contingent."[89]

**B. Dunn's Reputation and Employment Prospects.**

Dunn further alleges that former chief Fontenot's retaliatory actions in concert with Defendants have damaged his reputation and employment prospects. Dunn's state law defamation, intentional infliction of emotional distress, whistle-blower, and "false light invasion of privacy" claims are grounded on these injuries but, like his First Amendment retaliation claims, Dunn does

---

[88] In this regard, Dunn testified:

> I know -- me and the Chief, the current Chief have had this discussion, and it's just a difference of opinion.· I think the policies are too vague. The reason why I feel they're too vague, I have no issue, I like him as a person. I'm not saying he's the problem. But what if we get another Randy Fontenot? That policy being so vague can be interpreted any way they wish, to punish who they want or exonerate who they want. That's why I do not like vague policies because they can be interpreted by so many different ways and whoever is reading them.

ECF No. 237, Exhibit A, p. 250. He also suggests elsewhere in his testimony that he is not experiencing adverse actions under the present Chief of Police:

> Q: -- sometime after January of 2023, you decided to change what you've been doing before, which was to document everything to protect yourself, and you just decided to stop doing that at some point. Yes?
>
> A: To clarify.· As far as I know, I have nothing moving towards me, nobody is trying to arrest me, nobody is trying to do anything I didn't do, so it's not affecting me.· I follow the policies that you see a problem, you report it to your supervisor. That's as far as I go with it anymore.

ECF No. 297, Exhibit 40, p. 243.

[89] *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019); *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).

not seek money damages.[90] Dunn contends that these injuries can be redressed through injunctive and declaratory relief that restores his reputation and employment prospects, including:

- Injunctive relief requiring that "each Individual Defendant publicly apologize to Lt. Dunn for the significant harm their conduct has inflicted, and continues to inflict, on his employment prospects;"[91]

- Injunctive relief to "halt the proliferation of Defendants' false statements to Lt. Dunn's detriment," to and "end the pattern of deliberate, repeated harassment to Lt. Dunn's detriment;"[92]

- Injunctive relief to "expunge from Lt. Dunn's personnel records any and all notations, complaints, and/or related references to any baseless internal investigations or other actions taken by Defendants as retaliatory measures against Lt. Dunn;"[93]

- Injunctive relief requiring Defendants to declare that "Lt. Dunn is an officer in good standing and has not been under any legally justifiable or proper investigation conducted by the Eunice Police Department since June 9, 2020;"[94] and

- a declaratory judgment declaring that defendants retaliated against Dunn in violation of the First Amendment, defamed him by spreading false allegations, violated the Louisiana whistleblower statute, and committed intentional infliction of emotional distress and false light invasion of privacy.[95]

1. Injunctive Relief to Remedy Damage to Reputation.

Here, Dunn's allegations that his reputation was damaged and his employment prospects diminished are based solely on former chief Fontenot's actions in the past—actions that will not recur because Fontenot is no longer the Eunice Chief of Police. Dunn has not alleged that he suffers from any immediate threat of future injury by former chief Fontenot. There are no allegations that the former chief has committed or continues to commit any illegal conduct since

---

[90] ECF No 128 at ¶¶ 140-150 (defamation); 157-164 (whistleblower); 165-171 (intentional infliction of emotional distress); 172-176 (false light invasion of privacy).
[91] ECF No. 128 at ¶133.
[92] *Id.* at ¶ 150, 171, 176.
[93] *Id.* at ¶ 195(b).
[94] *Id.* at ¶ 195(c).
[95] *Id.* at ¶¶ 133, 150, 164, 171, 176.

he left office. Nor has Dunn pointed to any evidence that current Police Chief LeBouef or the remaining defendants have continued the former chief's campaign of retaliation. In short, injunctive relief at this point "cannot conceivably remedy any past wrong" with respect to the alleged injuries to Dunn's reputation.[96]

Dunn cites the district court's injunction in *Johnson v. Southwest Research Inst.* as grounds for an injunction ordering Defendants to expunge his files of negative comments and to document that he is an officer in good standing.[97] *Johnson* does not support the relief requested for at least two reasons. First, *Johnson* is factually distinguishable. The jury in *Johnson* found that the plaintiff was unlawfully discharged in retaliation for filing a complaint of sex discrimination.[98] One of the defendant's retaliatory acts in that case involved sending false information to the Defense Counterintelligence and Security Agency ("DCSA")—the government agency charged with overseeing civilian security clearances—and this information resulted in a DCSA incident report stating that the plaintiff could "pose a security risk by becoming an 'insider threat.'"[99] Because the DCA incident report could have prevented the plaintiff from maintaining a security clearance and working in her field, the district court granted an injunction ordering the defendant to issue a letter to the DCSA stating that the plaintiff "would not have been terminated but for her complaints of sex discrimination" and requesting that the DCSA withdraw the negative incident report.[100]

Here, Dunn was not terminated nor has he pointed to evidence that, unlike the defendant's actions in *Johnson*, Defendants' actions could prevent him from working as a law enforcement officer. Moreover, in *Johnson*, the purpose of the "retraction" letter was to request the DCA to take

---

[96] *Stringer*, 942 F.3d at 720.
[97] 384 F. Supp. 3d 722, 729–30 (W.D. Tex. 2019); see ECF No. 326 at 27.
[98] 384 F. Supp. 3d 722, 729–30.
[99] *Id.*
[100] *Id.*

concrete action to restore the plaintiff's ability to obtain a security clearance. In contrast, it is entirely speculative whether the relief requested by Dunn in the present case—an apology and formal exoneration—will restore his reputation or improve his employment prospects.

Second, and more importantly, this requested relief is moot in the present case. Current Police Chief LeBouef filed a declaration stating that he reviewed Dunn's files and "[f]rom the date of hire to the date of this declaration, Lt. Dunn has not been disciplined by the Eunice Police Department, and he has been, and remains, and officer in good standing with the Eunice Police Department."[101] In contrast, Dunn has not pointed to any evidence showing negative statements in his record or statements suggesting that he is not an officer in good standing. Moreover, with respect to the investigation and administrative leave imposed as a result of Dunn's social media posts, the Eunice Civil Service Board exonerated Dunn when it reversed former chief Fontenot's decision and the City stripped Fontenot of appointing authority.

Dunn's remaining requests for injunctive relief to redress his loss of reputation are similarly flawed. Dunn seeks an injunction ordering Defendants to "halt all unlawful and unconstitutional actions" and to "publicly apologize" to Dunn.[102] All of Dunn's allegations and the injunctive relief he seeks stem from Fontenot's conduct while he was Chief of Police. However, as noted above, former chief Fontenot is no longer in a position to violate Dunn's rights under federal and state law or take any adverse employment action against him. "The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant."[103] "[W]here reputational injury is the lingering effect of an otherwise

---

[101] ECF No. 272-4 at ¶¶ 2,7.
[102] ECF No. 128 at ¶ 194.
[103] *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983)

moot aspect of a lawsuit, no meaningful relief is possible, and the injury cannot satisfy the requirements of Article III."[104]

Dunn also requests a mandatory permanent injunction ordering Defendants to publicly apologize to Dunn "for the significant harm [his] conduct has inflicted, and continues to inflict, on his employment prospects and well-being[.]"[105] Dunn cites no authority, constitutional or otherwise, to support his argument that he has the right to a public apology nor that the Court has the power to order Defendants to issue one. Instead, Dunn focuses on distinguishing the cases cited by Defendants and relies on inapplicable jurisprudence.[106] For example, Dunn cites *Carter*, which did not involve a request for a mandatory injunction ordering an individual to publicly apologize.[107] Rather, that case involved the imposition of sanctions against a commercial defendant in a Title VII religious discrimination suit.[108] The court in *Carter* specifically stated that it "is not requiring [the defendant] to apologize."[109]

Dunn also cites *Philip Morris*, which did not involve an injunction ordering an individual to publicly apologize.[110] Rather, *Philip Morris* was a Racketeer Influenced and Corrupt Organizations Act ("RICO") case where the court ordered cigarette manufacturers to issue a corrective statement about the negative health effects of smoking to prevent them from violating

---

[104] *Danos v. Jones*, 652 F.3d 577, 584 (5th Cir. 2011); *Jackson v. Mayorkas*, 2023 WL 5311482, (N.D. Tex. Aug. 17, 2023) (An interest in vindicating reputation is not "constitutionally sufficient to avoid mootness.").
[105] ECF No. 128 at ¶ 194.
[106] *See Woodruff v. Ohman*, 29 F. App'x 337, 346 (6th Cir. 2002) (concluding "the district court exceeded its equitable power when it ordered [defendant] to apologize" and holding that "[w]e are not commissioned to run around getting apologies"); *McKee v. Turner*, 491 F.2d 1106, 1107 (9th Cir. 1974).
[107] ECF No. 163 at 23 (citing *Carter v. Transp. Workers Union of Am., Loc. 556*, 686 F.Supp.3d 503 (N.D. Tex. Aug. 7, 2023))
[108] *Carter*, at 518.
[109] *Id.*
[110] ECF No. 163 at 23-24 (citing *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095 (D.C. Cir. 2009)).

RICO in the future.[111] Dunn has cited no authority to establish that he has the right to an apology and what, if any, authority the Court has to order Defendants to publicly apologize.[112]

Even assuming Dunn has the right to a public apology and that the Court has the authority to order Defendants to apologize, Dunn has not shown that a public apology would redress his harm.[113] Dunn alleges that an apology would repair his reputation and the trust of Eunice Police Department officers, remedy his anxiety and depression, and vindicate "him as a good officer in the eyes of Eunice citizens and other law enforcement agencies."[114] As noted above, however, it is purely speculative as to whether an apology would, in any way, affect Dunn's reputation and restore the trust of other officers. Moreover, as noted by another court, "compelled apologies are, by definition, insincere, and they are unlikely to adequately convey a person's remorse or help a wronged individual move on."[115]

2. Declaratory Relief to Remedy Damage to Reputation.

Finally, Dunn seeks a declaratory judgment stating that Defendants' actions amounted to retaliation under the First Amendment and the Louisiana Constitution, conspiracy, defamation, intentional infliction of emotional distress, false light invasion of privacy, and a violation of the Louisiana Whistleblower Act. Courts generally engage in a three-step inquiry in deciding whether to grant declaratory relief. First, the Court must determine whether the declaratory relief requested is justiciable. In other words, does an "actual controversy" exists between the parties to the

[111] *Philip Morris*, 566 F.3d at 1139-1140.
[112] *Mallory v. Mun. Court of Tupelo*, 2019 WL 6174938 at *4 (N.D. Miss. Nov. 19, 2019) ("There is no right to an apology[.]")
[113] *Lujan*, 504 U.S. at 561.
[114] ECF No. 163 at 22, 24.
[115] *Hawbecker v. Hall*, 276 F. Supp. 3d 681, 690 (S.D. Tex. 2017) (declining to issue an injunction ordering the defendant to apologize in a defamation case and noting "the law's disfavor against injunctive relief in defamation actions").

action.[116] Whether a controversy exists is a question of law.[117] Second, if there is jurisdiction, then the Court must resolve whether it has the "authority" to grant declaratory relief in the case presented.[118] Third, the Court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action.[119]

Here, Dunn seeks declaratory relief to clear his name. But this requested relief does not clear the threshold justiciability hurdle for declaratory relief. "A claim for declaratory judgment seeks to define the legal rights and obligations of the parties in anticipation of some future conduct, not to proclaim liability for a past act."[120] The declaratory relief that Dunn seeks would not redress the present or future relations of the parties and would only proclaim liability for alleged past bad acts.[121] Specifically, Dunn alleges that he continues to suffer harm to his "reputation," "employment prospects," "safety," and his "well-being" from past violations.[122] However, "to establish redressability, a plaintiff must show a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact."[123] Here, Dunn has not pled facts showing a substantial likelihood that the declaration he seeks—that Defendants' prior conduct was unlawful—will redress any continuing harm with respect to his reputation. Dunn eschews any recovery for damages, so he has not shown that a declaration of legal and constitutional harm in the past will enable him to recover for emotional or reputational harm. Nor has he pled facts showing that a

---

[116] *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir.1989).
[117] *In re Canion (Randall & Blake, Inc. v. Evans)*, 196 F.3d 579, 584 (5th Cir.1999).
[118] *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir.1993) ("Prior to determining whether the district court abused its discretion by failing to review the merits of this case, this Court must first determine whether the district court had authority to grant a declaratory judgment here.").
[119] *Id.* at 778 (a court has broad discretion in the declaratory judgment context).
[120] *Haggard*, 547 F. App'x at 620 (citing *Bauer*, 341 F.3d at 358).
[121] *See, e.g., Muslow v. Bd. of Supervisors of La. State Univ.*, 2020 WL 1864876, (E.D. La. April 14, 2020) (finding no standing to seek declaratory relief based on alleged past injury); *Waller v. Hanlon*, 922 F.3d 590, 603-04 (5th Cir. 2019).
[122] ECF No. 163 at 20-21.
[123] *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022)

declaration addressing past conduct will affect his future safety or future job prospects. It is purely speculative that a declaration that former chief Fontenot's conduct was unlawful would alter the opinions of other officers or members of the community as to Dunn's reputation.

**C. Chilling of First Amendment Rights.**

Dunn further alleges that Defendants' actions have "chilled" the exercise of his First Amendment rights to report wrongdoing at the Eunice Police Department in the future. Constitutional violations may arise from the "chilling" effect of a statute or government regulation that falls "short of a direct prohibition over the exercise of First Amendment rights."[124] Accordingly, courts have held that "government actions that chill protected speech without prohibiting it" can satisfy the injury-in-fact requirement for Article III standing.[125]

It is unclear here whether Dunn has stated a "chilled speech" claim that is separate and distinct from his First Amendment retaliation claim. In *Lowry v. Mills*, the Fifth Circuit addressed a case where a plaintiff asserted First Amendment retaliation claims and alleged that his speech was chilled as a result of the defendants' actions.[126] The *Lowry* court declined to recognize a "freestanding chilled-speech claim distinct from [the plaintiff's] retaliation claim."[127] The court concluded that the plaintiff's chilled speech allegation "rise[] and fall[] with his retaliation claim."[128] The same analysis applies here. Dunn has not asserted a "chilled speech" claim distinct from his retaliation claim based on the allegations in the Amended Complaint.

**D. Broad Institutional Reform Relief.**

Finally, Dunn seeks injunctive relief to remedy a broad array of alleged institutional problems at the Eunice Police Department, including a request for a court-appointed monitor to

---

[124] *Laird v. Tatum*, 408 U.S. 1 (1972).
[125] *Glass v. Paxton*, 900 F.3d 233, 238-40 (5th Cir. 2018).
[126] 157 F.4th 729, 740-41 (5th Cir. 2025).
[127] *Id.*
[128] *Id.*

implement the reforms. Dunn's First Amended Complaint cites problems in the Eusdnice Police Department including (1) use of excessive force against suspects,[129] (2) neglect of the medical needs of detainees,[130] (3) police officers regularly leaking information about ongoing investigations, [131] (4) officers "abus[ing] the confidential informant process,"[132] and (5) misuse of the department's funds, including false overtime entries, employees leaving work early, and abuse of out-of-state training programs.[133] Dunn seeks to remedy these department-wide problems with injunctive relief impacting virtually every aspect of the department's operations. Specifically, paragraph 195 in Dunn's prayer for relief requests that the Court order the City of Eunice to:

> a. Issue and require the use of head-mounted body cameras or video recording eyeglasses by all Eunice police officers;
>
> b. Require crisis intervention and de-escalation training for all Eunice Police Department employees who respond to mental health emergencies;
>
> c. Require the Eunice Police Department to revise its policies to mandate that officers intervene to prevent the use of excessive force or other illegal conduct by fellow officers;
>
> d. Institute and implement mandatory policies and procedures to ensure that employees of the Eunice Police Department submit accurate records of daily hours worked;
>
> e. Fund and appoint a full-time, paid investigator to the Eunice Civil Service Board;
>
> f. Eliminate all fees charged for the furnishing of copies of public records requested pursuant to the Louisiana Public Records Act, La. R.S. 44:1, et seq., in the custody of the City of Eunice or the Eunice Police Department;
>
> g. Require the Chief of Police to disclose to the public, on a quarterly basis, the number and substance of internal and external complaints of

---

[129] ECF No. 128 at ¶¶33-37.
[130] *Id.* at ¶¶38-39.
[131] *Id.* at ¶¶40-43.
[132] *Id.* at ¶¶44-45.
[133] *Id.* at ¶¶46-50.

police misconduct that were received, investigated, deemed unsubstantiated, and/or closed by the Eunice Police Department;

h. Establish a qualified and independent oversight agency to investigate, mediate, and/or prosecute complaints of Eunice Police Department misconduct, including, but not limited to, complaints of excessive use of force; discrimination based on race, gender, religion, national origin, age, or disability; incidents involving death or serious injury; witness or evidence tampering; falsifying reports; bribery; sexual misconduct; use of drugs or alcohol while on duty; and/or inmate abuse;

i. Deploy Eunice police officers with appropriate and adequate supervision; and

j. Install a qualified monitor to oversee and report to the Court on implementation of the policies and procedures included herein, including through periodic and regular reviews and audits of the Eunice Police Department's practices.[134]

Defendants argue that Dunn lacks standing for this broad institutional reform relief because he is not seeking to redress his own injuries but instead to redress injuries to third parties who are not before the Court. "The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally."[135] Accordingly, "a federal court's jurisdiction … can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . ..'"[136] The broad institutional reform relief requested here is not tailored to redress Dunn's injuries—*i.e.* the injuries he suffered as a result of former chief Fontenot's retaliatory actions—but instead attempts to redress the distinct injuries allegedly suffered by arrestees subject to excessive force, detainees whose medical needs have not been met, confidential informants, and the City of Eunice with respect to the misuse city funds. Dunn does not allege that he suffered the same injuries as these third parties, nor does he explain how injunctive relief addressing these third-party

[134] *Id.* at ¶196.
[135] *Warth v. Seldin*, 422 U.S. 490, 499 (1975).
[136] *Id.* (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)).

injuries will redress his own injuries. The Supreme Court has recognized some cases where a plaintiff can seek relief that vindicates the rights of third parties.[137] But the relief Dunn requests here does not fall within these special cases.

Finally, the Court is mindful of the Supreme Court's warning in *Rizzo v. Goode* about the limits of a federal court's equitable powers with respect to broad injunctive relief that imposes "sharp limitations" on the internal affairs and operations of a municipality's police department.[138] The *Rizzo* court emphasized that "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief."[139] Here, Dunn's request for institutional reform relief—including the imposition of a court-appointed monitor—seeks to impose a "sharp limitation" on the internal operations of the Eunice Police Department yet is not tailored to redress Dunn's individual claims and injuries. This overbroad request for injunctive relief exceeds the limits of the Court's equitable powers.

* * *

In sum, Dunn's retaliation claims under the First Amendment and Louisiana State Constitution are DISMISSED to the extent that they are based on (1) the investigation and administrative leave resulting from Dunn's social media posts, (2) the elimination of the Eunice Police Department's K-9 program, and (3) Dunn's allegations of constructive demotion or discharge. As explained above, these claims for prospective injunctive and declaratory relief are moot.

---

[137] *June Med. Servs. L. L. C. v. Russo*, 591 U.S. 299, 318 (2020).
[138] 423 U.S. 362, 379 (1976).
[139] *Id.*

Dunn's claims for injunctive and declaratory relief designed to restore his reputation and job prospects as outlined above are also DISMISSED on the grounds of standing (the injuries are not redressable by prospective injunctive or declaratory relief) or they are moot as discussed above.

Dunn's claims for the broad institutional reform relief requested in paragraph 195 of his Prayer for Relief are DISMISSED for lack of standing (they seek to vindicate the rights of parties not before the Court) and the relief requested exceeds the equitable powers of the Court.

Finally, to the extent that Dunn asserts a separate and distinct claim that his First Amendment rights were chilled by Defendants' actions, these claims are DISMISSED. As in *Lowry*, Dunn's allegations do not give rise to a distinct "chill" claims but rise and fall on his retaliation claims.

## IV.
## MERITS OF REMAINING FEDERAL CLAIMS

### A. First Amendment Retaliation.

As discussed above, the Court's standing and mootness rulings do not dispose of all of Dunn's retaliation claims. Dunn alleges six distinct acts or courses of conduct on which his First Amendment retaliation claims are based. Three of those acts and courses of conduct cannot support a retaliation claim because the relief requested to remedy those claims is moot, as discussed above. With respect to the remaining three instances of retaliation, Dunn has come forward with sufficient evidence to create a genuine issue of material fact as to whether the effects of these incidents are continuing and whether the injuries arising from these incidents can redressed by appropriately framed injunctive relief. Accordingly, they clear the standing/mootness hurdle.

The remaining instances of retaliation are (1) Dunn's allegation that he was removed from the department's narcotics unit; (2) his allegation that he was transferred to the department's night

shift; and (3) his allegation that he was "effectively" demoted when he was allegedly stripped of his duties and authority as a lieutenant in the department. Defendants, however, challenge these claims on the merits. To recover on a First Amendment retaliation claim, Dunn must prove that: (1) he suffered "an adverse employment decision"; (2) his "speech … involve[d] a matter of public concern"; (3) his "interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency"; and (4) his "speech must have motivated the Defendants' action." [140] Defendants argue that the remaining retaliation allegations do not show that Dunn suffered an adverse employment action. "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."[141] "[M]ere accusations or criticism," "investigations," "false accusations," and threats are not adverse employment actions given the Fifth Circuit's "narrow view of what constitutes an adverse employment action."[142] Indeed, the Fifth Circuit has "declined to expand the list of actionable [adverse employment] actions," and, as a result "some things are not actionable even though they have the effect of chilling the exercise of free speech."[143] In *Lowery*, the Fifth Circuit recently addressed the Supreme Court's expansion of the definition of an adverse employment action for purposes of a Title VII employment discrimination claim.[144] The court's opinion noted that the Fifth Circuit has never applied this expanded definition to a First Amendment retaliation claim.[145] Accordingly, the narrower definition set forth in *Lowery* and *Breaux v. City of Garland* apply to Dunn's remaining retaliation claims.

---

[140] *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000).
[141] *Id.* at 157 (quoting *Pierce v. Texas Dep't of Crim. Just., Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)).
[142] *Lowery*, 157 F.4th at 743 (quoting *Breaux*, 205 F.3d at 157–58).
[143] *Id.*
[144] 157 F.4th at 741-42.
[145]

1. Removal From Narcotics Unit.

Dunn alleges that former chief Fontenot retaliated against him, in part, by allegedly removing him from narcotics investigations. The Fifth Circuit has held that the "loss of some job duties" is not an adverse employment action sufficient to support a retaliation claim.[146] Nor is a change in an employee's work assignments or shifts.[147] Here, current Police Chief LeBouef states in his declaration that Dunn was never assigned a specialized narcotics unit, nor was he expressly designated as a narcotics officer.[148] Instead, narcotics investigations are only one aspect of the duties of a police lieutenant at the Eunice Police Department. In his deposition, Dunn testified that K-9 handlers often work on narcotics cases but that he had not been assigned to any narcotics cases as a K-9 officer.[149] Dunn has not pointed to evidence that he was formally removed from narcotics cases or that his job description was formally re-written to remove these duties as in *Thompson v. City of Waco*.[150] In *Thompson*, the leadership of the police department formally re-wrote the plaintiff's job description so that the written changes in his duties were so "significant and material" that the changes were essentially a demotion.[151]

In contrast, narcotics investigations are only one aspect of Dunn's duties, and the summary judgment record does not show that those duties were ever formally removed. Dunn retained his position as a police lieutenant and the record does not reflect that he was demoted, that his job duties were formally changed, or that he was disciplined in any way.[152] These allegations simply

---

[146] *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n. 2 (5th Cir. 2003); *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n. 2 (5th Cir.2003); *see also Kidd v. Mando Am. Corp.,* 731 F.3d 1196, 1204 n. 11 (11th Cir.2013) (observing that "it's a rare case where a change in employment responsibilities qualifies as an adverse employment action")

[147] *Watts v. Kroger Co.,* 170 F.3d 505, 511–12 (5th Cir.1999) (holding that a change in work schedule and request that an employee perform two additional tasks did not rise to the level of an adverse employment action).

[148] ECF 272, Exhibit C.

[149] ECF 297, Exhibit 40, p. 229.

[150] 764 F.3d 500, 502-504 (5th Cir 2014).

[151] *Id.*

[152] As Chief LeBouef stated in his declaration, the Department's records show that Dunn has been an officer in good standing during the relevant period of this case. ECF No. 272, Exhibit C.

do not rise to the level of an adverse employment action to support a First Amendment retaliation claim. Accordingly, Dunn's retaliation claims based on the alleged removal of narcotics duties are dismissed.

2. Transfer to Night Shift.

Dunn next alleges that former chief Fontenot retaliated against him by transferring him to "more dangerous night shifts."[153] He alleges that Fontenot used shift transfers as punishment, and that the Department's night shifts were short staffed and included other officers "openly hostile to Lt. Dunn."[154] Standing alone, transfers are not adverse employment actions.[155] However, "[a] transfer may also constitute a demotion … if the new position is objectively worse—such as being less prestigious or less interesting and providing less room for advancement."[156] A plaintiff's "subjective perception" that demotion has occurred is not sufficient—the new position must be *objectively* worse.[157] Moreover, transfers to different time shifts, as alleged here, generally do not rise to the level of an adverse employment action.[158]

Here, the summary judgment record shows that the Eunice Police Department rotates entire shifts from day to night duty and back every two weeks as a standard practice. Specifically, in his declaration, Chief LeBoeuf states that:

> Under my predecessor, Randy Fontenot, shifts rotated (day shift officers moved to night shift and night shift officers moved to day shift) every two weeks. When I took office, this rotation changed to every month. It was the practice of the Eunice Police Department under former chief Fontenot, and remains the practice of the Eunice Police Department under my tenure that entire shifts are moved from night to day and vice versa.[159]

---

[153] ECF No. 326 at 5.
[154] *Id.*
[155] Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir. 1999).
[156] *Id.*
[157] *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996).
[158] *Watts*, 170 F.3d at 511-12.
[159] ECF No. 272-4 at ¶ 3.

Dunn does not point to any evidence contradicting Chief LeBouef's explanation of shift changes. Dunn also alleges in a conclusory fashion that the night shifts were more dangerous and understaffed but does not point to objective evidence—such as staffing or crime statistics—to support these allegations. Dunn's subjective perception that he suffered a demotion is not sufficient to support the "adverse employment action" element of his claim.[160]

The cases relief on by Dunn to support these claims are distinguishable. In *Forsyth v. City of Dallas*, the plaintiff police officer was transferred to the department's night patrol.[161] However, there, the plaintiff did not just transfer to the night shift, she transferred from her prior position in the department's intelligence unit to a qualitatively different position on the night patrol.[162] According to the court, intelligence unit positions were "more prestigious, had better working hours, and were more interesting than night patrol."[163] The facts alleged by Dunn do not rise to that level. Dunn maintained his position as a police lieutenant in the Department and, presumably, rotated from day to night duties with the rest of his shift.

*Watts v. Jackson* is similarly distinguishable.[164] There, the court addressed whether the plaintiff's allegations, taken as true, were sufficient to survive a Rule 12(b)(6) motion to dismiss. The plaintiff in *Watts* alleged that he was moved from "Special Projects" in the department's Downtown Division, where he worked the day shift, to a different precinct working the "graveyard" shift, which was considered "more dangerous" and used primarily for punishment.[165] There, however, plaintiff was not only transferred to the night shift, he was moved to the "night patrol division" of a different precinct and no longer was assigned to "special projects" in

[160] *Forsyth*, 91 F.3d at 774.
[161] *Id.*
[162] *Id.*
[163] *Id.*
[164] 664 F. Supp. 2d 680, 684-85 (S.D. Miss. 2009).
[165] *Id.*

downtown Jackson. Moreover, there is no evidence cited in the *Watts* opinion that, as in the present case, entire shifts were regularly rotated through the "graveyard" shift. In sum, Dunn's night shift allegations do not support a retaliation claim.[166]

3. Effective Demotion.

Finally, Dunn argues that a combination of actions by former chief Fontenot in concert with other officers (including defendants Young and Victor Fontenot) effectively resulted in his demotion by stripping Dunn of the authority, powers, and duties he had held as a police lieutenant. As a result, Dunn contends that was "a lieutenant in name only" under former chief Fontenot.[167] Specifically, Dunn alleges that:

- he was not allowed to give orders or supervise and manage a division, unit, section, or platoon of the police department;[168]
- lower-ranked officers ignored his orders and the chain of command;[169]
- he had fewer officers to supervise;[170]
- his evaluations were "ignored or thrown out;"[171] and
- he was stripped of essential duties such as serving in the narcotics and K-9 units.[172]

The Court has already addressed the allegations that Dunn was stripped of K-9 and narcotics duties. With respect to the other allegations, Dunn relies primarily on *Thompson v. City of Waco* to support a retaliation claim based on an effective demotion. However, as explained previously, *Thompson*

---

[166] Even if former chief Fontenot's use of time shift assignments could amount to an adverse employment action, prospective injunctive relief to remedy that injury would be moot as explained above because there is no evidence in the record that the current Chief LeBouef has used—or that he is likely to use in the future—the time shift rotation to punish officers for exercising their First Amendment rights.
[167] ECF No. 326 at 7-8.
[168] *Id.*
[169] *Id.*
[170] *Id.*
[171] *Id.*
[172] *Id.*

is distinguishable. In *Thompson*, the department imposed specific, written restrictions on the plaintiff's ability to exercise his duties as a detective.[173] Specifically, these written restrictions barred the plaintiff from "(1) search[ing] for evidence without supervision; (2) log[ging] evidence; (3) work[ing] in an undercover capacity; (4) be[ing] an affiant in a criminal case; (5) be[ing] the evidence officer at a crime scene; and (6) be[ing] a lead investigator on an investigation."[174] According to the *Thompson* court, the department "wrote and restricted [the plaintiff's] job description to such an extent that he no longer occupies the position of a detective; he now functions as an assistant to other detectives."[175] Dunn does not point to similar evidence showing written changes to his job duties that effectively resulted in his demotion. Rather, Dunn's allegations appear to rest on charges of mismanagement and lack of discipline within the Department under former chief Fontenot.

* * *

In sum, (1) Dunn's allegation that he was removed from the department's narcotics unit; (2) his allegation that he was transferred to the department's night shift; and (3) his allegation that he was "effectively" demoted when he was allegedly stripped of his duties and authority as a lieutenant in the department do not amount to adverse employment actions sufficient to support Dunn's First Amendment retaliation claims based on the summary judgment record. These claims are therefore dismissed.[176]

---

[173] 764 F.3d 502.
[174] *Id.*
[175] *Id.*
[176] Dunn also alleges separate claims for conspiracy and violations of the free speech protections in Article 1, Section 7 of the Louisiana State Constitution. ECF No. 128 at ¶¶ 134-139; 151-156;177-181. These claims are inextricably linked with Dunn's First Amendment claims. Since the First Amendment claims are dismissed, these counts must be dismissed as well.

**B. *Monell* Claims Against the City of Eunice.**

Defendants next challenge Dunn's *Monell* claims against the City of Eunice. The City may not be held liable under Section 1983 on a theory of vicarious liability.[177] It may, however, be liable under *Monell v. Dep't of Soc. Servs.*, if allegedly unconstitutional conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[178] In other words, the unconstitutional conduct at issue must be directly attributable to the execution of a municipality's official policy. Accordingly, to state a Section 1983 *Monell* claim, a plaintiff must allege facts demonstrating that (1) an official policy, (2) promulgated by the municipal policymaker, (3) was the moving force for the violation of a constitutional right.[179] Official policies include "written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy."[180] *Monell* claims based on allegations of a wide-spread practice require proof of "sufficiently numerous prior incidents," as opposed to "isolated instances."[181] A plaintiff "must do more than describe the incident that gave rise to his injury."[182] The facts pled must also show incidents similar to the conduct at issue in the instant case. Actual or constructive knowledge of such a custom must be attributed to the governing body or the municipality or to an official to whom that body had delegated policy-making authority.

Defendants argue that Dunn's *Monell* claims are grounded in the actions of former chief Fontenot but Dunn cannot prove that Fontenot was a final policymaker for the City of Eunice. A policy or custom is official only "when it results from the decision or acquiescence of the municipal

---

[177] *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), *cert. denied sub nom. Hicks-Fields v. Harris Cty., Tex.*, ___ U.S. ___, 138 S. Ct. 510 (2017).
[178] 436 U.S. 658, 690 (1978).
[179] *Blanchard-Daigle v. Geers*, No. 18-51022, 2020 WL 730586, at *2 (5th Cir. Feb. 12, 2020).
[180] *Id.*
[181] *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.1989).
[182] *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020).

officer or body with 'final policymaking authority' over the subject matter of the offending policy."[183] "Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law."[184] The City of Eunice is a Lawrason Act municipality, so whether Fontenot possessed final policymaking authority turns on the allocation of power and authority under the Act. Courts have held that elected police chiefs are final policymakers under the Lawrason Act with respect to *law enforcement* activities.[185] This law enforcement authority includes the "inherent authority" to supervise the operations of the police department, including the authority to set work schedules and assignments.[186] However, an elected chief does not have final authority to hire, fire, promote or discipline officers. Under the Lawrason Act, an elected chief "shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel."[187]

Here, Dunn's claims include allegations pertaining to changes in work assignments and duties, transfers, and work schedule changes, all of which fall within the police chief's inherent authority under the Act. However, as discussed, these types of actions are not, standing alone, "adverse employment actions" sufficient to support a First Amendment Retaliation claim. Rather, "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."[188] All of these actions fall within the ambit of appointments, promotions,

---

[183] *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).
[184] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010).
[185] La. R.S. §33:423(A)(providing that a police chief "shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws.") *Hernandez v. Theriot*, 38 F. Supp. 3d 745, 748 (M.D. La. 2014) (holding that police chief was the final policymaker with respect to law enforcement and the alleged unconstitutional acts—abuse of power with respect to persons in police custody—arose in connection with the exercise of that law enforcement authority).
[186] *Id.*
[187] La. R.S. §33:423(A).
[188] *Id.* at 157 (quoting *Pierce v. Texas Dep't of Crim. Just., Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)).

disciplinary actions, and dismissals, over which a municipality's mayor and Board of Aldermen have final decision-making authority. A separate provision in the Act modifies this allocation with respect to the City of Eunice. La. R.S. § 33:423.27 states that the Board of Aldermen for the City of Eunice "may, by resolution, designate the chief of police as the appointing authority of the police department and thereby authorize him to appoint, discipline, and discharge police personnel subject to the budgetary limitations established by the mayor and board of aldermen...." It is undisputed that Eunice's Board adopted such a resolution in the past but that, in 2019, the Board stripped former chief Fontenot of his appointing powers. As a result, these appointing powers reverted to the Eunice Mayor and Board of Aldermen. In sum, former chief Fontenot was not the final policymaker with respect to the types of personnel actions that qualify as "adverse employment actions" for purposes of a First Amendment retaliation claim.

The question then becomes whether the *Mayor and Board* can be charged with an adverse employment action against Dunn. "If a final policymaker approves a subordinate's recommendation and also the subordinate's reasoning, that approval is considered a ratification chargeable to the municipality."[189] The Fifth Circuit's decision in *Howell v. Town of Ball*, is instructive.[190] There, the plaintiff offered evidence that the city's police chief sought to retaliate against him for cooperating with an FBI investigation of the city.[191] As in the present case, the police chief lacked final authority to terminate the plaintiff but could recommend termination to the city's board of aldermen.[192] The board approved the plaintiff's termination.[193] According to the court, the board had knowledge of the chief's retaliatory motive when it approved his

---

[189] *Culbertson*, 790 F.3d at 621; *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001) (a plaintiff "must impute [a subordinate's] allegedly improper motives to the board by demonstrating that the board approved both [the subordinate's] decision and the basis for it").
[190] 827 F.3d 515, 527–28 (5th Cir. 2016).
[191] *Id.*
[192] *Id.*
[193] *Id.*

recommendation to fire the plaintiff, and this created a triable issue as to whether the plaintiff's protected activity was a motivating factor in the board's decision.[194] Here, in contrast, Dunn has not pointed to evidence that the Eunice Board of Alderman adopted any recommendation by former chief Fontenot to demote or otherwise discipline Dunn.

Dunn, however, argues that the identity of the final policymaker is "beside the point" and a "strawman" argument.[195] According to Dunn, "even after the City removed his final policymaking status on disciplinary matters, Chief Fontenot continued to retaliate against Lt. Dunn" and this "retaliation was not reviewable by the Mayor or the Board of Aldermen."[196] In essence, Fontenot "started disciplining people that wouldn't be on paper."[197] As a result, Dunn argues, Fontenot's "plenary authority to operate EPD's day-to-day—not his authority to formally discipline—makes him the relevant policymaker."[198] Moreover, according to Dunn, "if Chief Fontenot is not the City's policymaker for purposes of this litigation, the Mayor and Board of Aldermen certainly are, and so the City is liable" because the Eunice Mayor and Board "were well aware of Chief Fontenot's repeated retaliation against Lt. Dunn."[199] In short, Dunn argues that he "prevails on his *Monell* claims no matter the policymaker."[200]

Dunn's argument is wrong on the law. "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality."[201] Rather the "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."[202] "That is, a plaintiff must show that the municipal action was taken with the

---

[194] *Id.*
[195] ECF No. 297 at 15-16.
[196] *Id.* at 16-17.
[197] *Id.* at 17.
[198] *Id.*
[199] *Id.*
[200] *Id.*
[201] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403–05 (1997).
[202] *Id.*

requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[203] The requirement for municipal action by one with final policymaking authority ensures that a municipality is "held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." [204] As the Supreme Court has cautioned, "[r]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[205] The record here simply does not support a "direct causal link" between the actions of a final policymaker and the adverse employment actions alleged by Dunn. Dunn's contrary argument is essentially a back-door attempt to impose vicarious liability on the City of Eunice for the alleged actions of former chief Fontenot and officers Young and Victor Fontenot.

Dunn also argues that the Mayor and Board had actual or constructive knowledge of former chief Fontenot's actions. However, Dunn's cites to the record in this regard involve testimony from Eunice Mayor Scott Fontenot that "Dunn would send me long novels of messages sometimes . . . . Obviously, he was letting me know that they were messing with him …."[206] But the record does not show that the Mayor *and* the Board were on notice that former chief Fontenot allegedly took the "adverse employment actions" Dunn alleges or that they ratified Fontenot's conduct. The fact that the Board ultimately responded by removing Fontenot's appointment powers cuts against Dunn's suggestion that the Board ratified Fontenot's actions. In short, the summary judgment record does not show the culpability or causal link between actions of the final policymaker—the Mayor and the Board—and the retaliatory actions taken by Chief Fontenot. In sum, Dunn has not

[203] *Id.*
[204] *Id.*
[205] *Id.*
[206] ECF No. 237, Exhibit F, pp. 162-163.

shown triable issues on each element of his *Monell* claim against the City. This claim is therefore dismissed.

## V.
## STATE LAW CLAIMS

### A. Defamation, Intentional Infliction of Emotional Distress, and False Light Invasion of Privacy.

Next, Defendants challenge Dunn's state law claims for defamation, intentional infliction of emotional distress and false light invasion of privacy. While Dunn alleges injuries to his reputation and future employment prospects as a result of Defendants' conduct, he is seeking solely prospective injunctive as well as declaratory relief. As previously explained, these injuries are not redressable—and hence, Dunn lacks standing—by prospective injunctive or declaratory relief. With respect to injunctive relief targeting future conduct, the relief he requests is moot, as discussed above. Accordingly, Dunn's state law claims for defamation, intentional infliction of emotional distress, and false light invasion of privacy are dismissed.

### B. Louisiana Whistleblower Act.

Finally, Defendants challenge Dunn's Louisiana Whistleblower Act claims. The Louisiana Whistleblower Statute provides that:

> An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> > (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> >
> > (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> >
> > (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.[207]

---

[207] LSA-R.S. 23:967(A)

"Reprisal" includes "firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section."[208] While this definition is framed broadly, the Fifth Circuit has held that a "reprisal" under section 23:967 "is defined as 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"[209] As far as the violations of law supporting a Whistleblower Act claim, the statute applies only to actual violations of state law, not federal law.[210]

Dunn alleges that he reported state law violations within the Eunice Police Department, including (1) violations of La. Rev. Stat. Ann. § 14:122.2 (threatening a public official or law enforcement), (2) violations of La. Rev. Stat. Ann. § 14:130.1 (obstruction of justice), (3) violations of La. Rev. Stat. Ann. § 14:111 (assisting inmate escape), and (4) violations of La. Rev. Stat. Ann. § 2140 (law enforcement officers' duties). He further alleges that his reports resulted in reprisals by former chief Fontenot as outlined above, and that these reprisals violated the Whistleblower Act. These reprisals track the six instances of retaliation on which Dunn bases his First Amendment retaliation claims. As with his First Amendment claims, Dunn seeks solely declaratory and prospective injunctive relief. Specifically, he seeks "a declaratory judgment that the City's and Chief Fontenot's actions constitute a violation of the Louisiana Whistleblower Statute, La. Rev. Stat. Ann. § 23:967(A)." He seeks prospective injunctive relief to remedy the City's alleged reprisals by:

> (1) assigning Lt. Dunn to any departmental duties comparable to the rank of a lieutenant at Eunice Police Department, including but not limited to reinstating Lt.

---

[208] *Id.*
[209] *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 415 (5th Cir. 2018) (quoting *Tatum v. United Parcel Serv., Inc.*, 79 So.3d 1094, 1103–04 (La. Ct. App. 2011)).
[210] *Wilson v. Tregre*, 787 F.3d 322 (5th Cir. 2015).

> Dunn to handle narcotics investigations; (2) expunging from Lt. Dunn's personnel records any and all notations, complaints, and/or related references to any baseless internal investigations or other actions taken by Defendants as retaliatory measures against Lt. Dunn, including without limitation Defendant Officer Fontenot's baseless investigation into Lt. Dunn during the period of June 2020 to March 2021; (3) declaring that Lt. Dunn is an officer in good standing and has not been under any legally justifiable or proper investigation conducted by the Eunice Police Department since June 9, 2020; and (4) acknowledging that the retaliatory actions against Lt. Dunn, which have impeded Lt. Dunn's ability to seek future employment and tarnished Lt. Dunn's moral character and reputation, were in fact retaliatory and unlawful.[211]

This relief mirrors the relief Dunn requests with respect to his First Amendment claims and, for the same reasons, these state law claims must be dismissed. With respect to the request to expunge Dunn's records and declare that he is an officer in good standing, the summary judgment record includes a declaration by the current Police Chief LeBouef stating that, according to the Department's records, Dunn has been an officer in good standing throughout the relevant time period covered by his allegations.[212] With respect to the investigation of his social media posts and placement on paid administrative leave, Dunn was vindicated by the Civil Service Board and, ultimately, the Board of Aldermen's decision to strip former chief Fontenot of his appointing powers.[213] Accordingly, the prospective injunctive relief Dunn requests is moot.

With respect to Dunn's request to restore his duties, the Court has previously ruled that the alleged removal of Dunn's duties were not "adverse employment actions." For the same reasons, they do not rise to the level of "reprisals" under Fifth Circuit precedent.[214] The remainder of the relief is merely a request for a formal apology and acknowledgement of wrongdoing by the City. As the Court has previously explained, Dunn cites no authority, constitutional or otherwise, to

---

[211] ECF No. 128 at ¶164.
[212] ECF No. 272-4 at ¶¶ 2,7.
[213] ECF No. 128 at ¶6; *Dunn v. City of Eunice, et al.*, 21-cv-1063 (ECF No. 1, Complaint).
[214] *Rayborn*, 881 F.3d at 415.

support his argument that he has the right to a public apology or that the Court has the power to order Defendants to issue one.

Finally, even if Dunn has standing to seek this relief and the prospective relief he requests is not moot, Dunn has not shown that the City of Eunice or former chief Fontenot committed the four actual violations of state law cited in Dunn's Amended Complaint.[215] A plaintiff must establish that the *employer*—not merely its employees—violated state law to prove a claim under section 23:967.[216] The *unauthorized* actions of employees or subordinates do not support a claim under 23:967.[217] With respect the violation of La. Rev. Stat. Ann. § 14:122.2 (threatening a public official or law enforcement), Dunn alleges that he "filed a report detailing repeated threats by Officer [Victor] Fontenot of physical violence directed at Lt. Dunn and his police canine, including, inter alia, threats to 'break his motherf---ing fingers' and 'put two [bullets] in his head.'"[218] Dunn alleges that Victor Fontenot's statements "were in direct violation of Departmental policy, which provides that '[a] member shall never behave disrespectfully or use threatening or insulting language toward any other member engaged in the execution of his/her position or duties.'"[219] These allegations involve the conduct of an employee (or subordinate officer), not the City or former chief Fontenot. Nor does Dunn point to any evidence in the summary judgment record that raises a triable issue as to whether the actions of Victor Fontenot, if proven, were authorized.

---

[215] ECF No. 128 at ¶159.
[216] *Richardson v. Axion Logistics, LLC*, 780 F.3d 304, 306 (5th Cir. 2015).
[217] *Dillon v. Lakeview Regional Med. Ctr. Auxiliary, Inc.*, 2011–1878 (La. App. 1 Cir. 6/13/12), 2012 WL 2154346, at *5 n.8, *writ denied*, 2012–1618 (La.10/26/12), 99 So.3d 651 ("it could be concluded that the employer must be the actor who violated the law, in order for there to be a cause of action under" § 23:967, and that "there is no indication" that the statute "would encompass unauthorized acts of ... employees").
[218] ECF No. 128 at ¶59.
[219] *Id.*

With respect to the alleged violation of La. Rev. Stat. Ann. Section 14:130.1 (obstruction of justice), Dunn alleges that he "filed a report detailing policy violations committed by officers investigating a rape, including the improper storage of DNA evidence in the locked trunk of a vehicle for over five days (which compromised the evidence)" and that "Chief Fontenot conducted a cursory investigation of the incident, and issued a verbal reprimand to the officers involved, including Officer Fontenot."[220] Dunn alleges that he "subsequently filed a complaint with the Civil Service Board, which investigated the incident and concluded that the officers involved had violated the law and that a verbal reprimand was insufficient punishment for the misconduct."[221] Again, the alleged violations cited by Dunn were committed by subordinate officers and he has not shown any violations of the cited state statute by the City or former chief Fontenot. Nor has he shown that this conduct was authorized.

Similarly, with respect to the alleged violations of La. Rev. Stat. Ann. Section 14:111 (assisting inmate escape), and La. Rev. Stat. Ann. Section 2140 (law enforcement officers' duties), Dunn's allegations focus on the conduct of subordinate officers and does not show that the City directly violated state law or authorized the violations of state law reported by Dunn. In sum, Dunn's Whistleblower claims under section 23:967 must be dismissed.

## VI.
## REMAINING DEFENDANTS

With the dismissal of claims against Lt. Young and the City of Eunice, the only remaining claims are those asserted against Victor Fontenot and numerous John Doe defendants. As to the John Doe defendants, the time for filing an amended complaint has now lapsed and accordingly,

---

220 ECF No. 128 at ¶58.
221 *Id.*

Dunn may not now amend to substitute actual defendants in the place of the John Doe defendants. The claims against the John Doe defendants are therefore dismissed.

The claims against Victor Fontenot would suffer the same issues as those raised by Lt. Young but counsel for Officer Fontenot failed to timely file a dispositive motion. Under Rule 56(f) of the Federal Rules of Civil Procedure, however, the Court may "grant summary judgment for a non-movant" after providing the opposing party notice and reasonable time to respond. Accordingly, the Court hereby provides Plaintiff with notice under Rule 56(f) that, for the reasons discussed above, the Court intends to grant summary judgment in favor of the Victor Fontenot to the same extent and for the same reasons as stated above as the other Individual Defendants. Pursuant to Rule 56(f), Plaintiff has thirty (30) days from the date of this ruling to file a response as to why summary judgment should not be granted in favor of the Victor Fontenot. Mr. Fontenot will then have fourteen (14) days to respond to the Plaintiff's filing.

## VII.
## CONCLUSION

For the reasons stated above, the Rule 12(c) Motion for Judgment on the Pleadings [ECF No. 219] filed by Ryan Young is GRANTED IN PART and DENIED IN PART and the Motion for Summary Judgment on behalf of Defendant, Lt. Ryan Young [ECF No. 237] is GRANTED. All claims against Ryan Young are DISMISSED. The Motion to Dismiss under Rules (12)(b)(1), 12(b)(6), and 12(c) [ECF No. 254] filed by the City of Eunice is GRANTED IN PART AND DENIED IN PART and the Motion for Summary Judgment [ECF No. 241] filed by the City of Eunice is GRANTED. All claims against the City of Eunice are DISMISSED. Further, all claims the John Doe defendants are DISMISSED. Plaintiff Michael Dunn's Motion for Partial Summary Judgment [ECF No. 252] is DENIED. Pursuant to Rule 56(f), Plaintiff has thirty (30) days from the date of this ruling to file a response as to why summary judgment should not be granted in

favor of the Victor Fontenot. Mr. Fontenot will then have fourteen (14) days to respond to the Plaintiff's filing.

Due to the dismissal of all claims against the City of Eunice and Ryan Young, the Motion in Limine [ECF No. 235], Motion to Adopt Motion in Limine [ECF No. 236], Motion to Adopt Motion in Limine [ECF No. 244], the Motion in Limine [ECF No. 309], the Motion to Strike [ECF No. 287] and the Motion to Strike [ECF No. 292] are DENIED.

THUS DONE in Chambers on this 26th day of August, 2026.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE